

FILED
JAN 1 6 2019
AT_____ O'CLOCK
John M. Domurad, Clerk - Syracuse

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MR. J'KENDRIC JIRELLE AGEE,

PLAINTIFF,

— AGAINST—

MR. ANDREW CUOMO, GOVERNOR OF
THE STATE OF NEW YORK; MR. ANTHONY
J. ANNUCCI, ACTING COMMISSIONER OF
THE NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION
(HEREINAFTER REFERRED TO AS "DOCCS");
MR. JOSEPH BELLNIER, DEPUTY COMMISSIONER
OF "DOCCS" CORRECTIONAL FACILITIES;
MR. HAROLD D. GRAHAM, THE SUPERINTENDENT
OF AUBURN CORRECTIONAL FACILITY
(HEREINAFTER REFERRED TO AS "ACF"); MR(S).
"JOHN/JANE DOE" No. 1, THE DEPUTY
SUPERINTENDENT OF SECURITY AT "ACF";
MRS. SHERRI GUZYLAK, THE INMATE RECORDS
COORDINATOR II AT "ACF"; MR(S). "JOHN/
JANE DOE" No. 2 THE EVIDENCE CONTROL
SUPERVISOR AT "ACF"; MR(S). "JOHN/JANE
DOE" No. 3 THE CRIMINAL PROSECUTOR
LIAISON (HEREINAFTER REFERRED TO AS
THE "CPL"); MR. STEPHEN MAHER, CHIEF
INVESTIGATOR OF THE OFFICE OF SPECIAL

COMPLAINT

JURY TRIAL DEMAND

CIVIL ACTION No.
9:19-CV-57

(JUDGE INITALS)

INVESTIGATION (HEREINAFTER REFERRED TO AS "OSI"); MR(S). "JOHN\JANE DOE(S)" No.4 ASSIGNED TO THIS MATTER BY OSI IN THE CAPACITY OF AN OSI INVESTIGATOR; LIEUTENANT (HEREINAFTER REFERRED AS "LT.") MR. JOSEPH VASILE OF "ACF"; LT. MR. TIMOTHY QUINN OF "ACF"; LT. MR. "JOHN DOE" No.5 MITCHELL; LT. MR. RAY VANFLEET; LT. ACTING CAPTION MR. MICHAEL QUIMETTE; CORRECTIONAL OFFICERS (HEREINAFTER REFERRED TO AS "C.O.'s") MR. KEVIN ASHBY; C.O. MR. KEITH E. VINCENT II; C.O. MR. NATHANIEL SWEET; C.O. MR. THOMAS McCARTHY; C.O. MR. "JOHN DOE" No.6; C.O. MR. "JOHN DOE" No.7; C.O. MR. "JOHN DOE" No.8; C.O. MR. "JOHN DOE" No.9; C.O. MR. "JOHN DOE" No.10; MR(S) "JOHN\JANE DOE" No.11 THE TECHNICAL SECURITY SPECIALIST; MR(S). "JOHN\JANE DOE" No.12; MR(S). "JOHN\JANE DOE(S)" No.13; THE COUNTY OF CAYUGA; CAYUGA COUNTY JAIL C.O. MRS. JANE DOE No.14 WADE; AND; ALL OTHER PARTIES INVOLVED, et al;

DEFENDANTS.

PAGE 2

## JURISDICTION AND VENUE

1. This Court has Jurisdiction over this action under 28 U.S.C. Section 1331 and 1342(2) and (4). This matter in controversy arise under 42 U.S.C. Section 1983 in which the above named Defendants while acting under the color of Law deprived the Plaintiff of several of his United States Constitutional Rights.

2. Venue properly lies in this District pursuant to 28 U.S.C. Section 1391(b)(2) because the events in which the Plaintiff was deprived of his constitutional Right occurred in New York State counties of Cayuga and Albany which are both located within the boundaries of The Northern District of New York State.

## PARTIES

3. The Plaintiff Mr. J'kendric J. Agee is presently incarcerated and in the care, custody and, control of "DOCCS" in the state of New York at Clinton Correctional Facility located at P.O. Box 2001, Dannemora N.Y. 12929. and is suing the following parties in both "individual" and "official" capacities:

4. Mr. Andrew Cuomo, the                    Governor of The State of New York.

PAGE 3

5. Mr. Anthony J. Annucci, Acting Commissioner Of New York State Department of Corrections and Community Supervision.

6. Mr. Joseph Belliner, Deputy Commissioner of The Department of Corrections and Community Supervision Correctional Facilities.

7. Mr. Harold D. Graham, The Superintendent of Auburn Correctional Facility.

8. Mr(s). "John/Jane Doe" No.1, The Deputy Superintendent of Security at Auburn Correctional Facility.

9. Mrs. Sherri Guzylak, The Inmate Records Coordinator II at Auburn Correctional Facility.

10. Mr(s). "John/Jane Doe" No.2 The Evidence Control Supervisor at Auburn Correctional Facility.

11. Mr(s). "John/Jane Doe" No.3 The Criminal Prosecution Liaison at Auburn Correctional Facility.

12. Mr. Stephen Maher, Chief Investigator Of The Office of Special Investigation.

PAGE 4

13. Mr(s). "John\Jane Doe(s)" <u>No4</u> assigned to this matter by the Office Of Special Investigation to work in the capacity of Office of Special Investigation. Investigator(s).

14. Mr. Joseph Vasile an Lieutenant at Auburn Correctional Facility.

15. Mr. Timothy Quinn an Lieutenant at Auburn Correctional Facility.

16. Mr. "John Doe" <u>No.5</u> Mitchell an Lieutenant at Auburn Correctional Facility.

17. Mr. Ray Vanfleet an Lieutenant at Auburn Correctional Facility.

18. Mr. Michael Ouimette an Lieutenant Acting Caption at Auburn Correctional Facility.

19. Mr. Kevin Ashby an Correctional Officer at Auburn Correctional Facility.

20. Mr. Keith E. Vincent II an Correctional Officer at Auburn Correctional Facility.

21. Mr. Nathaniel Sweet an Correctional Officer at Auburn Correctional Facility.

22. Mr. Thomas McCarthy an Correctional Officer at Auburn Correctional Facility.

23. Mr. "John Doe" No. 6 an Correctional Officer at Auburn Correctional Facility.

24. Mr. "John Doe" No. 7 an Correctional Officer at Auburn Correctional Facility.

25. Mr. "John Doe" No. 8 an Correctional Officer at Auburn Correctional Facility.

26. Mr. "John Doe" No. 9 an Correctional Officer at Auburn Correctional Facility.

27. Mr. "John Doe" No. 10 an Correctional Officer at Auburn Correctional Facility.

28. Mr(s). "John/Jane Doe" No. 11 an Department of Corrections and Community Supervision Technical Security Specialist.

29. Mr(s). "John/Jane Doe" No. 12 an Department of Corrections and Community Supervision Employee.

30. Mr(s). "John/Jane Doe" No. 13 an Department of Corrections and Community Supervision Employee.

31. The Municipality of The County Of Cayuga.

32. Mrs. "Jane Doe" <u>No.14</u> Wade an Cayuga County Jail Correctional Officer.

### <u>PREVIOUS LAWSUITS BY PLAINTIFF</u>

33. There is no previous lawsuits ever [illegible]fited by the Plaintiff.

### <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

34. The only administrative remedies that the Plaintiff could have taken in this matter is the grievance which was granted in relation to the incident that occurred at Cayuga County Jail, <u>Exhibit "A"</u>.

35. The Plaintiff was released from "DOCCS" care, custody and control on the 9th day of March, 2016, and now the only remedies that he has available is an <u>Article 78 C.P.L.R. §§ 7803</u> due to the fact that he was released from DOCCS custody and returned to DOCCS about one year later due to DOCCS employees taking unlawful actions.

36. Such Article 78 would be null and void if this court

grants the Plaintiff the Declaratory Relief sought herein.

## FACTS

37. On the 28th day of February, 2016, Plaintiff was an Keeplock Inmate at Auburn Correctional Facility housed on D-Block, 7 company, 27 cell serving the remaining 10 days of his 1 year parole violation.

38. On such date at approxamately 9:20am Plaintiff made an attempt to proceed to keeplock receration. At which time Plaintiff placed all items that he took to keeplock recreation including, his state issued boots on the gate of the cell that he locked in.

39. Shortly after placing such items on his gate C.O. Mr. Nathaniel Sweet and C.O. Mr. Kevin Ashby showed up at Plaintiff Mr. Agee's cell and per established keeplock receration rules and regulations at Auburn Correctional Facility Plaintiff bed is to be made, light is to be on, shirt is to be tucked in and back is to be turned from the gate and once the cell gate is opened Plaintiff is to back out of his cell into Defendant C.O. Mr. Sweet tells him to make an 90 degree turn and face Defendant C.O. Mr. Ashby and under the "reasonable suspicion" standard (which protects DOCCS employees from meritless

PAGE 7

illegal Search lawsuits) Defendant C.O. Mr. Ashby directed Plaintiff Mr. Agee to open his mouth and defendant Mr. Ashby did an quick visual of Plaintiff's Mr. Agee mouth and did not discovery any contraband or anything that appeared to be contraband.

40. White defendant C.O. Mr. Ashby checked Plaintiff's mouth Defendant C.O. Mr. Sweet conducted an pat frisk of Plaintiff Mr. Agee under the "reasonable suspicion" standard since Keeplock recreation at Auburn Correctional Facility does not have individual keeplock recreation cages for each and every inmate but rather two cages in which inmates are locked in cages in groups for their one hour of recreation.

41. During such search conducted by C.O. Mr. Sweet Plaintiff Mr. Agee's shirt was untucked by defendant Mr. Sweet and Mr. Agee had his pants checked by C.O. Mr. Sweet by defendant Mr. Sweet taking both of his tumbs and running them along (the traditional style) pants that Plaintiff was wearing waistband checking for any contraband that may have been hidden along such waistband. Once such search was completed Plaintiff Mr. Agee was to bent over take off the shower shoes that he was wearing take all of his items off of his gate and place them in his pockets then bent over and

put on his boots and immediately after that place both of his hands in his pockets and walk past Defendant C.O. Mr. Ashby and this commenced Plaintiff Mr. Agee to the care, custody and, control of Defendants C.O. Mr. Ashby and C.O. Mr. Sweet.

42. While in the care, custody and, control of Defendants C.O.'s Mr. Sweet and, Mr. Ashby Plaintiff Mr. Agee was walking with his hands in his coat pockets and head directly in front of him, not looking in any other cells due to the fact that such move, just like taking your hands out of your pockets, would be an reason for Mr. Sweet or Mr. Ashby to send Plaintiff Mr. Agee back to his cell and Mr. Agee clearly wished to proceed to keeplock recreation and did not give the defendants any reason for them to send Mr. Agee back to his cell.

43. As Plaintiff Mr. Agee was proceeding to keeplock recreation he could hear an inmate complainting about not being let out for keeplock recreation. As Plaintiff walked by his cell with Defendants C.O.'s Mr. Ashby and Mr. Sweet watching his every move (Note: That 7 company is the last company on D-Block to proceed to keeplock recreation and Plaintiff neighbor 7-28 already proceeded to keeplock recreation making Plaintiff the last inmate to proceed to keeplock recreation

PAGE 9

on the entire block).

44. Plaintiff Mr. Agee could clearly see C.O. Mr. Thomas McCarthy leaving after rushing to lock the lockbox (Which DOCCS staff members use to lock and open the cells, every company has them in every facility under DOCCS jurisdiction that has cells, but in some cases Inmates in certain facilities with cells are afforded Keys).

45. Once Inmate Plaintiff Mr. Agee got to the front of the company he was directed by defendant C.O. Mr. Keith E. Vincent II to place his hands on the lockbox in the presents of C.O.'s Mr. Thomas McCarthy, Mr. Nathaniel Sweet, Mr. Kevin Ashby, Mr. "John Doe" <u>No.7</u>, Mr. "John Doe" <u>No.8</u>, Mr. "John Doe" <u>No.9</u> and several other C.O.'s at Auburn Correctional Facility. Once Plaintiff asked "for what?" He was directed than By defendant C.O. Mr. Nathaniel Sweet to "Just put your hands on the lockbox." Plaintiff did so and was handcuffed & taken down stairs.

46. Upon going down the steps Plaintiff heared Defendant C.O. Mr. Keith E. Vincent tell Watch Commander Lt. Mr. Ray Vanfleet that he removed an weapon from Inmate Plaintiff's Mr. Agee's boot.

PAGE 10

47. Plaintiff Mr. Agee was in shock and asked Defendant Mr. Vincent why would he set him up "when I have 10 days to go home?" Defendant Mr. Vincent replied "Relex you're still going home."

48. Plaintiff Mr. Agee was than taken to SHU by C.O. Mr. Vincent, C.O. Mr. Sweet and, several other C.O.'s that he had seen around Auburn Correctional Facility.

49. Plaintiff was very sad and angry and had to be taken to The Mental Health Unit for an one on one suicide watch and RN Mrs. Noreen A. Cornell was notified, Exhibit "B" is DOCCS Form No. 1140SHU Report of Strip Frisk on Admission to SHU or MHU Cell/Room.

50. On the 29th day of February, 2016, Plaintiff was still in his MHU cell and very angry that he was being denied his shower so he refused to hand over his dinner tray and went to sleep.

51. At around 4:30pm of such date Inmate Mr. Agee was awaken by his cell door opening but Mr. Agee never moved or made any attempt to see who entered such cell into he felted an party jump on his back and body slamed Plaintiff Mr. Agee to the ground punching, kicking, kneeing and, choking Mr. Agee without any provocation.

PAGE 11

52. When Plaintiff Mr. Agee could see was that it was an Lieutenant and an C.O. Plaintiff later learned that the Lt. Last name is Mitchell and is in fact Lt. Mr. "John Doe" <u>No.5</u> Mitchell, who after taking his time to cuff Plaintiff Mr. Agee slapped inmate Mr. Agee calling him an "stupid, retarted nigger."

53. The C.O. Mr. "John Doe" <u>No.10</u> at first jumped on Plaintiff's back but when he seen Lt. Mr. Mitchell's intentions he quickly backed off . . . but, did not to stop Lt. Mr. Mitchell from further assaulting Plaintiff.

54. On the 1st Day of March, 2016, Plaintiff was released from The Mental Health Unit and taken to the Special Housing Unit.

55. On the 5th day of March, 2016, Plaintiff was served an misbehavior report in relation to the incident which occurred on <u>2-29-16</u>.

56. On the 6th day of March, 2016, Plaintiff Mr. Agee wrote and submitted an grievance in relation to the assault he suffered at the hands of Lt. Mr. Mitchell.

57. On or about the 7th or 8th day of March, 2016, unnamed DOCCS employee(s) took an unlawful action and did not accord <u>DOCCS Directive No. 6910</u> The Criminal Prosecution

of Inmates when such DOCCS employee(s) supplied the Cayuga County Assistant District Attorney with DOCCS documentation in relation to the incident which occurred on 2-28-16 with the intention that such documentation be used to commence an criminal action against the Plaintiff Mr. Agee.

58. Next what ADA Mr. Brian T. Leeds, Esq, does is get in contact with an New York State Police Investigator Mr. Brett E. Stover and direct him to copy what was on Exhibit "C", The Unusual Incident Report regarding the incident from 2-28-16 onto an Felony Complaint Exhibit "D", and as his support deposition NYSP Investigator uses an DOCCS To/From Memorandum, From: C.O. Mr. keith E. Vincent II To: Mr. Ray VanFleet.

59. Please not that Plaintiff Mr. Agee does not wish to challenge the criminal conviction herein but is only challenging DOCCS's misconduct.

60. On the 9th day of March, 2016, Plaintiff Mr. Agee was due to be released from DOCCS care, custody and, control but instead Plaintiff was rearrested by members of the NYSP and charged with promoting dangerous prison contraband in the first degree an class-D felony. Bail was set at $3000 cash | $6000 bond, and Plaintiff has not been

Free since March 9th, 2015.

61. Per DOCCS rules and regulations all references to such incident should have been expunged on such date so that such incident would play no role in future decisions especially to cause harm to the Plaintiff.

62. On the 15th day of March, 2016, Plaintiff as the Defendant proceeded to an Preliminary hearing in relation to the incident which occurred on 1-28-17 at such hearing the People produced C.O. Mr. Keith E. Vincent II as its witness.

63. On such date the People did not have even a picture of the alleged contraband.

64. On the 22th, day of March, 2016, the People were allowed to enter Auburn Correctional Facility and illegally obtain further Documentation and physical evidence including the alleged contraband in question.

65. On the 23th day of March, 2016, this matter was presented in front of an Grand Jury and again Defendant C.O. Mr. Keith E. Vincent provided testimony for the People and in addition Mr. Sherri Guzylak, The Inmate Records Coordinator II also provided testimony for the People at such Grand Jury proceedings.

PAGE 14

66. On the 24th day of August, 2016, while Plaintiff Mr. Agee was in the care, custody and control of The Cayuga County Jail at lunch time Plaintiff received his lunch tray and began to eat an bag of Potato chips upon looking inside such bag of potato chips Plaintiff discovered that it was littered with small ants and immedeatelly spit the chips that he was eatting on the ground and informed CCJ C.O. Mrs. "Jane Doe" No.14 Wade about such bag of chips and asked could he be provided an another bag.

67. C.O. Mrs. Wade became very disrespect stating that Plaintiff Mr. Agee would not be provided another bag of chips and ordered the Plaintiff to clean up his mess. Such conduct by an Correctional Officer is unprofessional and is proof that she may not have been properly trained.

68. Plaintiff submitted an grievance on such date which was in fact Accepted Exhibit "A".

69. On the 15th day of November, 2016, Lt. Mr. Joseph Vasile, C.O.'s Mr. Keith E. Vincent, Mr. Nathaniel Sweet, Mr. Kevin Ashby and Mrs. Sherri Guzylak, the Inmate Records Coordinator II at Auburn Correctional Facility and all DOCCS employees provided testimony at

PAGE 15

at the Criminal Jury Trial in the matter related to the expunged incident from <u>2-28-16</u>; for the People to help the People create an basis for the offense of Promoting Dangerous Prison Contraband in the first degree.

70. On the 16th day of November, 2016, The People of The State of New York called Lt. Mr. Timothy Quinn as a witness to create an basis for the offense at the same Jury Trial. The People also produced <u>Exhibit "E"</u>, which includes all Unusual Incidents from September 2015 to September 2016, to create an basis for an offense.

71. Plaintiff has no knowledge of who provided The People with such document which is who Plaintiff referred to As Mr(s), "John/Jane(s)" Doe(s) <u>No. 13</u>.

72. On the 17th day of November, 2016, the Plaintiff as the defendant was found guilty of Promoting Prison Contraband in the first degree by an Jury of his peers,

73. In or around the following week Plaintiff Mr. Agee was issued an misbehavior report by CCJ C.O. Mrs. Wade for allegedly blocking or attempting to block her view of Inmates Fighting. Plaintiff believed that this was an misbehavior report in retailiation for <u>Exhibit "A"</u>.

PAGE 16

74. On the 23rd day of December, 2016, it became disclosed by the Cayuga County DA Mr. Jon E. Budelmann, Esq., to the Media that an C.O. at Auburn Correctional Facility allegedly planted contraband on an inmate to break up an prison gang and that such C.O. admitted such a thing back in May of 2015, Exhibit "F".

75. On the 17th or around the 17th day of January, 2017, the name of such C.O. was disclosed as Mr. Mathew Cornell and allegedly he and two other C.O.'s were placed on Administrative leave after employees from OSI conducted searches of the lockers of the employees at Auburn Correctional Facility and discovered several different kinds of contraband that apparently such C.O.'s used to plant on inmates, Exhibit "G".

76. Also, Five Inmates were exonerated due to the fact that C.O. Mr. Mathew Cornell had direct envolvement in there cases such inmates are Four black men and one Hispanic man — none where white and, all were soon to be released just as the Plaintiff when the allege contraband was found on there persons.

77. Plaintiff was sentenced to three to six years imprisonment on the 9th day of March, 2017, and Plaintiff has been litigating every since.

PAGE 17

80. On the 5th day of March, 2017, Plaintiff met with Officials at Attica Correctional Facility, Exhibit "H" is an time computation sheet from such date.

81. Upon meeting with such official such official disclosed to the Plaintiff that the incident from 2-28-16 is being used as an basis to hold inmate Mr. Agee and in DOCCS databases it makes mentions of the unusual Incident No. 16-0060 which in accord to DOCCS rules and regulations was expunged on the or around the 9th day of March, 2016, proof of such expungment is Exhibit "I", the Plaintiff's Disciplinary Sheet.

82. After becoming enlighten about the law Plaintiff Mr. Agee decided to do an New York State C.P.L. § 440 motion to vacate the judgment [conviction].

83. On the 3rd day of May, 2018, Plaintiff sented the following parties sworn letters asking that they provide affidavits to the Cayuga County Court in reference to there negligence/ misconduct in relation to the incident from 2-28-16.

84. Plaintiff has yet to receive any reply from such letters and submitted such C.P.L. § 440 motion on the 3rd day of August, 2018, and such motion was denied on the 7th day of November, 2018, and such still have yet to provide

such parties.

85. Such parties are Defendants: Mr. Anthony J. Annucci, Mr. Joseph Bellnier, Mr. Harold D. Graham, Mr(s). "John Doe" No.1, Mrs. Sherri Guzylak, Mr(s). "John/Jane Doe" No.2, Mr(s). "John/Jane Doe" No.3 and, Mr. Stephen Maher Exhibit "J", is such letters.

86. In or about November, 2018, the Plaintiff realized that due to eatting soy based foods that DOCCS serves in its Messhalls daily it has costed Plaintiff to develop female type breast. Plaintiff has no choice but to eat such foods due to the fact that he litigates and has to pay certain Court fees and pay for copies regularily.

COUNT ONE: PLAINTIFF SUFFERED VIOLATIONS TO HIS FIRST AMENDMENT RIGHT TO COMMUNICATE WITH THE OUTSIDE WORLD.

(A) RIGHT TO COMMUNICATE

87. If the defendants simply done there jobs [DOCCS defendants] without violating the Plaintiff's fourth, eighth, fifth and fourteenth United States Constitution Amendment Rights while acting under the color of law to violate such federal rights plaintiff would not be subject to DOCCS powers to restrict Plaintiff's access to the outside world.

88. Plaintiff should not be restricted of some of his constitutional first amendment rights to speech, press and association to accomodate the prison's "legitimate penlogical interests", because Plaintiff shouldn't even be incarcerated such limits are.

(B) Internet Communication

89. While Incarcerated in DOCCS, care, custody and, control Plaintiff Does not have direct access to the internet the only access that Plaintiff has to the internet is law library which is very restrictive and supervised.

90. I believe that due to DOCCS defendants misconduct/ negligence and also Defendant's Mr. Cuomo's negligence the only access I have to speak on the internet is through an third party and if not for such negligence/ misconduct Plaintiff would have direct access to communicate and receive information from the internet.

(C) RECEIPT AND POSSESSION OF PUBLICATIONS

91. Plaintiff should not have to or be subject to restrictive first amendment rights to receive publications and, publish.

92. If not for DOCCS employees misconduct and Mr. Cuomo's

negligence Plaintiff would not be subject to the limits Prisons could place upon my rights to right and possess publications for reasons related to legitimate prison interest.

## (D) VISITATION AND TELEPHONE

93. If not for DOCCS employees misconduct and Mr. Cuomo's negligence Prison officials now regulate the time, place and manner that I speak on the telephone and receive visits.

94. Plaintiff has only spoken on the phone to friends and family but per DOCCS rules and regulations such conversations are all supervised making such conversations very restricted.

95. Plaintiff has not received one visitation since he has been rearrested this is due to my mother breaking her leg back in November, 2015, and she is the core of my support system but, now she can barely walk. She has said to me that parking her car then walking the long parking lot would be too much for her leg (which, doesn't appear to be healing anytime soon—if ever) to bare.

COUNT TWO: DOCCS DEFENDANTS VIOLATED PLAINTIFF FOURTH
AMENDMENT RIGHT WHICH PROTECTS ALL PERSONS
IN THE UNITED STATES FROM UNREASONABLE
PAGE 21

SEARCHES AND SEIZURES

(A) DOCCS EMPLOYEES DID NOT ACCORD THE RULE AND REGULATIONS WHICH GOVERNS ITS AGENCY

96. Mr(s). "John\Jane Doe" <u>No.12</u> initiated the Criminal Prosecution against Plaintiff by turning over documentation to ADA Mr. Brian T. Leeds, Esq., whe (s)he did not have the ____ authority to do so.

97. Proof that Mr(s). "John\Jane Doe" <u>No.12</u> did not the statutory authority to turn over such documentation is seen directly from <u>DOCCS Directive No.6910</u>, <u>Exhibit "K"</u>, is "intended to facilitate criminal prosecutions where appropriate and to establish protocol in furtherance of this goal."

98. The Superintendent shall appoint a supervisory staff member to serve as the Criminal Prosecution Liaison ("CPL"). The CPL shall complete the standardized <u>Form No.6910A</u>, "Information\Evidence Packet Cover Sheet," regarding the incident, ensuring that all required information in DOCCS directive No. 6910, IV, A, is included in such Form.

99. Then the CPL shall submit one copy of the Information\ Evidence to the District Attorney's Office and one copy

PAGE 22

to the appropriate police agency (e.g., New York State
Police Bureau of Criminal Investigation). This is
not what occurred Mr(s). "John/Jane Doe" No.12
illegally seized and falsified documentation or had
such documentation falsified then, simply handed such
documentation to ADA Mr. Brian T. Leeds, Esq.

100. Proof that such documentation was falsified is seen in
Exhibit "G", which states that C.O. Mr. Keith E. Vincent
conducted such pat frisk in front of Plaintiff's cell.

101. When asked about such report at The Criminal Preliminary
Hearing C.O. Mr. Keith Vincent had this to say in Exhibit
"L": PAGE 27, LINE No. 4 [Questioned by an former
Attorney of The Plaintiff]

4. Q. "Okay. How does your statement, the
memorandum I had just showed you, how would
that make it to the police report?"
A. "I have no idea."
Q. "Or to the... You don't know how it would
make it into a felony complaint."
A. "Actually no."
Q. "Okay."
Attorney Mr. Brennan to Court "As I am looking at
the felony complaint and this was submitted
by the District Attorney's Office, Your Honor,
and I am wondering why the statement that's,

PAGE 23

that's contained within memorandum to his supervisor, Judge."

Judge did not Reply

Q. [To C.O. Mr. Vincent] "Do you have any explanation for why that would occur?"

A. "Again, as far as any of that, that has nothing to do with myself. That is above my pay grade."

Q. "Would it surprise you that the felony complaint mentions that this weapon was found during a pat frisk in front of the cell?

A. "Would it surprise me? I guess I would say yes, because that's not where it was found. If it was it would've been in my statement."

102. There was never any DOCCS employee and Appropriate Police Agency contact in relation to this matter all that occurred is Mr(s). "John/Jane Doe" No. 12 supplied the Cayuga County ADA such documentation and such ADA contacted NYSP Investigator Mr. Brett E. Stover and had such Investigator to copy what was on the false Unusual Incident Report onto Exhibit "D", the felony complaint and all his other investigative documentation Exhibit "O" which are all carbon copies of Exhibit "D".

103. Then, there is the issue of the alleged contraband in itself. As indicated in Exhibit "O", no Evidence was secured

PAGE 24

by the NYSP.

104. In Exhibit "L", the People of The State of New York did not possess the allege contraband in question, please turn to page 33 of Exhibit "L":

> The Court: Okay. Thank You. Alright. Well, after reviewing the testimony, though it certainly would've been preferable that there was the picture of the actually knife produced based on this testimony of the Correctional Officer...

105. In Exhibit "M", which is the minutes another Criminal Proceeding eight days laters it produced further testimony from C.O. Mr. Keith E. Vincent 11 Page 7 of such Exhibit Line 19:

> Q. by ADA Mr. Leeds
> A. by C.O. Mr. Vincent
> Q. "I am going to hand you what we have marked here as Grand Jury Exhibit Number No. 1. Can you identify that?"
> A. "Yes. That would be the razor-type weapon that was taken off him that day."
> Q. "In looking at that, does that appear changed or altered in any way from the item that you took out of Mr. Agee's waistband at that point?"
> A. "No, not at all."

106. Clearly, DOCCS is considered an dwelling of the Plaintiff since they had him in there care, custody and, control for several months it is unclear if such incident and all references to it, were expunged from Plaintiff's institutional record when such information became knowledge of ADA Mr. Leeds.

107. DOCCS did not accord its own <u>Directive No. 4910 Exhibit "N"</u> which governs the appropriate control, handling and disposition of contraband/evidence within DOCCS facilities.

108. Such contraband was suppose to be destroyed unquestionably by the 9th day of March, 2016 when Plaintiff did not receive any disciplinary hearing and per DOCCS rules and regulations expungment was the most proper remedy.

109. The fact that ADA Mr. Leeds was allowed to enter Auburn Correctional Facility and remove expunged evidence from an secure evidence locker 13 days later without any search warrant is proof of governmental invasion. Since the Plaintiff cannot challenge the criminal prosecution and only wishes to challenge DOCCS employees misconduct while handling such situation.

PAGE 26

110. DOCCS employees who surrendered such contraband to the ADA had no authority to do so. It is my knowledge and belief that no ADA is suppose to be allowed in any prison in the United States to perform any investigative role and Exhibit "N", Page 8, Ground IV, Disposition of Contraband A No.4 clearly states that "each facility Superin Superintendent shall establish a point of contact with the [Appropriate] Police agency, whereby an agreement is in place for the surrender/disposal of contraband."

111. Such directive make's no mention of contraband being turned over to an Prosecutor, because prosecutor's are not police officers and, though all DOCCS employees shall know such a thing because all such employees act under the color of law.

112. By surrendering such contraband to an Prosecutor violated Plaintiff's privacy interest, because such contraband and all references to it should have long been expunged from Plaintiff institutional and departmental record by DOCCS employees holding such at least 13 days after it should have been expunged clearly establishes malicious intent and since Exhibit "N", make's no mention of an Prosecutor

PAGE 27

being allowed to enter an DOCCS Correctional facility to seize evidence DOCCS employees actions while handling such contraband were not objectively reasonable in light of <u>Exhibit "N"</u> which accord and governs the agency of DOCCS even if such employees had no knowledge of such directive that has no baring on such DOCCS employees(s) acting under the color of Law to deprive the Plaintiff of his Fourth Amendment right to be free from illegal or unreasonable searches and seizures.

<u>COUNT THREE</u>: ALL DEFENDANTS HEREIN SUBJECT THE PLAINTIFF TO CRUEL AND UNUSUAL PUNISHMENT WHILE ACTING UNDER COLOR OF LAW TO DEPRIVE PLAINTIFF OF HIS EIGHTH AMENDMENT RIGHTS

(A) SUPERVISOR LIABILITY; DOCCS RELATED DEFENDANTS

113. All Defendant's holding responsibility for lower officials acts or action were personally involved in them for the following reasons:
  (1) The Supervisor "created a policy or custom under which plaintiff's constitutional rights were violated" "and allowed such a policy or custom to continue; Such parties are defendant's Mr. Joseph Bellnier,

PAGE 28

and, defendant Mr(s). John\Jane Doe <u>No.1</u> who created
or continued <u>Exhibit "P"</u>, which governs keeplock
recreation procedures at Auburn Correctional facility"

(2) The Supervisor after learning of a violation of Plaintiff's
constitutional rights fail to remedy the wrong;
Defendant's Mr. Anthony J. Annucci, Mr. Joseph Bellnier,
Mr. Harold D. Graham, Mr(s). John\Jane Doe <u>No.1</u>, Mr(s)
John\Jane Doe <u>No.2</u>, Mr(s) John\Jane Doe <u>No.3</u>, Mr.
Stephen Maher and Mr(s). John\Jane Doe <u>No.12</u>

(3) The Supervisor was grossly negligent in that (s)he
did not adequately supervise the subordinates who
violated Plaintiff's rights. Such parties are defendants
Mr. Andrew Cuomo, Mr. Anthony J. Annucci, Mr. Joseph
Bellnier, Mr. Harold D. Graham, Mr(s) John\Jane Doe
<u>No.1</u>, Mr(s) John\Jane Doe <u>No.2</u>, Mr. John\Jane Doe
<u>No.3</u>, Mr. Stephe Maher, and Mr(s) John\Jane Doe <u>No.11</u>

(i) FAILURE TO ACT TO REMEDY WRONG

114. When Defendant's were afforded notice in <u>Exhibit "J"</u>
they failed to remove such conduct from Plaintiff's
institutional record and were deliberately indifferent
in doing so.

115. It is true that prison and the conditions that is imposed
to criminal offenders who do not accord the law are

PAGE 29

naturally restrictive and even harsh. Such conditions are only being impose upon the Plaintiff due to the deliberate indifference by the defendants who had prior Knowledge of the matter mentioned herein.

116. The defendants who failed to act where deliberate indifferent based off of there attitudes when finally put in positions were they cannot deny or avoid Knowledge, there decision to not fix the problems which they have or had statutory authority over is direct proof of there bad motives to protect subordinates who act unlawfully.

117. The Defendants knew of and disregarded excessive risk to Plaintiff's health and safety. The Defendant's who failed to act knew the only reason that I am even in prison is due to its subordinates misconduct, as the Plaintiff established prison is an naturally restrictive and harsh place and, Defendant's who failed to act were objectively cruel and deliberately indifferent.

(ii) DEFICIENT MANAGEMENT OF SUBORDINATES

118. All Defendants who hold an supervising type position herein are liable for all of its subordinates who violated the plaintiff's constitutional rights for the

PAGE 30

the following reasons:

119. (1) Supervisors knew of subordinates past misconduct and failed to take action to fix it

120. In Exhibit "F" it clearly states that an Correctional Officer at Auburn Correctional facility admitted to authorities that he planted contraband on an inmate back in May of 2015 such inmate was shipped out of such facility to another facility and faced no internal prison discipline meaning that authorities at Auburn Correctional Facility and Central Office knew of such misconduct and choose to not take action.

121. By not taking action to fix such misconduct to assure that it would not occurr to another inmate, supervisors were deliberately indifferent because such defendants knew of and disregarded such excess risk to inmates future health and safety.

122. Such Defendants did not take reasonable measures to abate such risk and did not respond reasonably to such risk and are deliberately indifferent for subjecting to such an serious risk of being set up and the cruel conditions of prison as a result of being set up by Correctional Officers at such facility.

PAGE 31

123. Such supervisors actions or rather inaction were not
adequate given the risk of future inmates being "set
up" It is to Plaintiff's knowledge and belief that the
only reason why such misconduct even came to light
is because of Exhibit "Q", in which an former Cayuga
County ADA stated that the D.A. in Cayuga County
willingly withheld evidence in 15 cases then an
investigation took place into the misconduct at
Auburn correctional Facility by the Office of
Special Investigation but, prior to such ADA specified
in Exhibit "Q", the supervisorary defendants with
prior knowledge of the alleged misconduct at Auburn
correctional Facility gave inconsequential logistical
concerns that help protect C.O. Mr. Mathew Cornell
and let one inmate off the hook as a mere matter of
convenience given the higher priority of Prisoners
basic human needs.

124. (2) Such Supervising Defendants failed to set up policies
that help guide subordinates conduct to prevent
violations of constitutional rights for the following
reason:

125. There is no reason that such supervising defendants
could not have knew that witnesses in Plaintiff's
Criminal Proceeding violated the Plaintiff's Fifth and

14th U.S. Constitution amendment by providing such testimony for the People of the State of New York.

126. There is no way that an properly trained employee should have the authority to leave work, with pay to, provide testimony for an work related incident, that the agency who employ's such employee should have already deemed that such incident never occurred.

127. This allowed such subordinate to provide testimony which was unlawful than when asked about such testimony could simply claim ignorance, which is no adequate excuse for breaking the law.

128. (3) Supervising Defendants failed to properly inform and train staff on policies designed to aviod violations of constitutional rights and such Defendants were deliberately indifferent in doing so.

129. Simply by being in DOCCS care, custody and control the supervising Defendants subjected the Plaintiff to Prison conditions where they were aware of the fact that DOCCS staff members take several unconstitional action with no fear of consequenses and also subject Plaintiff to "cruel and unusual" prison conditions by not supervising properly.

PAGE 33

130. <u>The objective standard</u>, DOCCS supervising staff has allowed its employees to physically assault inmates as part of routine such employees rarely face criminal prosecution, let alone discipline on the job such employees even kill inmates this has been going on for quite sometime and such supervising defendants, including Mr. Andrew Cuomo have subject plaintiff to unreasonable risk of serious damage to plaintiff's health due to the possible future harm to plaintiff health.

131. Supervising Defendants due not fall under qualified immunity for allowing DOCCS to continue to assault inmates because this isn't an case where it has just started happening this is something that has been occurring for quite some time.

132. Qualified immunity is intended to "protect all but the plainly incompetent or those who knowingly violate the law." The supervising defendants are not entitled to such immunity because it is clear there conduct violates established statutory and constitutional rights of inmates in there care, custody and, control and such defendants training is so glossly negligent that future misconduct is almost inevitable.

133. Also, there is another credible risk to Plaintiff health

PAGE 34

inmate on inmate assault. Inmates assault other inmates with razor type weapons, rocks or other forms of weapons or, they conduct 3, 4, 5 or 6 on 1 fights where several inmates v. one inmate.

134. Supervising defendants should have reasonably knew of the risk which it subjects inmates to in their care, custody and, control. Which is the reason why they are liable for civil damages.

135. Unless the Supervising Defendants wants to disclose to this Court that they settle out of Court every year millions of tax payers dollars for lawsuits that inmates in DOCCS care, custody and, control file against its employees the Plaintiff believes that the earliest possible stage that the Defendants could provide an legally sufficient defense in litigation of this matter is after discovery is complete.

136. The second circuit has consistently ruled that prison interal disciplinary (e.g., including its documentation) only has the purpose to serve legitimate correctional goals of maintaining prison goals and Plaintiff believes that the evidence herein supports his claims that he has suffered unquestioned and serious deprivations of basic human needs which constitutes a deprivation of the minimal

PAGE 35

minimal civilized measure of life's necessities" which are grossly disproportionate due to the fact that DOCCS employees were an representive for the People for the sole purpose of assuring that Plaintiff would be prosecuted <u>Exhibit "D"</u>; is proof of such.

137. Such deprivation are those specified in count one, and two in addition to <u>excessive noise</u> which inflicts pain without penological justification and violates the Eighth amendment. Though prisoner are not entitled to athe same noise free environments. I am due to the fact that DOCCS employees not following the rules which governs its agency and its supervising staff doing nothing to attempt to stop such misconduct.

138. <u>Personal Hygiene</u> due to the fact that Plaintiff is an actual prisoner litigator he does not go to commissary due to Court Fees, copies fees, and Mailing fee the Plaintiff owes DOCCS and different countiys court several hundred dollars. Plaintiff, has not been to commissary in about one year and as an result has not been able to adequately address his personal hygiene right to soap, real toothpaste, an adequate toothbrush and, the other basic human needs that Plaintiff would surely have had he not been subject the cruel and harsh conditions of prison.

PAGE 36

139. <u>Nutritionally adequate Food</u>, all the food provided by New York State DOCCS is soy-based food which has had an serious effect on Plaintiff physical appearence.

140. Plaintiff believe's that due to the female growth hormones in such soy-based Food that it has cause the Plaintiff to develop female type breast there is no way that the Plaintiff could have avoided eatting such food because Plaintiff is poor and can only afford the food that DOCCS provides in its mess halls.

141. Plaintiff now smokes cigarettes due to the amount of psychological torture that Plaintiff has been subject to since <u>2-28-16</u>, which clearly amounts to possible harm to Plaintiff's future health.

142. <u>The Subjective Requirement</u>, the Supervising Defendants herein are deliberate indifferent for Knowing acquiescence in the unconstitutional behavior of subordinates persistently violating statutory duty to inquire about such behavior when such defendants have the responsibility of preventing such behaviors by adequately training or supervising subordinates not, knowing of acquiescences in the existences of prison conditions which, themselves, are so injurious to prisoners that they amount to a

constitutional violations.

143. DOCCS employees beat inmates, plant contraband on inmates and commit so many other forms of misconduct against inmates with no risk of consequences even if caught because, the supervising staff which governs such agency have unconstitutionally developed an "Us Us. Them" approch. Which protects all of it's employees no matter what and allows them to never have to admit to any wrongdoing no matter what unrefutable evidence it may face they will stand together, against any inmate who dares to stand before them.

144. The historical indifference will be very clear once discovery is complete deliberate indifference to the Plaintiff's need for safety will reveal repeated examples of negligence and disclose a pattern of Official lawlessness and, systematic gloss deficiencies in all DOCCS staffing facilities procedures.

145. All Supervising Defendants all have knowledge of the serious risk which exists in addition with the cruel conditions of the serious risk impose. Such Defendants have taken no reasonable measures to abate them and never respond reasonably to such risk imposed on any inmate in its care, custody and, control.

PAGE 38

146. All Supervising Defendants are liable for there actions because there responses are almost never adequate given the risk. They usually give inconsequential settlements in civil proceedings and allow DOCCS staff to continue to work in Corrections after committing unusual forms of misconduct. This is because it is more convenience for such supervising staff to buy inmates silence rather than step outside of there unofficial and unconstitutional Post of Leaders of the "Us vs. Them" movement.

147. (4) Mr. Joseph Bellnier, and his underlyings failed to properly supervise staff to make sure that they followed policies.

148. This is seek directly from Exhibit "K", and the case submission procedure used herein which is clearly outside DOCCS rules and regulations but, it is also clearly seen from Exhibit "R" the alleged misbehavior report regarding the incident from 2-28-16 and Exhibit "S", DOCCS Directive Chapter V which governs the filing out such Misbehavior Report.

149. Exhibit "S", DOCCS Directive No. 4932 Page 4-5 Section 251-3.1 Misbehavior Report (B) states: "The Misbehavior report shall be made by the employee who has observed the incident... Where more than one employee has personal knowledge of the facts, each employee shall make a seperate report or, where appropriate, each employee shall endorse his or her name on a report made by one of the employees.

150. In Exhibit "R", no DOCCS employee endorsed such misbehavior report even though there was several C.O.'s present when C.O. Mr. Keith E. Vincent planted such contraband on the Plaintiff.

151. Proof that C.O. Mr. Vincent planted contraband on Plaintiff will be directly seen in Count Three (B),(i) but, further proof will be seen herein.

152. There is no reasonable way that C.O. Defendant Mr. Vincent could have found such contraband on the Plaintiff's persons in the presents of at least six other C.O.'s and no other C.O. wrote any seperate report or endorsed the alleged misbehavior report.

153. Once Mr. Defendant Joseph Bellnier receive direct knowledge of such his duty was to assure that all

C.O.'s where at least identified who were present when the incident occurred.

154. The same could be said about Defendants Mr. Harold Graham, Mr(s). John/Jane Doe No. 1, Mr(s) John/Jane Doe No. 3, and Mr(s). John/Jane Doe No. 4 Exhibit "N", page 7 A. clearly states "It is imperative that staff not contaminate or alter the contraband/evidence in any way. Items or articles which are part of a crime scene and or criminal investigation."

155. It is very clear that it was very practical that the identity of all the C.O.'s be preserved for investigative purposes in accordance to Exhibit "S".

156. Supervising Defendants failed to adequately supervise staff to make sure that they followed The Directives which govern the agency of DOCCS and they are clearly deliberately indifferent in doing so.

157. Defendants C.O.'s Mr. Nate Sweet, Mr. Kevin Ashby, Mr. Thomas McCarthy and all other C.O.'s present all seem to be fairly good men but, clearly wanted nothing to do with such misconduct that C.O. Mr. Vincent had planned for Plaintiff and Supervising Defendants

are deliberate indifferent due to there prior knowledge of an C.O. planting contraband on a inmate in the past and not assuring that all evidence was preserved in the matter herein [2-28-16] such officials knew that there were other C.O.'s present when Defendant Mr. Keith E. Vincent alleges found the contraband on Plaintiff's persons.

158. Defendants [DOCCS] where in privity with the People of the State of New York due to the fact that DOCCS documentation was used to commence the criminal action against the Plaintiff. DOCCS acted as a agent of the State and did not represent their own rights of (w)sing Disciplinary documentation for legitimate, non-criminal, correctional goals of maintaining prison safety, discipline and order but, used such documentation for the sole purpose that it but used in a criminal proceeding, which is the rights of the government. The close association between DOCCS and The District Attorney is seen from the fact that neither conducted any investigation and both relied jointly on the same information.

159. So yes, DOCCS and its officials are subject to the same to the rules of the People of The State of New York in addition the Defendants were still

PAGE 42

obligated to its own rules and regulations.

160. When only Defendants Mr. McCarthy, Mr. Sweet and, Mr. Ashby testified in the criminal proceeding it was 8 months laters and gave such parties an "reasonable excuse" of claiming ignorance about the entire incident and denied the Plaintiff his sixth amendment right to confront his accuser.

161. The Supervising Defendants intented to deprive the Plaintiff of such right and cannot justify not knowing that its employees have been called as witnesses in a criminal proceeding.

(B) BREACH OF DUTY TO PROTECT

162. DOCCS Employees failed to properly protect the Plaintiff in Three ways which are serious enough to raise the issue that they violated Plaintiff constitutional rights.

(i) C.O. Defendant Mr. Keith Vincent Planted Contraband on The Plaintiff

163. Defendant Mr. Keith E. Vincent planted such contraband on the Plaintiff, by lying and stating that such contraband was removed from Plaintiff's persons.

PAGE 43

164. The manner in which Defendant C.O. Mr. Keith E. Vincent alleged to have found the alleged contraband on 2-28-16 could not have occurred by no rational basis.

165. Defendant C.O. Mr. Keith E. Vincent lied on the Plaintiff plain and simple. There is no way that the facts may be in dispute, the inferences from the facts herein will in no reasonable sense lead to a differing conclusion, Defendant Mr. Vincent is simply an interested witness and, the incident from 2-28-16 is an matter which concerns knowledge exclusively held by Defendant C.O. Mr. Vincent and by no rational process could the trier of the facts submitted herein, base a finding in the Defendants favor (e.g., Mr. Thomas McCarthey, Mr. Nate Sweet, Mr. Kevin Ashby, Mr(s). John/Jane Doe(s) No. 10 and No. 11, et al).

166. At the jury trial in the Criminal Proceeding C.O. Mr. Nathaniel Sweet lied under oath stating that Correctional Officers are "not allowed" to put there hands inside inmates pants to frisk around the waistband to check for potential hidden contraband. Defendant Mr. Sweet clearly lied due to the fact that New York State DOCCS has established the reasonable suspicion standard which states that: "As long as an frisking DOCCS employee has an reasonable suspicion to believe

PAGE 44

that an inmate might possess contraband... he can put his hands inside an inmate's clothing while conducting an pat frisk to see if an inmate may possess contraband hidden inside his clothing."

167. As the Plaintiff established earlier in this complaint it would have been very appropriate for C.O. Defendant Mr. Sweet to have an reasonable suspicion to believe that any inmate proceeding to keeplock recreation might very possibily contraband since inmate are in fact keeplock because they allegedly did not follow the rules which governs DOCCS some, or rather most incidents are either related to Drugs or Gangs but, more importantly such C.O.'s who conduct these pat frisk have no idea what the inmate that they are pat frisking is keeplock for and such Correctional Officer has an duty to assure that any inmate in there care, custody and, control are not in possession of dangerous contraband especially in the plain and generally searched area that Defendant C.O. Mr. Vincent alleged to have found such contraband.

168. After the initial pat frisk conduct by Defendant C.O. Mr. Nathaniel Sweet and observed by Defendant C.O. Mr. Kevin Ashby per <u>Exhibit "P"</u> Plaintiff was to put on his state Issued Boots, put his winter hat in and all other items which he was permitted to take

to keeplock recreation pursuant to Exhibit "P", and other DOCCS rules and regulations. But, the point Plaintiff is making is that it is simply impossible for plaintiff to one, have an weapon simply on his waistband without it falling down his pants leg or off of his waist onto the floor there is no way that anything could have been on my waistband because under the watchful eyes of Two Correctional Officers inmate are not permitted to do anything but put on his clothing than immediately place both hands in his pockets walk past the non-frisking down the company towards the C.O. conducting metal detector frisk. Note, that inmates proceeding down the company toward keeplock recreation inmates will be sented back to there cells for simply looking into another inmate's cell   passing or receiving anything from another inmate will result in not only the inmate being sented back to his cell but, also being again pat frisk under the reasonable suspicion standard.

169. Plaintiff was the last inmate to proceed to keeplock recreation on 2-28-16, with that said, per established protocol at Auburn Correctional Facility when the last Inmate is to proceed to recreation he isn't to leave the care, custody and, control of the C.O.'s who conducted the initial pat frisk into he leaves out into

PAGE 46

the outside door for keeplock recreation which the cages are located and when keeplock inmates are allowed mingle with one another. Auburn Correctional Facility has two such cages on both sides of its facility the A,B,E side and the C,D side, Plaintiff was housed on the C,D side of the facility and was the last inmate to proceed to keeplock recreation on D-Block which is generally the last block to proceed to recreation.

170. Another thing is, generally when inmates are caught attempting to bring "serious/dangerous" contraband to keep lock recreation all other inmates will not be premitted to go to Keeplock recreation so that staff or Inmates not contaminate items or articles which are part of a crime scene and/or criminal investigation and should remain untouched and secured within the crime sence area whenever practical.

171. Defendants C.O.'s Mr. Thomas McCarthy, Mr. Nathaniel Sweet, and Mr. Kevin Ashby all gave conflicting and not inherently credible testimony. There is no way that they could claim that they were not present when this alleged incident took place when established protocol clearly places them not even mored than five feet away from where Defendant

PAGE 47

allegedly frisked and discovered the alleged contraband
and by no rational process could such search and seizure
had occurred without such defendants knowing. This
includes Mr(s) John/Jane Doe(s) <u>No. 7</u>, 8, & 9    and
all other parties involved, et al

172. All such defendant are only liable because they were
bystanders to Defendant C.O. Mr. keith E. Vincents
malicious and sadistic behavior and had a realistic
opportunity to prevent or stop defendant Mr. Vincent
from planting or at least pretenting to plant such
contraband on the Plaintiff.

173. Proof that Defendants wanted nothing to do with this
matter whatsoever is directly seen from <u>Exhibit "G"</u>
which is the false Unusual Incident Report which
stated that C.O. Mr. Vincent frisked the Defendant
in front of his cell. By making such report it completely
removes Mr(s). John/James Does <u>No. 7, 8</u> and <u>9</u> and
Defendants Mr. Nathaniel Sweet, Mr. kevin Ashby and
Mr. Thomas McCarthy completely from the situation.

174. Since such defendants wished to maintain and tolerate
and "code of silence" in discovery Plaintiff will
request certain documentation which will establish
that Defendant C.O. Mr. keith E. Vincent was not

even working the hand held metal detector on 2-28-16 and never worked the hand held metal detector the entire time plaintiff was going to Keeplock recreation from D Block, 2-5-16 to 2-28-16. I never seen or rather remember seeing Defendant C.O. Mr. Vincent working the handheld metal detector unless Defendant Mr. John Doe No. 7 was not working because, Defendant Mr. John Doe No. 7 ALWAYS works handheld metal detector.

175. Defendant C.O. Mr. Keith E. Vincent alleged that he Exhibit "L", Page 16, Line 23, Questioned by Plaintiff's former Attorney:

23) Q. "And describe to the Court what a pat frisk actually is?"

1.) A. "A pat frisk, everybody has their own kind of method of doing it, but normally you start with the arm area as you search the arms running your hands over the materials, run your hands down the chest area around the back, the sides, WAIST LINE ..."

176. As a matter of Law what Defendant C.O. Mr. Vincent alleged occurred on 2-28-16 is insufficient, by no rational process could the Waist line been frisked and Exhibit "T", not fall down Plaintiff's

PAGE 49

pants leg or been discovered, but more so this is direct proof that Defendant C.O. Mr. Nathaniel Sweet committed prejury under oath when he stated that, in the Plaintiff jury criminal trial that DOCCS employees are not trained to search the Waist band.

177. Then there is the question of Defendant C.O. Mr. Vincent questionable memory, since there was no investigation into this incident, it allowed Defendant C.O. Mr. Vincent to say whatever he felted was believeable because, this entire matter is exclusively within his knowledge.

178. Back to Exhibit "L" Page 18, Line 2, Still questioned by Plaintiff's Attorney:

2.) Q. Okay and where do you... As far as his waistband, explain to be what a prison waistband would be? I mean, is it... Are there pockets in the waistband or is just a, is it enclosed?"

6.) A. "No, it's in... There's two different types of waistbands. You have elastic waistbands, as well as just your traditional pants waistband,"

7.) Q. "Okay, Did my client have an elastic waistband on at that time."

11.) A. "Yes, I believe he did have that."

PAGE 50

12.) Q. "Okay. You indicated that as far as where in the waistband was it? Was it... I guess on his body could describe where the waist band?"

15.) A. "It was more, almost center on his body, but a little bit to the right hand side."

17.) Q. "Okay."

18.) A. "Right in the front of the waistband."

19.) Q. "Okay. Was it more tucked in the waistband? Was it inside? Is it a drawstring waistband I guess is what I am getting at?"

22.) A. "No, not a drawstring."

23.) Q. "Okay. So, would there have been a hole in the, in the pants themselves?"

1.) A. "There was not to the best of my knowledge, there was not one in his."

3.) Q. "Okay. So, there was no holes is what you're testifying. There was no hole in the actually pants?"

5.) A. "To the best of my knowledge. I did not take his pants off."

7.) Q. "Okay."

8.) A. "And go through them in that type of manner."

9.) Q. "Was, was his pants taken into evidence?"

10.) A. "Not that I am aware of."

179. The fact that Defendant C.O. Mr. Vincent could remember all of the small details but, none of

PAGE 51

were big and which he had an duty to know.
Clearly defendant C.O. Mr. Vincent knows that his
allegations are without rational basis if he cannot
conseal the fact that he alleged to have simply
found such contraband just tucked on ~~so~~ Plaintiff's
waistband, defiant to gravity even after an pat
frisk, the Plaintiff benting down to put on his shoes,
hands in his pockets in the care, custody and control
of two seperate Correctional Officers, even though
such allege contraband is about two inches long
and an half inch wide his goal was to led the
person hearing the evidence to simply assume the
location in Exhibit "U", which is all the further
DOCCS documentation which states that such
contraband hidden on my waistband.

180. If this Court would take another look at Exhibit
"L", it would see that defendant C.O. Mr. Vincent
clearify's the exact location of the contraband
himself and erases all doubt turn to page 26,
of Exhibit "L" :

5.) Q. "Okay, and you ~~did testify~~ that his pants at that
      time were not taken as far as you know?"

7.) A. "Yes, as far as I know."

8.) Q. "Okay. Would the pants be taken in the same
      way though if they were at some point

taken, dropped in a drop box or would they just be handed over?"

11.) A. "They would be, but I don't see why they would of even had taken the pants."

181. There is no "They" Defendant C.O. Mr. Vincent handled this matter and had the duty to preserve, as a matter of law by no rational basis should any Court believe that at the time of the incident defendant Mr. Vincent discovered an altered state issued razor blade in altered state pants and not take both into evidence.

182. It simply isn't possible for Plaintiff to be pat frisk never leave the presents of the initial frisking officers care, custody and, control with his hands in his pockets and be frisked again seconds later and as Defendant Mr. Vincent states, in Exhibit "L", page 12:

1.) A. "At that point in time I just pretty much, you know just, you know, remain there. Felt along his waistband there. Felt something, pulled the waist band down and there razor blade was actually right there."

183. Defendant's C.O.'s Mr. Keith E. Vincent, Nathaniel Sweet, Mr. Thomas McCarthy, Mr. Kevin Ashby, and Mr John Does

PAGE 53

<u>No. 6-9</u> all acted under the color of law to deprive the Plaintiff of his Constitutional rights.

(ii) LIEUTENANT MR. "JOHN DOE" <u>No.5</u> (last NAME) MITCHELL ACTED UNDER THE COLOR OF LAW WHEN HE MALICIOUSLY AND SADISTICLY BEAT THE PLAINTIFF ON <u>2-29-16</u>

184. On the 29th day of February, 2018, Mr. John Doe <u>No.5</u> was thinking that Plaintiff appearently was mentally challenged and an easy victem who wouldn't know the appropriate steps to take since Plaintiff was in the Mental Health Unit.

185. In fact Defendant Mr. John Doe <u>No.5</u> Mitchell was so sure of himself and his judgment that he conduoted most of the assault in the Plaintiff's cell which has an small camera clearly in the corner.

186. Plaintiff did not suffer permanent and severe physical damage the force that Defendant Mr. John Doe <u>No.5</u>, used was clearly unreasonable and excessive andy has led to psychological trauma on the Plaintiff who fears that he may be assaulted again by DOCCS employees who think similiar to Mr. John Doe <u>No.5</u>

187. Plaintiff still deals with lower back pain, migraine

PAGE 54.

headaches, and, dizziness after Mr. John Doe No.5 punched, kicked, kneed, choked and body slammed Plaintiff maliciously and sadistically without any provocation therefore There is no justification for the amount of force that Mr. John Doe No.5 used.

188. Then there was the verbal abuse that Mr. John Doe No.5 used which provides another factor that Mr. John Doe No.5 acted unreasonable with malicious intend.

189. Plaintiff issue with Mr. John Doe No.10 is that he was deliberately indifferent because he was an bystander who had an realistic opportunity to prevent or at least stop Defendant Mr. John Doe No.5 from maliciously beating The Plaintiff.

190. There also may be Supervisory liability once discovery is complete, if it is discovered that Defendant Mr. John Doe No.5 has a history of misusing force such supervising Defendants have a duty to properly investigate and respond to such allegations, Not maintaining or tolerating a "code of silence" about staff's misconduct.

### (C) THE MUNICIPALITY OF CAYUGA COUNTY FAILED TO PROPERLY TRAIN ITS EMPLOYEES AT CAYUGA COUNTY JAIL

PAGE 55

191. The municipality of Cayuga County failed to properly train its employees this includes its kitchen staff at Cayuga County Jail and C.O. Mrs "Jane Doe" Wade who was completely disrespectful to Plaintiff in response to the incident from <u>8-24-16</u>

(i) THE MUNICIPALITY OF CAYUGA COUNTY FAILED TO PROPERLY TRAIN IT COUNTY JAIL KITCHEN STAFF

192. There is no Justification for the Plaintiff receiving an bag of potato chips with no air inside of them, simply because there is an possiblity that such potato chip might contain any deadly number of things.

193. Once the Kitchen worker, an Cayuga County employee or an inmate working under the supervision of such employee removed an airless bag of chips and discovered that it had to air inside all similar bags and the first bag should have been destroyed.

194. Since such bags where not destroyed on first sight in takes the liability from the Vendor and places it on the County of Cayuga because clearly it did not take the proper steps to train its staff to avoid the unnecessary inflicton of pain upon inmates in its

PAGE 56

care, custody and, control.

195. But, the burden isn't only on Cayuga County to bare, all the DOCCS ~~x~~ ~~~~ Defendants are also at fault for subjecting plaintiff to the jail conditions of Cayuga County Jail. If not for there misconduct Plaintiff would not have been incarcerated.

(ii) DEFENDANT CAYUGA COUNTY JAIL CORRECTIONL OFFICER MRS. JANE DOE No. 14 WADE WAS ESPECIALLY CRUEL AND UNUSUAL IN HER REACTION TO PLAINTIFF INFORMING HER THAT IT WAS ANTS IN HIS FOOD ON 8-24-16

196. There was no reason for Defendant Mrs. Wade to react in the manner that she acted in which was completely unjustified.

197. Defendant Mr. Wade was mean and very disrespectful in her response. Mr. Wade did not properly consider the immediate threat of harm which plaintiff could have been in had plaintiff been allergenic to Ants before Mrs. Wade can object I would like to remind this court that Mrs. Wade is not an Doctor and to my knowledge has no experience in the medical Field.

198. The amount of psychological torture that Defendant Mrs. Wade placed upon the Plaintiff is proof that defendant Mr. Wade had not been properly trained to support that claim is Exhibit "A" which states that "Officer Wade could not possibly have fully appreciated how those raw emotions were generated," Which isn't possible when I clearly attempted to explain to her what had occurred and she refused to listen.

199. Defendant Mrs. Wade is liable since she was acting under the Color of Law to deprive Plaintiff of his United States constitutional right when she subject Plaintiff to an excessive risk of harm and the basic elements of life's necessities this includes food and the basic elements of hygiene.

200. But, the burden is not one that Defendant C.O. Mrs. Jane Doe No. 14 Wade should bare on her own had it not been for the misconduct of DOCCS defendants Plaintiff would have never been subject to Mrs. Wade's curel and unusual conditions.

COUNT FOUR: RETAILATORT TREATMENT FOR FILING GRIEVANCES

PAGE 58

(i) MRS. JOHN/JANE DOE No.12 TURNED THE DOCUMENTATION OVER TO ADA MR. LEEDS BECAUSE PLAINTIFF FILED AN GRIEVANCE ABOUT THE PHYSICAL ASSAULT THAT LT. MR. MITCHELL ADMINISTRATED ON PLAINTIFF ON 2-29-16

201. Plaintiff filed an grievance on about the 6th day of March, 2016, at Auburn Correctional Facility in which the Plaintiff had an First Amendment right to do so.

202. Defendant Mrs. John/Jane Doe No.12 found out about such grievance around the 7th day of March, 2016, and supplied the Cayuga County DA with the documentation that The People of The State of New York used to commence the criminal action against the Plaintiff, as Exhibit "D" indicates.

(ii) DEFENDANT C.O. MRS. JANE DOE No.14 WADE WROTE PLAINTIFF AN MISBEHAVIOR REPORT IN RETALIATION FOR PLAINTIFF WRITING AN GRIEVANCE WHICH PLAINTIFF WON

203. Plaintiff has an First amendment right to the speech which he used to file such grievance filed on 8·24·16.

204. Defendant C.O. Mr. Wade waited about two and one half months later and retaliated by writing Plaintiff an misbehavior report for allegedly blocking her

PAGE 59

view of two inmates fighting in an cell.

205. Plaintiff was unaware that two inmates were
indeed fighting and went to the C.O.'s post to
ask C.O. Mrs. Wade an question regarding legitimate
and important question regarding an issue at the
facility and, again C.O. Mrs. Wade was very
disrespectful and dismissal towards the Plaintiff.

206. About one week later Plaintiff received an misbehavior
report which stated that Plaintiff made an attempt to
obstruct Defendant C.O. Mrs. Jane Doe No.14 Wade's
view of an fight.

207. Plaintiff has never received an misbehavior report
of this sort in all the years that Plaintiff has been
incarcerated.

208. At the disciplinary hearing in relation to such silly
misbehavior report the hearing officer came to Plaintiff
with an complete disciplinary sanction sheet which stated
that Plaintiff plead guilty which is totally false
and, plaintiff refused to sign it and received 45 days
"keeplock"!

209. Plaintiff believes that evidence supports his claims

and shows that defendant Mrs. Wade only wrote such misbehavior report because plaintiff won a grievance against her.

<u>COUNT FIVE</u>: DOCCS DEFENDANTS DEPRIVED THE PLAINTIFF OF DUE PROCESS OF LAW WHILE ACTING UNDER THE COLOR OF LAW AN VIOLATION OF PLAINTIFF'S FOURTEENTH AND FIFTH U.S. CONSTITUTIONAL RIGHTS

(A) THE DOCCS DEFENDANTS IMPOSED SANCTIONS UPON THE PLAINTIFF WHICH WERE SO DISPROPORTIONATE THAT THEY MUST BE VEIWED AS CONSTITUTING ESSENTIAL CRIMINAL PUNISHMENT AN VIOLATION OF PLAINTIFF'S FIFTH AMENDMENT RIGHT THE DOUBLE JEOPARDY CLAUSE

210. Plaintiff clearly does not wish to challenge the criminal conviction herein Plaintiff only is challenging the fact that the supervising DOCCS defendants injured the Plaintiff. when, they violated an obligation imposed and, required by the law.

211. DOCCS defendant Mrs John/Jane Doe <u>No. 12</u> violated the privity like relationship between inmates and DOCCS internal prison discipline being used for criminal governmental objectives. When such defendant

PAGE 61

clearly commenced the prison disciplinary proceedings with the filing of Exhibit "D", an Accusatory instrument in Court.

212. The DOCCS supervising Defendants are also at fault because they all knew of the conduct of Mrs. John/Jane Doe No.12 and, if they didn't know directly they had an duty to know.

213. This can also be said about New York State Governor Mr. Andrew Cuomo who will not act appropriately when served with these allegations but, rather do what is convenient for Mrs. John/Jane Doe No.12 and his/her supervising employers.

214. The wrost part about this entire situation is that the information was incorrect because the felony complaint and additional police investigative documentation are carbon copies of Exhibit "C", which plaintiff and defendant L.O. Mr. Keith E. Vincent both acknowledge as false.

215. DOCCS defendant(s) Mrs. John/Jane Doe(s) No.12 did not accord DOCCS Directive No. 6910, Exhibit "K", and there was no investigation conducted into this matter by DOCCS officials or any Police agency and, the People

of the State of New York relied solely on the information that Mr(s). John/Jane Doe(s) No.12 provided them to commence the criminal action against the Plaintiff.

216. By providing such documentation to the People of The State of New York; Mrs John/Jane Doe No.12 disregarded the rights of the Plaintiff and decided to act as an agent of the State since such defendant did not represented not there own rights of maintaining legitimate, noncriminal, correctional goals, prison safety, discipline and, order but the rights of the People at an criminal proceedings.

217. The close association DOCCS and The People of New York State, in handling this matter is directly seen from the fact that neither party conducted an Investigation and, both operated jointly in helping defendant C.O. Mr. Keith E. Vincent create an story to support his allegations.

218. That neither party conducted any investigation is seen in Exhibit "L", and the testimoney provided by defendant C.O. Mr. Keith E. Vincent: PAGE 22 of Exhibit "L"
   9.) Q " Did you ever talk to a state trooper in regards to this incident?"
   11.) A " In regards to this incident?"
   12.) Q " Yes."

13.) "No."

219. Turn to Page 26 of Exhibit "L" and it states:

13.) Q "Okay. So you had no contact as far as,, were
you interviewed by anybody else regarding
this, this incident after your memorandum was
submitted?"

16.) "A "No."

17.) Q "Okay so, you never spoke to a supervisor
about this? It was just you fill out this
memorandum and pass it up?"

20.) A "Yes, that is correct."

220. By Defendant C.O. Mr. Keith E. Vincent making such
statements when he is the principle witness is proof
that no investigation ever occurred on any level and,
Plaintiff suffered injury simply based off of the word
of Defendant C.O. Mr. Keith E. Vincent.

221. Plaintiff would have no argument if an Appropriate
Police Agency conducted an official investigation,
which would have been separate from DOCCS and
all its documentation, which is so civil in Nature it
requires no further elaboration.

222. Here the Plaintiff would like to let this Court know
PAGE 64

that this would be an rare instance where collateral estoppel could apply due to the fact that there is an identity of parties. DOCCS, is suppose to prosecute the prison disciplinary proceeding but, by Defendant Mr(s). John/Jane Doe(s) No. 12 turning over such DOCCS documents to the People of The State of New York, and the People used such documents to commence an criminal action against the Plaintiff, DOCCS became a representative of the People in the distinctive and customary usage of that term for prosecutorial purposes.

223. The Double Jeopardy Clause bars criminal prosecution of Plaintiff, prison inmate because prison disciplinary documentation was used not to commence an internal Prison disciplinary sanction but, to commence the criminal prosecution its self, when prison disciplinary [d]ocuments are not designed to vindicate public justice, but rather to further separate and important public interest in maintaining prison order and safety.

(B) EXPUNGEMENT OF THE CONDUCT FROM 2-28-16 FROM PLAINTIFF'S INSTITUTIONAL RECORD

224. On the 9th day of March, 2016, DOCCS had an duty pursuant to New York State Law, to expunge all references to the incident from 2-28-16, from Plaintiff

PAGE 65

institutional record.

225. That did not occurr because Plaintiff's record still make's mention of Exhibit "C", the Unusual Incident Report as the basis that Plaintiff is being held under.

226. This is because the dismissed charges played an very actual important role in future litigation of the People and DOCCS employees so it was only expunged in part from Plaintiff's Disciplinary Record as seen in Exhibit "I".

227. Plaintiff is aware that the federal standards are completely different but, expungement is proper remedy because if Plaintiff been afforded an properly conducted hearing such charge would have been dismissed simply because the Unusual Incident Report is different from the Misbehavior Report.

228. In addition to that othered than defendant's C.O. Mr. Keith E. Vincent testimony, which is riddled with contradiction, there is no evidence to support his allegations and DOCCS employees conduct while handling this matter denied the Plaintiff due process of Law and significantly affected the Plaintiff's ability to demonstrate his innocence.

229. Though DOCCS disregarded its own rights Plaintiff feels that he still has the right to hear and be heard. By DOCCS refusing to hear Plaintiff when they were a representative of the People for prosecutorial purposes violated plaintiff's due process U.S. constitutional right. It is DOCCS duty to inform prisoners of the evidence against them so that Prisoners can respond to it.

230. DOCCS had the _____ power to hear and determine the controversies between Plaintiff and its self instead DOCCS made its determination in violation of lawful procedure which include Exhibit "K", and Exhibit "N", the defendants herein made an attempt to apply the law to them only when it was favorable to them and there subordinates.

231. DOCCS was barred by the doctrines of collateral estoppel because, DOCCS exonerated the Plaintiff of the same charge institutionally. Which was considered an Administrative decision, that DOCCS employees disregarded when they became representatives for the People in a subsequent criminal prosecution. DOCCS is an agency which acts in an quasi-judicial capacity when it resolves internal disciplinary hearings disputed issues of facts and DOCCS had an adequate opportunity to litigate the matter challenged herein but, failed

to do so. Failing to conduct the hearing was an quasi-judicial, adversary proceeding in which DOCCS deprived the Plaintiff of notice and the incentive to present an case, examine and cross-examine witnesses, introduce documentary proof/evidence, make oral or written arguments, receive assistance with a defense that all segregated prisoners are entitled to in the United States under the 14th Amendment and, have an Impartial and Fair Hearing Officer.

232. Clearly there is an identity of factual allegations at issue which resulted in a final judgment on the merits and which was a administrative proceeding and, DOCCS representing the District Attorney to be estopped as an matter of law.

233. By giving conclusive effect to its prior decision and allowing defendants Mrs. Sherri Guzylak, Mr. Joseph Vasile, Mr. Keith E. Vincent, Mr. Timothy Quinn, Mr. Kevin Ashby, Mr. Thomas McCarthy and Mr. Nathaniel Sweet to provide further testimony evidence for the People (and that also goes for Mr(s) John/Jane Does No. 13 who turned over Exhibit "E", to the People). DOCCS supervising Defendants didn't promote judicial economy by promoting repetitive litigation and the mere possibility of inconsistent judgments which did not only undermine

PAGE 68

the integrity of DOCCS but, also the judicial system.

234. Once the matter was ordered expunged by the Proper DOCCS supervisiors it should have been final. Mr(s). John/Jane Doe(s) No.12 should have never implemented the Plaintiff to the Cayuga County District Attorney Office and, such DOCCS employee(s) did not accord Exhibit "K" DOCCS Directive No. 6910 The Criminal Prosecution of Inmates, which does not prohibit against the exercise of implied authority, but such authority can only be deemed to exist under realistic veiw of a statute as related to the evils it is designed to suppress. Proof of the evil intent of Mr(s). John/Jane Doe(s) No.12 is seen directly from the fact that such defendant wished to punish plaintiff by turning over such documents to the People of New York State and not to the appropriate police agency.

COUNT SIX: PLAINTIFF BELEIVES THAT EVIDENCE SHOWS THAT THE DEFENDANTS SINGLED PLAINTIFF OUT DUE TO HIS RACE AND DEFENDANTS TOOK ACTIONS WHILE ACTING UNDER THE COLOR OF LAW WHICH DEPRIVED THE PLAINTIFF OF HIS UNITED STATES FOURTEENTH AMENDMENT RIGHT WHICH GUARANTEES ALL PERSONS IN THIS COUNTRY HAVE THE EQUAL PROTECTION OF THE LAW

PAGE 69

235. Plaintiff was treated differently from most other inmates who were soon to be released from DOCCS care, custody and control and differently from other inmates period.

236. Plaintiff in addition to the other inmates specified in Exhibit "F" and Exhibit "G" there is Five black inmates and one Latino inmate who was treated differently from other inmates who were in similar situations facing similar circumstances.

237. All inmates were soon to be released from prison after paying there penalty for their offense against Society when DOCCS employees unequally planted contraband on them with the intention that such inmates lives be destroyed and this includes the Plaintiff.

238. All the Defendants especially the Supervising defendants herein displayed evil intent which caused irreparable damage to the Plaintiff life. DOCCS employees should be trained to know all the rules which may apply to them in the future. The fact that DOCCS employees disregarded its own rules and regulations and Supervising Defendants felted it was best that they protect the interest of it's staff rather than the interest of justice

PAGE 70

which is direct proof that they, the defendants, singled out the Plaintiff for arbitrary and irrational treatment. There are and has been several white inmates at Auburn Correctional Facility and none of them have ever alleged to have been set up, and best to Plaintiff knowledge there is no evidence that white inmates have been subject to the same misconduct.

239. It is very apparent that Supervising Defendants at Auburn Correctional Facility has a very "special" relationship with The Cayuga County District Attorney Office. Prior to the 23th day of December, 2016, The Cayuga County D.A. prosecuted an Unusual Number of weapon(s) [Promoting Prison Contraband] cases. As to date Plaintiff has not heard of any inmate being Prosecuted in such county since Plaintiff's conviction.

240. More disturtingly, Plaintiff has encountered several Inmates who have been Prosecuted in Cayuga County for conduct at Auburn Correctional Facility For assault on Correctional Officers.

241. Plaintiff believes that Auburn Correctional Facility Employees continue to target Black and Latino inmates so that they can be prosecuted but instead of planting contraband on such inmates they simply assault them

PAGE 71

than allege that they were assaulted there would be
no reason why assaults on staff would simply skyrocket
as they have at Auburn Correctional Facility, as they
have in the last two years.

242. Plaintiff believes that the evidence will support that
there is alot of racist motivation behind taking such
unlawful actions against Black and Latino inmates
and, there is an special type, unlawful relationship
between the Cayuga County D.A.'s office and, supervising
employees at Auburn Correctional Facility.

## DAMAGES

### (A) INJUNCTIVE RELIEF SOUGHT

### (i) CAMERAS IN ALL DOCCS FACILITIES IS PROPER

243. Prior to DOCCS placing cameras in Clinton Correctional
Facility and, Attica Correctional Facility, Correctional
staff claimed daily that inmates were assaulting them.
Most staff who made such claim rarely suffered
injury.

244. While inmates who they allege have assaulted them
have suffered broken bones, or in some cases even

PAGE 72

death. In addition to the "assaults" that inmates suffered at these two facilities, neither the inmate or the inmate's family has received compensatory damages, in most, if not all those cases they were settled out of court.

245. Here in Clinton before there were cameras, there has no claims of severals          C.O's maliciously beating an inmate and pushing such inmate down the stairs while he was handcuffed.

246. Clearly, inmates getting assaulted by C.O's was not the only misconduct that C.O's took part in I am pretty certain if an officer is willing to beat an inmate to death, simply because he can, they cannot reasonably be ruled out from planting contraband on inmates, rape and, other forms of unlawful conduct.

247. Attica has zero blind spots, meaning there is no spots where an camera isn't watching meaning that, it is not possible for an C.O to plant contraband on an inmate, without being caught and, to the camera's credit to Plaintiff's knowledge it has not occurred. It also removes the inmates from making false allegations on C.O's and other inmates.

PAGE 73

248. DOCCS employees no longer claim that inmates simply walk up to them and assault them at facilities were there are cameras. It may happen on an very rare occasion but, Plaintiff is certain that it occurrs 99.9% less than DOCCS alleged that it did.

249. If such claims are deemed to be ture they have to be     reconsidered after cameras went up and all inmates simply stopped such misconduct. This puts all of the C.O.'s credibility in question.

250. Such misconduct still occurrs at other Correctional Facilities and the liklihood is substantial that Plaintiff could be transfered any such facility which does not have cameras andy suffer irreparable injury by neither over zealous C.O.'s who, only suffer consequenses for there unconstitutional conduct when inmates are killed and when inmates litigate. Or other inmates.

251. The only legal remedy available which will unquestionably protect the Plaintiff from suffering irreparable injury in the forseeable future is if DOCCS puts cameras in all of its Correctional Facilities which clearly is the only remedy to make DOCCS employees stop taking actions to

PAGE 74

harm inmates physically.

252. It would also stop DOCCS staff member  from switching facilities so they can continue there unconstitutional conduct without being on camera.

## (ii) MOST DOCCS DEFENDANTS SHALL BE FIRED AND PROSECUTED

253. Mr. Andrew Cuomo shall enjoy his duty as a matter of Law and fire and order the Attorney General to prosecute The following Defendants, or This Court shall act upon terms as may be just.

254. Such defendants are Mr. Joseph Belliner, Mr. Anothony Annueci, Mr. Harold Graham, Mrs). "John/Jane Does Numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12 and, 13, Mrs. Sherri Guzylak, Mr. Stephen Maher, Mr. Joseph Vasile, Mr. Timothy Quinn, Mr. Keith Vincent, Mr. Thomas McCarthy, Mr. Nathaniel Sweet and, Mr. Kevin Ashby.

255. Specify Defendants Mr. Keith E. Vincent, Mr. Thomas McCarthy, Mr. Kevin Ashby, Mr. Nathaniel Sweet, Mr. Timothy Quinn, Mr. Joseph Vasile and, Mrs. Sherri Guzylak shall be fired for providing  testimony for the People when the case was never properly submitted to the People. The fact that such defendants may

PAGE 75

claim that they didn't know the proper policy is not adequate especailly if it is later discoured that they were properly trained about such procedures.

256. Defendants Mr. Anthony Annucci, Mr. Joseph Belliner, Mr. Harold Graham, Mr. Stephen Maher and, Mr(s) John/Jane Does No. 1, 2 and 3. Shall be prosecuted because they all are supervisiors acting under the color of law and failed to adequately supervise defendants who took unlawful actions — but, instead of supervising such defendants themselves decided that they would partake in such unlawful actions. Proof of that is seen in Exhibit "J" and the fact that such defendants who were call as witnesses were called from work and, the D.A., not an investigator came to the prison and was allowed to gather evidence. Such supervising defendant actions or rather inaction has tead to Plaintiff being deprived of several of his constitutional rights.

257. Defendants Mr. Joseph Vasile, Mr. Keith Vincent, Mr. Kevin Ashby, Mr. Nathaniel Sweet and Mr. John/Jane Does No. 5, 6, 7, 8, 9, 11, 12, and 13 shall be prosecuted and fired for lying and protecting defendant Mr. Keith Vincent.

258. Defendant Mr. Joseph Vasile stated under oath while

at Plaintiff's criminal trial that there is/was nothing unusual about the Plaintiff's case and became just as liable as defendants Mr(s) John/Jane Does No. 12 and 13 who illegally turned over documents/evidence to the People which is civil in nature and by law was not suppose to be used in an criminal proceeding.

259. Defendants who were present when defendant Mr. keith Vincent handcuffed plaintiff are just as guilty as Mr. Vincent. It was impossible for such defendants to not had seen anything, they simply maintained an code of silence and it resulted in plaintiff suffering irreversible injury.

260. Mr. Ray Vanfleet and Mr. keith Vincent together made up Mr. Vincents allegations after Mr. Vincent told Mr. Vanfleet that he found such contraband in Plaintiff's shoe. This makes defendant Mr. Ray Vanfleet just as guilty because he signed and promoted an story which he had an duty to know who not possible. This is why there are two seperate stories because someone maybe defendant Mr. Timothy Quinn realized that it was not possible for a searched inmate to possess contraband.

261. Firing and Prosecuting such defendants is proper

PAGE 77

due to the fact that plaintiff could possibly suffer further irreversible damage if such defendants wish to retaliate against plaintiff for filing their complaint herein, Auburn is an transit facility and plaintiff has already been back twice; since the incident all of the CO's know plaintiff due to such incidents.

262. Plaintiff has already suffered substantial and irreparable damage due to such defendants unconstitutional actions, which has resulted in plaintiff serving three years in prison and approxamately three years and several months to go. Such injury cannot be fixed in the future and, has to be considered an ongoing violation of plaintiff's constitutional rights.

263. Plaintiff has years to go in prison and there is no other legal remedy to assure plaintiff's safety. This is not the first time that such defendants partook in such unlawful actions and the only way to assure that plaintiff won't be hurt by defendants is if such defendants are placed in a place where they cannot hurt anyone.

(iii) THE PROPER DEFENDANT SHALL REMOVE THE INCIDENT FROM 2-28-16 FROM PLAINTIFF'S

PAGE 78

INSTITUTIONAL RECORD

264. It is unconstitutal for such misconduct to be used as an basis to punish Plaintiff, when it should have been expunged on or prior to the 9th day of March 2016.

265. Plaintiff will suffer future harm unless all references to such incident is removed from Plaintiff's institutional record since it is the entire basis that DOCCS is using to hold/incarcerate the Plaintiff.

266. Plaintiff will have to serve out the remaining time he has left on his three to six year term of imprisonment unless such references are properly removed from Plaintiff's institutional record. This includes the Unusual Incident Report and other forms of institutional documentation.

267. Such injunction is adequate because it is truly the only way to prevent future harm to the Plaintiff and is the core of the injury that Plaintiff has suffered from.

(xi) CAYUGA COUNTY — THE MUNICIPALITY SHALL

PAGE 79

DIRECT CCJ C.O. MRS JANE DOE WADE TO TAKE
ANGER MANAGMENT CLASSES AND SUBMIT
WEEKLY DRUG TEST

268. Plaintiff has been around drugs and people who
use them his entire life and Mrs. Wade has consistently
displayed the characterists of an person who uses them,
or an person who cannot manage her anger.

269. Mrs. Wade eyes are alway glossy and she is always
yelling as if she is alway frustrated about
something and, Plaintiff believe's that that something
is drugs. Which is why Plaintiff believes that the
interest of justice would be better served if Mrs.
Wade was regularly tested for drugs.

270. This is the proper remedy due to the fact that
Plaintiff has family in such county and could very
possibly return and, even though Plaintiff has no plans
to break the law ever again, due to Plaintiff's record
it is reasonable to believe that Plaintiff may return
to jail, and once again be subject to defendant's Mrs.
Wade nasty attitute.

271. One cannot predict how defendant Mrs. Wade will
react toward Plaintiff especially if she is on drugs
PAGE 80

She ahas already claused irreparable damage to the Plaintiff by writing an completely false misbehavior report. There is no telling what further action she may take against the Plaintiff.

(v) DOCCS SHALL BE ORDERED BY THIS COURT TO STOP SERVING INMATES SOY-BASED FOODS

272. Such soy based foods has caused Plaintiff to develop female type breast when Plaintiff was not even suppose to be in DOCCS care, custody and control and, was only in DOCCS custody because of DOCCS employees misconduct.

273. It is likliy that such condition could become a lot wrost and such food could cause immediate irreversible damage to the Plaintiff in the foresereable future.

274 Defendants Mr. Andrew Cuomo and Mr. Anthony Annucci are likely to be very well aware of the dangers that such food causes.

275. Plaintiff refuses to have such breast cut off due to his distrust in doctors so unless the defendant starts working out the damage has already been done

PAGE 81

and has to be irreparable.

(B) <u>MONEY DAMAGES SOUGHT HEREIN</u>

(i) COMPENSATORY DAMAGES

276. First and farmost Plaintiff would like to inform this Court that no amount of money in this world would restore the time that the Plaintiff has done for an Action that DOCCS commenced against the Plaintiff. Plaintiff will always be at an disadvanage. In addition to that it would be an coruption of the concept of justice for any Person or Court to tell me what would make me "whole" after doing Three years in Prison.

277. All The DOCCS defendants shall together bare the burden in there individual capacities of compensating the Plaintiff 2.447 billion dollars. This is because they, the defendants all represented the wrost kind of willful ignorance. They wanted and lead an jury of my peers to believe that I was guilty of an crime that never occurred. So together they plucked carefully selected half-truths out of the context of reality in order to secure the custody of the Plaintiff. So right now Plaintiff is in Prison because

· rigged an case against the Plaintiff with the intent to obscure the truth. It was no investigation so such defendants made up an case as it felted necessary.

278. Plaintiff is respectfully requesting one million dollars for every day that he has been incarcerated in relation to the incident from 2-28-16 and, one million dollars for every single day that plaintiff could potentially serve in prison due to such incident, plus one million days for each birthday that Plaintiff has to do incarcerated, one million dollars a day that Plaintiff has to spend away from his family on hoildays that are important to Plaintiff's family, and one million dollar for every single day that Plaintiff has been subject to SHU or keeplock, and one million dollars a day for every day that Plaintiff will potentially serve on keeplock.

279. In addition to those compensatory damages Plaintiff would like to request 7 million dollars for the assault that he suffered at the hands of defendant Mr. John Doe No.5 Mitchell who shall bare such burden alone in his individual capacity but, is not apart of and should not have to bare the burden of any other compensation unless it is discovered

that he is also another defendant.

280. The reason he must pay such a burden is because he not only assaulted the Plaintiff he also did so on camera which was very foolish. But, slapping the Plaintiff across the face caused irreparable damage to the Plaintiff attitude toward all Correctional Officers. Though Plaintiff did not suffer any physical serious medical damage Plaintiff does suffer from lower back pain which Plaintiff has not had an Medical opinion on just yet.

281. The pain and suffering that DOCCS defendants subject Plaintiff to, prime example is the fact that if not for DOCCS misconduct Plaintiff would have never been in Cayuga County Jail and eatten such bag of chips that was littered with ants.

282. But other more important pain and suffering that DOCCS defendants subject plaintiff to is an hardship between Plaintiff and his entire family who have sided or rather tend to believe DOCCS story and has maintained an attitude which suggests that Plaintiff has become an product of his surroundings. Plaintiff could never trust such family again and now such relationship is irreparable. Plaintiff is requesting 1 billion dollars

to compensate For the irreparable loss of an healthy relations that Plaintiff has with his family.

283. Proof that Defendants caused such pain and suffering in Plaintiff's life is seen in Plaintiff's inmate account which has had insufficient funds for approxamately one year. Throughout Plaintiff's prior incarceration hue has always maintained an healthy relationship with his family but since the incident dating From 2·28·16 such relations have negatively affected Plaintiff's life.

284. Plaintiff's request may seem an little   excessive but, Plaintiff has spended several years in Prison rotting away his 20's. The anger that Plaintiff once felted about his present conditions has been replaced by the cold appraisal of justice that Plaintiff has become overcome with which has Plaintiff in a state of profound peace born of the the command of Plaintiff's own ability to adequately litigate this matter, and through such litigation Plaintiff is able to see his own destiny.

285. Plaintiff contains no hate, no rage, no horror—nor any sorrow. The same People who have made every attempt possible to condemn the Plaintiff have

PAGE. 85

condemned themselves. Such defendants made choices which they knew were wrong, now they must encounter the immutable consequences for such choices.

286. Plaintiff will never forgive the Defendants for there unlawful actions not now, not ever - not out of hate but because they are guilty of more crimes than those against Plaintiff. Mr. Agee can only hope that the reality of finality of his proclaimation has settled upon the defendant's souls. Than again they may not feel a thing at this present moment but, Plaintiff filed such claim to assure that the Defendants will soon gasp in horror at the realization that there actions are irredeemable. Plaintiff purpose is to assure that the defendants feels the full weight of responsibility for there crimes against humanity and that they see thereselves, for probably the first time in there lives, for what they really are, which is the reason why Plaintiff has requested such an high compensation.

287. Plaintiff also needs to be compensated for the pain and suffering that he suffered from eatting an bag of chips which was littured with small Ants though Plaintiff was in the Care, custody and control of the Cayuga County Jail and, such jail employees were negligent DOCCS officials, who are
PAGE 86

Defendants herein are also liable for Plaintiff pain and suffering in relation to such incident since they were the reason why Plaintiff was incarcerated at such facility. Together the Municipality of Cayuga County and DOCCS Defendants not named Mr. John DOCCS No.5 shall compensate the Plaintiff with $10,000 For such mishaps.

(ii) NOMINAL DAMAGES

288. Plaintiff is requesting one dollar from C.O. Mrs Wade.

289. Reason why is due to the fact that she did not order Plaintiff another bag of potato chips after the one he received was damaged and, littered with Ants, and was rude and disrespectful.

WHEREFORE, Plaintiff prays for a Judgment in his fave and other further relief as this Court may deem proper and just.

_Jkendrew Jr Oger_
Pro se Plaintiff
Clinton Correctional Facility
P.O. Box 2001, Dannemora N.Y.

Sworn before me the 10th day of _January_ 2019
_John Andrew Farrell_

JOHN ANDREW FARRELL
Notary Public, State of New York
No. 01FA6381949
Qualified in Clinton County
Commission Expires 10/15/20 22

PAGE 87