United State District Court
Northern District Of New York

_____

Mr. J'Kendric Jirelle Agee,
                    Plaintiff,

      --Against--

Mr. Anthony J. Annucci, Acting Commissioner
Of The Department Of Corrections And
Community Supervision (Hereinafter
"DOCCS"); Mr. Joseph Bellnier, Deputy
Commissioner Of Correctional Facilities
Of DOCCS; Mr. Harold D. Graham, The
Superintendent Of Auburn Correctional
Facility (Hereinafter "ACF"); John Doe
No.1, The Deputy Superintendent Of
Security At "ACF"; John Doe No.2
The Evidence Control Supervisor; John
Doe No.3, The Criminal Prosecutor
Liaison (Hererafter Referred To "CPL")
At "ACF"; Lieutenant (Hereinafter "Lt.")
Mr. Troy Mitchell; Correctional Officer
Mr. Kevin Ashby; Correctional Officer
(Hereinafter "C.O.") Mr. Nathaniel Sweet;
C.O. Mr. Keith E. Vincent II; C.O. Mr. John

| | |
|---|---|
| Amended Complaint | |
| Jury Trial Demand | |
| Civil Action No. 9:19-cv-0057 (BKS/ATB) | |
| Mrs. Brenda K. Sannes U.S. District Judge | |



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN 1 2 2019
AT____ O'CLOCK
John M. Domurad, Clerk - Syracuse

Page 1

DOE No. 4°, C.O. MR. JOHN DOE No. 5°, C.O.
JOHN DOE No. 6°, JOHN DOE No. 7°, C.O. JOHN
DOE No. 8°, C.O. JOHN DOE No. 9°, JOHN DOE
No. 10, THE TECHNICAL SECURITY SPECIALIST°,
JOHN DOE No. 11°, JOHN DOE No. 12°, CAYUGA
COUNTY JAIL C.O., MRS. WADE°, LT. Timothy
Quinn of ACF; et al,

DEFENDANTS,

## Jurisdiction AND VENUE

1. This Court has Jurisdiction over this action under 28 U.S.C. section 1331 and 1342(2) and, (4). This matter in controversy arise under 42 U.S.C. section 1983 in which the above named Defendants while acting under the color of law deprived the Plaintiff of several of his United States Constitutional Rights.

2. Your Plaintiff J'kendric J. Agee is presently incarcerated and in the care, custody and, control of "DOCCS" in the State of New York at Clinton Correctional Facility located at P.O. Box 2001, Dannemora, N.Y. and venue properly lies in this District pursuant to 28 U.S.C. section 1391(b)(2) because the events in which the Plaintiff was deprived of his constitutional rights occurred in New York State Counties of Cayuga and Albany which are both located within

PAGE 2

The boundries of this Court.

3. Your Plaintiff is suing the following parties in both "individual" and "official" capacities:

4. Anthony J. Annucci, Acting Commissioner of New York State DOCCS.

5. Joseph Bellnier, Deputy Commissioner of DOCCS Correctional Facilities.

6. Harold D. Graham, The Superintendent of "ACF."

7. John Doe No.1, The Deputy Superintendent of Security (hereinafter "DSS") at "ACF."

8. John Doe No.2, The Evidence Control Supervisor at ACF.

9. John Doe No.3 The CPL at ACF.

10. Lt. Troy Mitchell at ACF

11. Kevin Ashby an C.O. at ACF.

12. Keith E. Vincent II an C.O. at ACF.

13. Nathaniel Sweet an C.O. at ACF.

14. John Doe No.4, an C.O. at ACF.

15. John Doe No.5 an C.O. at ACF.

16. John Doe No.6 an C.O. at ACF.

17. John Doe No.7 an C.O. at ACF

18. John Doe No.8 an C.O. at ACF

19. John Doe No.9 an C.O. at ACF

20. John Doe No.10. The technical Security Specialist at ACF.

21. John Doe No.11 an DOCCS Employee.

PAGE 3

22. John Doe No.12 an DOCCS employee.
23. Mrs Wade an C.O. at Cayuga County Jail,
     And Lt. Timothy Quinn of ACF.

## RELATED LAWSUITS BY PLAINTIFF

24. Your Plaintiff is currently amending his complaint
    in another matter that is in this court which is very
    related to the herein matter case No. 9:19-cv-0195
    (MAD/DEP).

## FACTS

25. On the 28th day of February, 2016, Plaintiff was a
    keeplock inmate at Auburn Correctional Facility housed
    on D-Block, J company 27 cell serving the remaining
    ten day on his one year postrelease supervision violation.

26. On such date at approxamately 4:20 am Plaintiff made
    an attempt to proceed to keeplock recreation and was
    pat frisked by C.O.'s 'defendant's Mr. Kevin Ashby and
    Mr. Nate Sweet who walked the Plaintiff down the
    company where their were several other C.O.'s with one
    telling your Plaintiff to put his hands behind his back
    when your Plaintiff asked for what defendant C.O.
    Mr. Sweet directed your Plaintiff to put his hands
    behind his back and once Plaintiff         placed his hands

PAGE 4

behind his back he was handcuffed and taken to the
Special Housing Unit (hereinafter "SHU") by defendant
Mr. Nate Sweet and defendant [who first told your
Plaintiff to put his hands behind his back] C.O. Mr.
Keith E. Vincent II.

27. Prior to your Plaintiff being taken to SHU your Plaintiff
heard defendant C.O. Mr. Vincent tell Watch
Commander Lt. Ray Vanfleet that he found n weapon
in your Plaintiff's boot.

28. Upon hearing such statement by the defendant C.O.
Mr. Vincent your Plaintiff became very sad and had
to be taken to The Mental Health Unit (hereinafter
"MHU") for an one on one suicide watch and RN Mrs.
Noreen A. Correll was notified, Exhibit "A", is DOCCS
form No. 1140SHU.

29. On the 29th day of February, 2016, plaintiff refused to
hand over his dinner tray and went to sleep.

30. At approxamately 4:30 pm of such date inmate Agee was
awaken by his cell door opening but Plaintiff did not move
or even attempt to see who opened such door than he
felted an very large person jump on his back and, body
slam him to the ground punching, kicking, kneeing and,
choking your Plaintiff without any provocation.

31. Your Plaintiff could see it was an Lieutenant and an C.O.

PAGE 5

Plaintiff later identified such Lieutenant as defendant Mr. Troy Mitchell, who after handcuffing your Plaintiff slapped him calling him a "stupid, retarted nigger."

32. Defendant C.O. Mr. John Doe <u>No. 9</u> at first jumped on Plaintiff's back but when he seen Defendant Lt, Mr. Troy Mitchell's intentions he quickly backed off but, did nothing to stop defendant Mitchell from assaulting Plaintiff.

33. On the 1ST day of March, 2016, Plaintiff was taken to the **SHU**.

34. On the 5th day of March, 2016, Plaintiff was served an misbehavior report in relation to the incident which occurred on <u>2-29-16</u>.

35. On or prior to the 8th day of March, 2016, John Doe <u>No. 11</u> turned over prison disciplinary documents to the People of the State of New York with the intentions that such documents be used to punish your Plaintiff.

36. On the 8th day of March, 2016, former Prosecutor Mr. Brian T. Leeds, Esq., contacts New York State Police Investigator Mr. Brett E. Stover and directs him to copy what is on <u>Exhibit "B"</u> The Unusual Incident Report regarding false allegations from the incident which occurred on <u>2-28-16</u> onto an Felony Complaint <u>Exhibit "C"</u> with the supporting deposition being an DOCCS Prison disciplinary

<u>PAGE 6</u>

To and From Memorandum From: C.O. Mr. Keith E. Vincent II To: SGT. Ray Vanskeet.

37. On the 9th day of March, 2016, your     Plaintiff has no knowledge of receiving any misbehavior report and was due to be released from DOCCS care, custody and control but, was instead illegally detained by members of the New York State Police (hereinafter "NYSP") and charged with Promoting Dangerous Prison Contraband in the first degree New York State penal Law §205.25(5).

38. Bail was set at $3000 cash or $6,000 property or bond. Petitioner has been incarcerated every since, based off of these charges.

39. On the 15th day of March, 2016, your Plaintiff proceeded to an Preliminary hearing in relation to the incident that occurred on 2-28-16 the People produced defendant C.O. Mr. Keith E Vincent and did not possess the alleged contraband in question or an alleged picture of such contraband.

40. On the 22th day of March, 2016, 13 day after such incident was expunged from your Plaintiff's institutional record Prosecutor Mr. Leeds was allowed by Administrative officials to enter Auburn correctional facility and illegally detain further Prison Disciplinary document and physical evidence, including the alleged contraband

<u>PAGE 7</u>

in question in relation to the alleged incident that occurred on <u>2-28-16</u>.

41. On the 23th day of March, 2016, such matter was presented to an Cayuga County Grand Jury and as evidence the People produced the alleged contraband in question testimony, from defendant C.O. Mr. Keith E. Vincent and, DOCCS employee Mrs. Sherri Gueylak as the basis of such offense.

42. On the 24th day of August, 2016, while Plaintiff was in the Care, custody and control of Cayuga County at lunch time Plaintiff received his lunch, plaintiff received his tray and began eatting an bag of potato chips upon looking inside such bag of chips your Plaintiff discovered that it was littered with an large amount of small ants. Immediateally, your Plaintiff spite the chips that he was eatting on the ground and informed L Pod C.O. Mrs. Wade that such bag of chips had several small ants in it.

43. Defendant Cayuga County employee C.O. Wade became wery disrespectful, stating that Plaintiff would not be provided with another bag of chips [as he requested] and directed him to clean up his mess, Plaintiff complied but wrote an grievance in relation to such incident which was in fact accepted, <u>Exhibit "D"</u>.

44. On the 15th day of November, 2016, Lt. Joseph Vasilej

<u>PAGE 8</u>

Mrs. Sherri Guzylak, the Inmate Records Coordinator and several of the defendant's in the herein action testified at your Plaintiff's criminal trial in related to the expunged incident from 2·28·16, for the People helping them create the basis of there offense.

45. On the 16th day of November, 2016, the People of the State of New York called Lt. Mr. Timothy Quinn as a witness and asked him about Exhibit "B" The Unusual Incident Report which states that defendant C.O. Mr. Vincent searched your Plaintiff in front of his cell Lt. Mr. Quinn states that he received such information from neither SGT [Now Lt.] Mr. Ray Vanbeet or C.O. Defendant Mr. Vincent.

46. On the same day in question the People produced Exhibit "E", which is an chart of all of the Unusal Incidents that occurred at ACF from September 2015 to September 2016.

47. Plaintiff believes that the People received Exhibit "E", from John Doe No.11 or John Doe No.12.

48. On the 17th day of November, 2016, your Plaintiff as the defendant in an State criminal proceeding was found guilty by an Jury of his peers on the charge of Promoting Prison Contraband in the first degree.

49. Approxamately one week later your Plaintiff was

PAGE 9

issued an misbehavior report by Cayuga County C.O. defendant Mrs. Wade for allegedly blocking or attempting to block her view of inmates fighting. Plaintiff believe's that evidence supports that such misbehavior report was in retaliation for Exhibit "D".

50. On the 23rd day of December, 2016, it become disclosed by the Cayuga County D.A. Mr. Jon E Budelmann, Esq., to the media that an C.O. at Auburn Correctional facility allegedly planted contraband on a inmate to break up a prison gang and admitted it to an ADA at Cayuga County DA's office back in May of 2015. Such inmate was moved to another facility and had disciplinary charges relating to such incident dismissed, Exhibit "F".

51. On the 17th day of January, 2017, the name of such C.O. was disclosed as C.O. Matthew Cornell and allegedly he and two other C.O.'s were placed on Administrative leave after the Office of Special Investigation conducted searches of the lockers of such employees at ACF and discovered several different kinds of contraband that such C.O.'s appearantly used to plant on inmates, Exhibit "G".

52. On the same day in question five inmates where exonerated due to the fact that C.O. Mr. Matthew Cornell had direct emvolvment in there cases of Promoting Prison Contraband, there where four black men and an hispanic

PAGE 10

man - none where white and, all where soon to be released just as your Plaintiff when the alleged contraband was found on there persons.

53. On the 9th day of March 2017, your Plaintiff was sentenced to three to six years of imprisonment and approxamately two weeks later returned to the care, custody and control of DOCCS.

54. On the 3rd day of May, 2018, your Plaintiff sented defendants Anthony J. Annucci, John Doe No.1, Joseph Bellnier, Harold D. Graham, John Doe No.2 and John Doe No.3 sworn correspondence asking that such defendants provide affidavits to the Cayuga County Court in reference to there negligence or misconduct, Exhibit "H" is such correspondences.

55. On the 3rd day of August, 2018, your Plaintiff submitted an N.Y. C.P.L. § 440 in Cayuga County Court such motion was denied on the 7th day of November, 2018, without such parties providing any affidavit.

56. On the 1st day of November, 2018, your Plaintiff submitted an Article 78 in Albany County, Special Term with an Order to Show Cause with the Respondents being Anthony J. Annucci, Joseph Bellnier, Harold D. Graham [all defendant in the herein action] and Stephen Maher.

PAGE11

COUNT ONE: DEFENDANTS ANTHONY J. ANNUCCI, JOSEPH
BELLNIER, HAROLD D. GRAHAM, JOHN DOE No.1
JOHN DOE No.2, JOHN DOE No.3, JOHN DOE No.10
JOHN DOE No.11, and JOHN DOE No.12 DEPRIVED
YOUR PLAINTIFF OF LIBERTY AND PROPERTY
WITHOUT DUE PROCESS OF LAW WHILE ACTING
UNDER THE COLOR OF LAW IN VIOLATION OF YOUR
PLAINTIFF'S FOURTEENTH UNITED STATES
CONSTITUTIONAL RIGHT.

57. By defendant's John Doe No.11 or John Doe No.12
supplying "the People of the State of New York" with
DOCCS prison disciplinary documentation menifestly
related to maintaining prison order, discipline and,
safety such defendants deprived your Plaintiff of
liberty and property without due process of law.
The property being your Plaintiff's right to an
prison disciplinary hearing with respect to the
sanctions that such prison disciplinary documents
where used to impose upon your Plaintiff which
can only be considered "atypical and significant";
The liberty being your Plaintiff's fundamental
right to defend himself at a disciplinary
hearing, the right to receive notice of the

PAGE 12

charges against him at least 24 hours prior to
when disciplinary hearing is scheduled to began
[In writing], Plaintiff entitlment to a "counsel
substitute", Plaintiff's right to call witnesses in
a prison disciplinary proceeding as long as calling
such witnesses posse no unduly hazardous to
institutional safety or correctional goals, Plaintiff
right to cross-examine such witnesses, Plaintiff's
right to an impartial hearing officer, Plaintiff's
right to receive a written statement by the fact-
finder setting forth the evidence relied on and
the reason for the action taken, and New York
State created liberty Interest supported by
mandatory language without loopholes or "escape
clauses" specifically when New York State decision
- makers are required to take some action, or
forbiden to take some action if (s)he decides that
the criterias are met than a liberty interest is
created.


(A) NEW YORK STATE CREATED LIBERTY INTEREST


58. In this State due to the State created liberty
    interest your Plaintiff is entitled to due process
                    PAGE 13

of law because the punishment that the DOCCS prison disciplinary documents imposed upon your Plaintiff constitutes as atypical and significant hardship upon your Plaintiff by using prison disciplinary sanctions documents to impose sanctions so grossly unrelated to the noncriminal governmental objectives at stake in a prison environment in relation to the ordinary incidents of prison life, where such DOCCS prison disciplinary documents have a deterrent effect which is aimed exclusively at deterring conduct within the prison setting (e.g., loss of good time credits, visits, placement in the <u>SHU</u> and loss of other special privileges). All of which sanctions that do not extend the period of incarceration originally imposed, since such sanctions are aimed exclusively at the terms and conditions of the sentence being served by the inmate.

59. So far such prison discipline documents have been used to extend the period of Plaintiff's incarceration by several years. Such punishment is so severe based on the fact that your Plaintiff has no knowledge of ever receiving any notice and, certainly never received any hearing in relation to such prison disciplinary charges before DOCCS commenced

<u>PAGE 14</u>

it's punishments against your Plaintiff by failing to pay regards to its own rules and regulations which deprived your Plaintiff of several of his state created liberties' without due process of law.

60. The Substantive Aspect of due process clause says that DOCCS                may not inferfere with your Plaintiff's fundamental individual rights in a way that is not "reasonably related to legitimate and important public interest in maintaining prison order, discipline and, safety."

61. The DOCCS defendants specified in the herein count violated your Plaintiff's substantive due process rights in a way which is not reasonably related to legitimate and important public interest in maintaining prison order, discipline and, safety when John Doe No.11 and or John Doe No.12 turned over Prison disciplinary documents to 'the People of the State of New York' with the intention that such DOCCS disciplinary documents be used to vindicate public justice when in reality such documents are not designed to vindicate public justice be rather to further the seperate and important public interest in maintaining prison order, discipline and, safety.

62. Specifically defendants Anthony J. Annucci, Joseph Bellnier, Harold D. Graham, John Doe No.1, John Doe No.2, John Doe No.3 and, John Doe No.10 violated your Plaintiff's substantive due process rights by depriving Plaintiff of New York state laws and DOCCS regulations that limits the disciplinary punishments that DOCCS can impose upon your Plaintiff which creates "entitlement" or "liberty interest" protected by the federal Due Process Clause.

63. Such defendants specifically Anthony Annucci, Joseph Bellnier, Harold D. Graham, John Doe No.1, John Doe No.2, John Doe No.3 and John Doe No.10 acted with "deliberate indifference" to your Plaintiff's rights when they where given notice of the conduct of defendant's John Doe No.11 and, John Doe No.12 and failed to act which is not adequate given the known risk of atypical and significant hardship being imposed upon your Plaintiff in relation to the ordinary incidents of prison life where prison disciplinary documentation in the herein matter was used to extend the period of incarceration of your Plaintiff by several years which is an "shock the conscience" type

action by such defendants since (pursuant to New York State doctrine of res judicata) such incident was ordered expunged from your Plaintiff institutional record and such supervising defendants allowed there subordinates to continue litigating such matter. Behavior by such defendants which is truly outrageous because such acts where taken maliciously and sadistically for the very purpose of causing harm to your Plaintiff.

64. The Procedural Aspect of the due process clause under the fourteenth amendment states that DOCCS cannot deprive your Plaintiff of life, liberty and property without going through certain procedures.

65. All of the defendants specifified in this herein count are guilty of violating your Plaintiff's procedural due process rights because all of such defendants are responsible for depriving your Plaintiff of life, liberty and, property without due process of law.

66. The actions by such DOCCS defendants barred your Plaintiff from the most traditional fair hearing safeguards including the right to notice of the charges at least 24 hours before an disciplinary hearing, counsel substitute, an right

to call and cross-examine witnesses as long as by doing so it poses no unduly hazards to institutional safety or correctional goals, an right to impartial hearing officer, an right to present an defense and an right to receive a written statement by the fact finder setting forth the evidence relied upon and the reason for the action taken none of which actions conforms with the fourteenth Amendment or was authorized by Legislature of New York State and has denied your Plaintiff of 'liberty' and 'property' without due process of law.

67. Such 'property' being your Plaintiff's right to an hearing and, the plaintiff's 'liberty' is his freedom and his right to be free from unreasonable government interference when it comes to the 'life', 'liberty' and 'property' concepts of the New York State created liberty interest which provides enough procedural protection in which an deprivation of this nature shall never occur.

68. N.Y.S. DOCCS has created liberty Interest which is supported by mandatory language without loopholes or escape clauses where N.Y.S. DOCCS decision makers are required to take certain actions and, forbidden from taking certain actions

PAGE 18

when certain criterias have been met.

69. All of the procedures were established by directives issued by defendant Mr. Joseph Bellnier the Deputy Commissioner of DOCCS Correctional Facilities which are the creature of Legislature.

70. Such directives are statutory grants of power which can only be inferred 'as a necessarily implicit authority from the generalized provisions' of legislation dealing with DOCCS.

71. Under the current procedures DOCCS directive No. 4932, Chapter V, Standards, Behavior and Allowances, Exhibit "I", states:

250.2 General Policies on discipline of Inmates.

(a) Disciplinary action is one of many essential elements in correctional treatment. When applied reasonably with fairness it not only assists in protection of the health, safety and security of all persons within a correctional facility, but also is a positive factor in rehabilitation of inmates and the morale of the facility.

(c) Disciplinary action shall be taken only in such measures and degree as is necessary.

(1) Regulate an inmate's behavior within

PAGE 19

acceptable limits;

(2) Assist in achieving compliance by the entire
    inmate population with required standards
    of behavior;

(3) Preserve the confidence of all concerned
    (i.e., the inmate population and the staff)
    in the administration's sincere belief in and
    determination to maintain the required standards
    of behavior; AND

(4) All control of inmate activities, including
    disciplinary action, must be administered in
    a completely fair, impersonal and impartial
    manner and must be as consistent as possible
    (given the need for individualized decisions).

(d) Disciplinary measures should not be overly severe.
    A sound disciplinary program relies upon certainty
    and promptness of action rather than upon severity.

(e) Disciplinary actions must never be arbitrary or
    capricious, or administed for the purpose of
    retailation or revenge.

(f) Corporal punishment is absolutely forbidden for
    any purpose and under all circumstances.

PART 251 CASES OF INMATE MISBEHAVIOR

Section 251-1.1 General Policy

PAGE 20

All incidents of inmate violations of rules and regulations, inmate misbehavior, and inmate failure or refusal to comply with an instruction given by an employee acting within the scope of his or her official duties shall be handled as quietly and routinely as possible, giving due regard to danger to life, health, security and, property.

CONFINEMENT 251-1.6

(A) Where an Officer has reasonable grounds to believe that an inmate should be confined to a cell or room or housing area because he or she represents an immediate threat to the safety, security, or order of the facility or is an immediate danger to other persons or to property, such officer shall take reasonable and appropriate steps to so confine the inmate.

(e)

(1) An employee who places an inmate in confinement in a cell or room or who places an inmate in a special housing unit pursuant to the provisions of this Section shall report such facts, in writing, to the Superintendent as soon as possible, but in any event before going off duty.

(2) Reports of confinement shall be made even where confinement was authorized or directed by a

PAGE 21

superior Officer, but need not be made where confinement:
(i) Is necessitated by a medically inability to participate
   in     an assigned activity; or
(ii) Was directed by a decision in a Disciplinary
    Superintendent's Hearing.

(F) The provisions of this Section shall not be construed so
as to prohibit emergency action by the Superintendent
of the facility and, if necessary for the safety or
security of the facility, all inmates or any segment
of the inmates in a facility may, on the order of the
person in charge of the facility, be confined in their
cells or rooms for the duration of any period in which
the safety or security of the facility is in jeopardy.
In any such case the Superintendent shall immediately
notify the Commissioner.

## SUBPART 251-3 MISBEHAVIOR REPORT
## SECTION 251-3.1 MISBEHAVIOR REPORT

(A) Every incident of inmate misbehavior involving
danger to life, health, security, or property must be
reported, in writing, as soon as practicable.

(B) The misbehavior report shall be made by the employee
who has observed the incident or who has ascertained
the facts of the incident. Where more than one
employee has personal knowledge of the facts, each

employee shall endorse his or her name on a report made by one of the employees.

(d) All misbehavior reports shall also contain the following language:

(1) "You are hereby advised that no statement made by you in response to the charge, or information derived therefrom may be used against you in a criminal proceeding."

(2) "You will be permitted to call witnesses on your behalf provided that so doing does not jeopardize institutional safety or correctional goals.

## SUBPART 251-4 INMATE ASSISTANCE

### SECTION 251-4.1 INMATE ASSISTANT

(a) An inmate shall have the opportunity to pick an employee from an established list of persons who shall assist the inmate when a misbehavior report has been issued against the inmate if:

(4) The inmate is confined pending a Superintendent's Hearing to be conducted pursuant to Part 254.

### 251-42 Assistant

The Assistant's role is to speak with the inmate charged, to explain the charges to the inmate, interview witnesses, and to report the results of those efforts to the inmate. He or she may assist the inmate in obtaining documentary

evidence or written statements which may be necessary. The Assistant may be required by the Hearing Officer to be present at the Disciplinary or Superintendent hearing.

## SECTION 251-5.1 TIMELINESS

(a) Where an inmate is confined pending a Disciplinary Hearing or Superintendent Hearing, the Hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said Disciplinary Hearing or Superintendent's Hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the Commissioner or designee.

(b) The Disciplinary Hearing or Superintendent's Hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the Commissioner or designee. Where a delay is authorized, the record of the Hearing should reflect the reasons for any delay or adjornment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals.

## SECTION 254.1 HEARING OFFICER

The person appointed to conduct the Superintendent's Hearing shall be either the Superintendent, a Deputy Superintendent, Captain, or Commissioner's Hearing

PAGE 24

Officer employed by the Department's Central Office
but the Superintendent may, in his or her discretion,
designate some other employee to conduct the proceeding.
The following person shall not be appointed to conduct the
proceeding: a person who actually witnessed the incident;
a person who was directly involved in the incident; the
Review Officer who reviewed the misbehavior report;
a person who has investigated the incident.

254.3 FORMAL CHARGE

The formal charge shall consist of the misbehavior
report which shall be prepared in accordance to the
provisions of section 251-3.1 of Subpart 251-3 of this chapter.

254.5 INMATE WITNESSES

(a) The Inmate may call witnesses on his behalf provided
    their testimony is material, is not redundant, and doing
    so does not jeopardize institutional safety or
    correctional goals. If permission to call witness is
    denied, the Hearing Officer shall give the inmate
    a written statement stating the reasons for the
    denial, including the specific threat to institutional
    safety or correctional goals presented.

72. DOCCS Directive No. 4910A, "Contraband/Evidence —
    Handling, Storage, and Disposition", Exhibit "J",
    States:

I. PURPOSE: The purpose of this directive is to ensure consistent handling and disposition for all confiscated contraband and collected evidence.

A. RESPONSIBILITY - II POLICY

1. The Superintendent shall establish procedures consistent with this policy to ensure the appropriate control, handling, and disposition of contraband / evidence within the facility.

2. The Deputy Superintendent for Security [John Doe No.1] or equivalent shall be responsible for the contraband/evidence program. An Evidence Control Supervisor [John Doe No.2] will be appointed by the Deputy Superintendent for Security or equivalent and will have direct operational oversight of all contraband/evidence lockers and control areas.

B. EVIDENCE CONTROL SUPERVISOR

2. The Evidence Control Supervisor shall maintain the secure evidence locker and evidence drop box exclusively; having direct oversight of the general contraband locker and evidence control area.

3. The presence of the Evidence Control Supervisor, or appropriate Security Supervisor as described within the policy as approved by the Deputy Superintendent for Security or equivalent, is required during the

PAGE 26

the deposit or removal of evidence/contraband from the secure evidence locker, secure evidence drop box, or the evidence control area (see Section III-C-2 of this directive). The Evidence Control Supervisor (hereinafter "CPL") is also responsible for the following:

c. Ensuring all procedures as outlined within this policy related to evidence collection, classification, reporting, storage, and disposition are being followed.

d. Being the point of contact with local or State Police regarding the disposition of all contraband and drug paraphernalia.

e. Inspecting at least quarterly, all contraband/evidence storage lockers/areas to check inventories and ensuring that: proper procedures are being followed, items no longer necessary or appropriate to be retained are purged, and the disposition of all contraband is thoroughly documented in accordance with [this policy] ... A memorandum detailing this inspection and any noted discrepancies will be forwarded to the Deputy Superintendent for Security or equivalent for review.

III DEFINITION: CONTRABAND/CLASSIFICATION OF CONTRABAND

B. TYPES OF CONTRABAND/EVIDENCE.

d. Which may have been used in the commission of a crime or considered to be potential evidence in a

PAGE 27

criminal proceedings

C. <u>Contraband/Evidence Storage Areas</u>: The specific location of the contraband/evidence storage areas will be determined by the Deputy Superintendent for Security (hereinafter "<u>DSS</u>") or equivalent, however, the secure evidence drop box will be located in the Watch Commander's or Assistant Watch Commander's office for utilization by staff after hours to secure "serious/dangerous" contraband as described in Section III-B-1 above.

1. All evidence storage areas will:

    c. Utilize two person access system for entry documented in a control logbook for deposit/removal of evidence, The evidence log stamp will be utilized to ensure the accuracy of information entered into the log. The storage and disposition of all evidence shall be a appropriate Security Supervisor as designated by the DSS or equivalent is absolute during the deposit or removal of evidence from all storage locker(s) or area(s) as defined above and throughout this policy. The process must be witnessed by a Department employee or other law enforcement representative. The employee securing/removing the evidence and the witness will print and initial their names in the appropriate areas; and

    d. Utilize the appropriate reporting, recording/logging

<u>PAGE 28</u>

methods as described in Reporting\Recording\Logging, Section IV, of this directive. The evidence log stamp will be utilized in all contraband\evidence storage areas to ensure the accuracy of information entered into the appropriate logbook.

Note: The Evidence Control Supervisor (hereinafter "ECS") will maintain the seals and logbook for recording the seal numbers. The logbook will include seal No., date, and time issued.

Note: The Watch Commander will oversee the deposit of "serious\dangerous" contraband\evidence in the secure evidence drop box, after hours\anytime the ECS is unavailable.

## IV. REPORTING\RECORDING\LOGGING

Note: All contraband\evidence which is retained, regardless of storage locker or area, shall be logged in this manner.

## V. HANDLING OF CONTRABAND EVIDENCE

The Watch Commander shall carefully evaluate contraband and evidence to determine if the item(s) is to be designated "serious\dangerous" contraband\evidence, "general" or "other" and to ensure the item(s) are secured in either the secure evidence drop box or the general contraband locker.

A. "SERIOUS\DANGEROUS" CONTRABAND\EVIDENCE: It is imperative that staff not contaminate or alter the contraband\evidence in any way. Items or articles which are part of a crime scene

and or criminal investigation should remain untouched and secured within the crime scene area, whenever practical, and should be processed by trained law enforcement personnel   DOCCS staff in accordance with... Directive No. 4931. Contamination or alteration can be minimized or eliminated by the following:

3. Minimal handling of the contraband/evidence;

4. Use of latex/rubber gloves when handling contraband/evidence and changing of gloves between handling each seperate item; and

5. Ensuring that evidence which may contain body fluids or moisture is packaged in paper container(s) (Not plastic) and allowed to naturally air dry when possible, to preserve any "DNA" evidence.

VI. DISPOSITION OF CONTRABAND

A. "Serious/Dangerous" Contraband/Evidence

1. The ECS will inspect, at least quarterly, all contraband/evidence storage lockers/areas to check inventories and ensure that: proper procedures are being followed, items no longer necessary or appropriate to be retained are purged, and the disposition of all contraband is thoroughly documented in accordance with this policy for logging, storage, and disposition...

2. The written report shall include the results of inventory along with a statement explaining overall compliance with the procedures outlined in this directive.

<u>PAGE 30</u>

3. Annually on January 10th, copies of the quarterly reports shall be sent to Special Operations for review, comment, and retention by the Department's Technical Security Specialist [John Doe No. 11] (TSS) or designee. Upon review by the TSS or designee, if discrepancies are found, the facility Superintendent will be notified and advised of the corrective action is required, notification of compliance will be sent to the TSS or designee within 14 days.

4. Each Facility Superintendent shall establish a point of contact with the NYSP or local law enforcement agency, whereby an argeement is in place for the surrender/disposal of contraband drugs or drug paraphernalia no less than semi-annually or more frequently if necessary. Such surrender must be noted in the evidence control area logbook and on any pertinect chain-of-custody evidence. A receipt must be obtained by the ESC.

Note: In the event a Facility is unable to contact the State Police or local police for the removal of contraband drugs or drug paraphernalia, the Department's Office of Special Investigations shall be contacted for directions.

VII. GENERAL CONTRABAND, HANDLING, STORAGE AND DISPOSITION

C. DISPOSITION

1. Disposition/destruction of "general" contraband pertinent to a disciplinary proceeding shall be disposited of as

PAGE 31

recommended by the Hearing Officer at a disciplinary proceeding shall be disposed of as recommended by the Hearing Officer at the conclusion of the disciplinary proceedings in accordance with Department policy. All contraband no longer requiring retention shall be destroyed or more frequently as necessary by the ECS or designee or in accordance with established procedures and those described in this section.

73. DOCCS Directive No. 4910 "Control of AND Search For Contraband", Exhibit "K" states:

I. SCOPE: This directive sets forth the rationale for and the procedures to be followed in the search for and control of contraband. It also standardizes procedures for the inspection and search of an inmate's persons, living quarters, or any other area in or around a correctional facility to aid in the control of contraband.

II. POLICY: The presence of contraband within a facility and its subsequent possession and/or use by inmates threatens the security of the facility, endangers the safety of inmates, employees, visitors, and the community, and impairs rehabilitation programs.

III. PERSONAL SEARCHES: Searching an inmate's persons is sound correctional practice and must assure it thoroughness and not offend the dignity of the inmate being searched. Staff must

PAGE 32

refrain from demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, and obscene language or gestures during these searches as well as during other encounters with inmates.

A. METAL DETECTOR SEARCH

   1. Definition: A metal detector search means a search in which an inmate is passed through a metal detector, or in which hand held metal detector is passed over an inmate's persons...

B. PAT FRISK

1. Definition: A pat frisk means a search by hand of an inmate's person, and his clothes, while the inmate is clothed, except that the inmate shall be required to remove coat, hat, and shoes. The inmate will be required to run fingers through hair and spread fingers for visual inspection. The search shall include searching into the inmate's clothing. Contact through the clothing with the genitalia, groin, breast, inner thigh, and buttocks is a necessary component of a thorough pat frisk. However, staff must avoid any penetration of the anal or genital opening through the clothing during a pat frisk. Staff must not lift or otherwise manipulate the genitalia during a pat frisk.

74. DOCCS Directive No. 6910 "The Criminal Prosecution of Inmates", Exhibit "L", states:

   I. BACKGROUND: One of the fundamental purposes of

New York's Penal Law is to ensure public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted, and their confinement when required in the interests of public protection... Inmates who engage in further criminal behavior while incarcerated must be held accountable for their actions... This directive is intended to facilitate criminal prosecutions where appropriate and to establish protocol in furtherence of this goal.

II. POLICY: .... Facility and Central Office staff shall collaborate, when necessary, to ensure that the appropriate records and evidentiary materials on apparent serious criminal violations are carefully developed, collected, logged and preserved.

III. RESPONSIBILTIES OF THE SUPERINTENDENT

    A. Criminal Prosecution Liaison Assignment: The Superintendent shall appoint a supervisory staff member to serve as the Criminal Prosecution Liaison (CPL [John Doe No. 3]), who shall oversee all aspects of each inmate prosecution. It is perferable, if possible, that the person be a member of the uniformed ranks and hold the rank of Lieutenant or higher...

    B. Incident Evaluation: The Superintendent or designee

<u>PAGE 34</u>

shall evaluate all apparent criminal violations of a serious nature by inmates for possible referral for criminal prosecution... If a question arises as to the merits of a particular case for outside prosecution, the Superintendent may confer with OSI. The Superintendent shall ensure that the facility CPL is notified of all incidents that will be referred for outside prosecution.

C. Confidentiality Advisory: Should any concerns arise regarding the confidentiality of any evidentiary or investigative materials to be turned over to police or prosecuting authority, the Superintendent should confer with OSI... Furthermore, if the Superintendent becomes aware of any special circumstances regarding a pending prosecution, the Superintendent should contact OSI.

IV. RESPONSIBILITIES OF THE CRIMINAL PROSECUTION LIAISON (CPL): The following procedures shall occur for each case deemed to be prosecutable at the facility level:

A. Information/Evidence Packet Preparation: The CPL shall complete the standardized Form No. 6910A, "Information/Evidence Packet Cover Sheet", regarding the incident, ensuring that all required information as listed below and on the form checklist is obtained and included in the Information/Evidence Packet:

1. Unusual Incident Report (Final Report);

PAGE 35

(All other required information being specified on page 3 of Exhibit "L".)

c. CASE SUBMISSION: The CPL shall submit one copy of the Information/Evidence Packet to the District Attorney's Office and one to the appropriate policy agency (e.g., New York State Police Bureau of Criminal Investigation). The CPL shall maintain the original prosecution. Original documents may be provided to the District Attorney's Office upon request (copies shall be retained at the facility by the CPL). The CPL shall notify the Inmate Records Coordinator's Office of each case that is accepted for criminal prosecution by the District Attorney's Office.

75. Exhibit "O", is The Employees' Manual for all DOCCS Employees which states:

"The purpose of this Employees Manual is to provide each and every one of us a formal document that details what is expected of both employees and the employer.

"While it is my obligation as Commissioner to establish and promulgate policies and rules, it is each employee's obligation to understand those policies and rules as they pertain to daily activities. It is, therefore, critical that everyone take there time to read the latest edition of the Employees Manual and to refer to it throughout their tenure with the Department.

"Please take the time to carefully read through this manual,

PAGE 36

keeping in mind that each of <u>US</u> will be held accountable for the rules and policies contained within."

Signed by defendant Anthony J. Annucci

## INTRODUCTION

The New York State DOCCS has become one of the best, if not the best, correctional and community supervision agencies in this country. Our effectiveness and strenght come from our workforce and our adherence to a level of important professional principles that we have come to operate under.

## SECTION 2: CONDUCT AND ACTIVITIES OF EMPLOYEES

It is essential that employees of the Department adhere to the highest standards of ethical conduct, and that the public has confidence in the integrity of ...[D]OCCS officials and employees. Employees must, therefore, avoid conduct that is in violation of the public's trust or that creates even the appearance of an impropriety or a justifiable impression among the public that such trust is being violated.

2.1 <u>Personal conduct</u>: No employee, whether on or off duty, shall so comport him or herself as to reflect discredit upon DOCCS or its personnel.

2.2 <u>Lawful comportment</u>: An employee shall not knowingly or willingly violate any law or ordinance of the United States or the State of New York or any rule, regulation, or directive of DOCCS.

2.5 <u>Compliance with orders</u>. A lawful order given ~~by~~ a superior to a subordinate shall be ~~executed~~ promptly and properly by the subordinate. Thereafter, the subordinate may appeal the order through channels or in accordance with established grievance procedures.

1.8 <u>Affiliations</u>. An employee shall not join or otherwise affiliate himself or herself with any organization, body, or group of persons when such association or affiliation will place his or her personal interest or interest as a member of such group in conflict with or otherwise interfere with the impartial and effective performance of his or her duties ~~of~~ an employee.

2.9 <u>Non-discrimination</u>. No employee shall discriminate against or harass any person on the basis of age, race, creed, color, national origin, sexual orientation, military status, disability, predisposing genetic characteristics, marital status, and domestic violence victim status.

2.35 No employee shall add or delete any software in any Departmental computer without the written permission from the Superintendent. ...

<u>SECTION 3</u>. <u>SUPERVISORY AND MANAGERIAL RESPONSIBILITIES</u>

3.1 Supervisory responsibilities shall include, but not be limited to, the following:

    a. The enforcement of all Agency rules, regulations, policies, and procedures governing the operation and administration of the Department.

<u>PAGE 38</u>

b. Reporting and documenting violations of Agency policy and procedure promptly.

c. The exercise of responsibility for the appropriate instruction of all their assigned personnel in the methods of performing their official duties.

d. Directing the efforts of subordinate staff and establishing and maintaining all necessary controls to ensure the efficient work performance of assigned personnel.

e. Ensuring that subordinate staff is properly trained to perform the duties to which they are assigned and coordinating with the Albany Training Academy via the chain of command to ensure compliance with the Department's requirements as related to annual training.

f. The timely submission of reports by assigned personnel.

g. Reviewing reports submitted by their assigned personnel and taking appropriate and necessary action to ensure the accuracy of such report.

h. Prohibiting and reporting unauthorized or criminal activity on State and/or Department property.

i. Ensuring adequate staff coverage within the particular jurisdiction or area of responsibility.

m. Protecting the intergrity and mission of the Department and modeling appropriate conduct, ethics, and performance

Section 4: Department Records And Statements

PAGE 39

1. Your Plaintiff left out two important rules from <u>Section 2</u>

   <u>4.2</u> Confidentiality of Information and security of records.

   Section 74 of the New York State Public Officers Law states,

   "No officer or employee of a State agency should disclose
   confidential information acquired by him in the course of his
   official duties nor use such information to further his personal
   interest." Violations of such law are punishable by fines,
   suspension, or discharge.

   <u>4.5</u> Information from the files of this Agency may be furnished only
   to authorized persons or agencies, and only in accordance with
   <u>Directive No. 2012</u>, "Release of Employee Personnel and Payroll
   Information," and <u>Title 7, NYCRR, Part 5 and 7</u>. Questions
   that may arise concerning the divulging or furnishing of
   information should be brought promptly to the attention
   of a supervisor.

   1. <u>2.4</u> <u>Report of Summons</u>. An employee shall immediately
   report in writing to his or her supervisor the receipt of any summons
   or subpoena in connection with the work or investigation of a legally
   constituted public body; and

   <u>2.45</u> Employees are obligated to report any information concerning
   corruption, fraud, criminal activity, conflicts of interest,
   misconduct, or abuse by an employee or supervisory staff
   in accordance with Departmental <u>Directive No. 2260</u>,
   "New York State Ethics".

<u>PAGE 40</u>

4.7 Unless otherwise authorized by the Commissioner, a Deputy, Associate, or Assistant Commissioner, Director of Personnel, or the Superintendent, an employee shall not have access to the personnel records of any other employee or to the case records of any inmate or parolee except as required in the discharge of his or her official duties. All employees shall take precautions to ensure that unauthorized persons do not have access to confidential material. Personnel files are to be locked at all times and access to them strictly limited to appropriate officials.

4.8 Employees who have custody of or work with inmate, personnel, or parolee records will be responsible for the physical security of such records, such as protection from fire or theft, and for the protection of such information from unauthorized access and disclosure.

4.9 No employee shall, without the express knowledge and approval of the Superintendent... remove from the office, permanently or temporarily, any official folder, letter, memorandum, record, or document, nor shall he or she have a copy made for his or her personal use or any other person, without authorization. Nothing contained herein shall be construed to prevent staff from keeping notes, letters, or documents for other than official Agency business. This section shall not be construed to prevent any member of staff from possessing and retaining

<u>PAGE 41</u>

in his or her possession copies of documents from his or her personnel folder.

4.12 All letters, memorandum, and reports must be clearly identified as to the date written, and must contain the subject's name, including the Din or NYSID number if the subject is an inmate, and the name and title of the author.

4.15 Dissemination of criminal history information: Federal regulations limit access to and dissemination of criminal history information. The federal regulations provide that only authorized employees of the Department shall have access to criminal history and inmate records.

– Dissemination of arrest data is strictly limited by federal regulations. Therefore, it is the policy of the Department to refer all requests for DCJS "rap sheets" to the Division of Criminal Justice Services. No arrest data where there has not been a conviction shall be provided to outside parties.

– A dissemination record shall be maintained to facilitate audits to verify adherence to the federal regulations. A notation shall be made every time an inmate or parolee record, or information there from, is disseminated to outside parties. Such notation shall include at a minimum, the name of the inmate or parolee, the names of the recipients of the information, the date of disclosure, and a short description of

<u>PAGE 42</u>

of the information disclosed.

- Information from Agency Files may be furnished only to authorized persons or agencies and only in accordance with the established rules and regulations of the Department. Any question concerning the divulging of information should be brought to the attention of the Deputy Superintendent overseeing the area.

4.16 <u>Falsification of records</u>. No employee shall knowingly make a false or inaccurate official report or statement, orally or in writing, or make, maintain, cause, or permit to be made false or inaccurate records or false or inaccurate entry in official records or omit or fail to disclose pertinent facts.

SECTION 7. <u>GENERAL RULES FOR FACILITY EMPLOYEES</u>

7.1 <u>Applicability</u>. The following rules (7 through 20) apply to all employees whose duties require their presence within the bounds of a correctional facility and to all employees charged with the supervision of inmates. None of these rules shall apply to an employee in such a manner as to interfere with the performance of his or her duties.

7b. The Doctrines of res judicata precludes a party from litigating a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. Under the <u>New York State</u> transactional approach to the rule, once a claim is brought to a final result, transaction or series of transactions are barred, even if based upon

different theories or if seeking a different remedy.

77. In the herein matter there is no seperate transaction. The People and DOCCS both relied on the same civil documentation. Under the New York State transactional approach the People of the state of New York where barred from prosecuting your Plaintiff for the alleged incident that occured on 2-28-16.

78. This is due to the fact that your Plaintiff did not receive (to the best of his knowledge) any notice of the alleged charges and surely did not have an Prison disciplinary hearing commenced within 7 days which means that on the 8th day of March, 2016, all references to the alleged incident should have been removed from your Plaintiff institutional and departmental records because it should have been administratively expunged due to the "procedural protection" provided by N.Y.S. DOCCS which states that when an inmate has not received an disciplinary hearing with 7 days of confinement without an extension being granted by defendant Mr. Anthony J. Annucci, Acting Commissioner of DOCCS such disciplinary charges are expunged with such expungement being final.

79. The manner in which DOCCS employees Mr. Anthony J. Annucci, Joseph Bellnier, Harold D. Graham, John Doe No.1, John Doe No.2, John Doe No.3, Lt. Timothy Quinn, Keith E. Vincent II, John Doe No.10, John Doe No.11, John Doe No.12, Ray Vanfleet, Michael Quimette, and Sherri Guzylak

who are all defendants in the herein action, conducted their selves in handling the herein matter deprived your Plaintiff of liberty and property without due process of law with such liberties being your Plaintiff state created right to be free from reconsideration once an final judgment on the merits has been rendered, his state and federal confidentiality safeguards, the traditional procedural safeguards of confrontation and cross-examination and, his state created right to be free from the falsification of records from DOCCS employees with his property being his right to an Prison Disciplinary Hearing.

78. Such deprivations of such liberties and property lead to your Plaintiff being subject to "atypical and significant" hardship that is not typical of prison life when defendant John Doe No. 11 turned over Confidential documents/information to Former Cayuga County Assistant District Attorney Mr. Brian T. Leeds, Esq, which in part was Prison Disciplinary documentation

2. Please add defendants C.O. Mr. Keith E. Vincent and Lt. Mr. Timothy Quinn to count one of the herein Complaint.

3. Also add Lt. Roy Vanstreet, Lt. Michael Quimette and, The Inmate Records Coordintor II Mrs. Sherri Guzylak to the list of Defendants in the herein complaint and also defendants in count one. All of these new defendants are DOCCS employees at ACF and are being sued by your Plaintiff in both their "official" and "individual" capacities.

manifestly related to maintaining prison order, discipline and, safety and, in part confidential information about your Plaintiff's case, personnel information (e.g., social security No.) Exhibit "M" is an Police document inwhich Plaintiff's Social Security NO. is present (I never spoke NYSP Investigator Mr. Brett E. Stover in any instant so he could have only gotten such information from the person(s) who illegally took such information or an third part [e.g., former ADA Mr. Brian T. Leeds] also note that your Plaintiff 'covered the actual No.) and, information about your Plaintiff's release which is strictly limited by federal regulations which state that information from an Agency's files may be furnished only to authorized persons or agencies and only in accordance with established rules and regulations of the Department (Ref, Exhibit "O", 4.15) Exhibit "M", page two line six states that: "On 3-8-16 I (NYSP Inv. Stover) forwarded a copy of the warrant to Auburn Correctional Facility and advised that members of SP Auburn would be taking custody of inmate Agee prior to his release."

79. The intent of John Doe No.11 was to punish your Plaintiff by using expunged DOCCS prison disciplinary documentation and your Plaintiff confidential records to vindicate public justice. When Prison disciplinary is not designed to vindicate public justice but rather to further the separate and important public

interest in maintaining prison order, discipline and safety.
Such punishment denied your Plaintiff of due process of law
because the sanctions that it imposed where extreme and
completely irrational since the disciplinary proceeding in
the herein action was commenced with the filing of an
accusatory instrument in Court (see Exhibit "C", which has
an To From Memorandum as its supporting deposition.)

80. Your Plaintiff true claim is whether DOCCS has the authorization
to (1) share confidential information with outside parties
without following it's own safeguards (2) Deprive your Plaintiff
of his property right to an Prison disciplinary hearing and use
evidence manifestly related to such proceeding to commence
the disciplinary proceeding with the filing of an Accusatory
Instrument in Court and (3) do both (2) and (3) occur without
there being an adequate chain of command where
supervising defendant specified in this count would have
zero knowledge of such deprivations.

## (i) CONFIDENTIALITY CLAIM

81. By defendant John Doe No.11 obtaining      and providing
an outside party with expunged DOCCS prison disciplinary
documentation and your Plaintiff's personal records
(e.g., social security No, release date, prior offense(s))

without going through the proper chain of custody is an "shock the conscience" act because defendant John Doe No.11 took such action with malicious and sadistical intent of causing your Plaintiff irreparable harm.   Which is an truly outrageous act in its self and enough evidence to show an Substantive due process violation in its own right. But, it is even more outrageous when DOCCS has created procedural protections in which if followed this entire situation would have been avoided, they indeed created an entitlement by creating such rules.

82. First and farmost defendant John Doe No.11, had no right to turn over any document . to 'the People of the State of New York' because that consist of the official duty of defendant John Doe No.3 the CPL at ACF DOCCS Directive No. 6910 Exhibit "L", specifically states:

III. "The Superintendent shall ensure that the facility CPL is notified of all incidents that WILL be referred for outside prosecution."

IV. "The following procedures shall occur for each case deemed to be prosecutable at the facility level A: The CPL shall complete the standardized Form No. 6910A, 'Information/Evidence Packet Cover Sheet,' regarding the incident, ensuring that all required information ... is obtained and included in the

PAGE 48

Information\Evidence Packet (e.g., The Unusual Incident Report [final report]); (This did not occur)

C. "The CPL shall submit one copy of the Information\Evidence Packet to The (Local) D.A's office and one to the appropriate police agency...[a]nd the CPL shall notify the Inmate Records Coordinator's Office of each case that is accepted for criminal prosecution by the D.A's office; (This also did not occur).

83. Instead, defendant John Doe No.11 realized that your Plaintiff would be released from DOCCS care, custody and, control the following day (March 9th, 2016) and, he acted outside of his official function and gathered up confidential documentation and turn such documents over to former ADA Mr. Brian T. Leeds, Esq, an outside party.

84. How he was able to do so is beyond my knowledge but, surly defendants Harold D. Graham, John Doe No.1, John Doe No.2, John Doe No.3, Sherixi Guzylak and several other DOCCS employees at ACF knew when NYSP Inv. Mr. Stover called ACF on the 8th day of March, 2016, and informed the proper authorities at such facility that your Plaintiff would be taken into custody upon his release by SP Auburn and be charged with Promoting Prison Contraband in the First degree in relation to an incident that occurred on 2.28.16, at such facility.

85. Exhibit "O", consists of mandated language that DOCCS Officials must accord to protect inmates from this type of misconduct and it states:

   2.2 "An employee shall not knowingly or willingly violate any law or ordinance of the United States or the State of New York or any rule, regulation, or directive of DOCCS".

86. Defendant John Doe No.11 Knowingly and willingly disregarded DOCCS directive No.6910, when he broke rule 4.2, 4.5, 4.7, 4.8, 4.9, and 4.15 of The Employees Manual, Exhibit "O".

87. Even if defendants Harold D. Graham, John Doe No.1 and Sherri Guzylak had no knowledge of such conduct on 3-8-16, on 3-9-16 came about and your Plaintiff was illegally detained by members of the New York State Police who were allowed to come into the facility to do so, in relation to an incident which occurred on 2-28-16.

88. Defendants Harold D. Graham and, John Doe No.1 had the Supervisory responsibility pursuant to Exhibit "O", 3.1 section A, B, C, D, E, H, and, M to stop such seizure from occurring and then such defendants were at least obligated to follow Exhibit "O", rule No.

   2.45 "Employees are obligated to report any information concerning corruption, fraud, misconduct, or abuse by an employee or supervisory staff in accordance

PAGE 50

with Departmental Directive No. 2260 'New York State Ethics"

89. Than on the 22th day of March, 2016, former Cayuga County ADA Mr. Brian T. Leeds, Esq., was allowed to enter ACF by the supervisory staff at such facility and obtain further confidential documentation this time from defendant Mrs. Sherri Guzylak who may have been ordered to turn over such documents to Mr. Leeds by supervisory staff at ACF [4] but, defendant Mr. Guzylak should have nonetheless upheld her duty as record "safe keeper" and complied with such order but immediately should have reported such order in compliance with Exhibit "O", rule No. 2.45 or through established grievance procedures.

90. On the same day in question while in ACF Mr. Leeds was also allowed to enter the storage area where contraband is stored and remove an razor type weapon from an secure storage area, Exhibit "N", is an picture of the alleged contraband.

91. This was an direct breach of the Chain of Custody Exhibit "J", DOCCS Directive No. 4910A, "Contraband/Evidence Handling, Storage and, Disposition" is the policy in which defendants Harold D. Graham, John Doe No.1, and John Doe No.2 are charged with upholding pursuant to Exhibit "O".

4. Please add such person who gave Mrs. Sherri Guzylak the order as John Doe No.13 and an defendant in this count.

PAGE 51

rule No. 2.1, 2.45, 3.1 (A, B, C, D, E, H, and M), and 4.15 Exhibit "JJ", specifically states that (1) The [F]acility ECS shall maintain the secure evidence locker and drop box exclusively (2) defendant DSS John Doe No.1 shall be responsible for the contraband/evidence program and (3) defendant Harold D. Graham the Superintendent shall establish procedures consistent with...[D]irective No. 4910A to ensure the appropriate control, handling, and disposition of contraband/evidence within the facility.

92. Exhibit "JJ" III, C, 1-C states:

"All evidence locker/storage areas will utilize two person access system for entry documented in a control logbook for deposit/removal of evidence. The evidence log stamp will be utilized to ensure the accuracy of information entered into the log. The storage and disposition of all evidence shall be a appropriate Security Supervisor as designated by the DSS [John Doe No.1] or equivalent is absolute during the deposit or removal of evidence from all storage locker(s) or area(s) as defined...[t]hroughout this policy."

93. No where in Exhibit "JJ" is it written that an Prosecutor is suppose to remove evidence from an storage locker in fact it specifically states that the Superintendent shall establish a point of contact with the NYSP or proper Police

agency but, no official at ACF ever had any contact with any Police agency in relation to the herein matter therefore no evidence should have been turned over to Mr. Leeds an unauthorized party especially since according to DOCCS rules and regulations such incident never occurred Exhibit "P", is proof that ADA Mr. Leeds was at ACF gathering expunged and other confidential evidence.

94. By disclosing and releasing such documentation/evidence to Prosecutor Mr. Leeds such defendant's deprived your Plaintiff of his State created liberties because(one) your Plaintiff's right to confidentiality of such private information is which contains intimate facts of a personal nature are well within the ambit of materials entitled to privacy protection under the Fourteenth Amendment privacy interest in releasing such information to an outside party such defendant's specified in your Plaintiff's confidentiality claim[5] Failed to follow the rules and regulations which governs DOCCS turning over such evidence to outside parties and the release of such information/evidence was not reasonably related to legitimate penological interest in DOCCS maintaining prison order, discipline and safety but imposed "atypical and significant hardship upon your

5. Remove Defendant Mr. Anthony J. Annucci and John Doe No.10 from your Plaintiff's Confidentiality claim.

Plaintiff   . in relation to the ordinary incidents of prison
life because such documents (e.g., Prison disciplinary)
were used to vindicate public justice Exhibit "C", exceeding
the sentence that your Plaintiff was serving in such an
unexpected manner as to give rise to protection by the
Due Process Clause of its own force. That such disclosure
was so removed from the original term of confinement
that it amounts to not only deprivations of liberty but
also an deprivation of life.

95. The public disclosure of your Plaintiff's private facts
surely violates State law. DOCCS in Exhibit "O" recognizes
an enthical obligation to preserve prisoners confidentiality
and has specifically created regulations for protecting the
privacy of inmates criminal history rule No. 4.15 of Exhibit
"O", Exhibit "M" paragraph No.1 is proof that the defendants
specified in the herein claim did not uphold such obligation.

     (ii) YOUR PLAINTIFF ENJOYED 'ZERO PROCEDURAL
          PROTECTION IN THE HEREIN CLAIM

96. Defendants Harold D. Graham, John Doe No.1, John Doe No.2,
John Doe No.3, Sherri Guzylak, Timothy Quinn, Keith E.
Vincent, Kevin Ashby, Nathaniel Sweet, John Doe No.4
   C. The confidentiality claim in the herein matter is both
an "substantive" and "procedural" due   process claim.

                    PAGE 54

John Doe No.5, John Doe No.6, John Doe No.7, John Doe No. 8, John Doe No.10, Ray Vanfeet, Michael Quimette, John Doe No.11, John Doe No.12, and John Doe No.13 deprived your Plaintiff of 'Liberty' and 'Property' without due process of law. With the property being your Plaintiff's right to an Prison disciplinary hearing and, your Plaintiff's liberty being his fundamental traditional procedural safeguards in relation to the fair hearing procedures and, the Mandatory language in which DOCCS uses that created a liberty interest in which your Plaintiff can reasonably expect to enforce such rules, regulations and, Directives against such defendants the defendants specified in the herein paragraph.

97. Allegedly on 2-28-16 defendant Keith E. Vincent wrote an misbehavior report, Exhibit "P", being such report states that "While I C.O. Vincent was working D-Block 2nd officer I was wanding inmates as they were going to PK [keeplock] rec. I was wanding Inmate Agee #08-B-1474 the wand sounded on Inmate Agee's right front side waste band..." Than approxamately 16 days later defendant Keith E. Vincent stated while under direct examination by the People, Exhibit "Q", Questioned by Prosector Mr. Leeds. [PAGE 6]

6. Q" What kind of work do you do for Auburn

Correctional Facility?"

8. A "I am Ea] third officer in dog [D] block."

98. Than approxamately one week later defendant Keith
E. Vincent II stated the following while under direct
examination by Prosecutor Mr. Leeds:

4. Q. "The grand jury here is investigating Mr. Agee
for the offense at the prison..."

9. A. "I was working in D-Block."

10. Q. "What is D-Block in relation to the prison itself?"

12. A. "It is a general housing block."

13. Q. "What kind of job did you have on D-Block at
that point?"

15. A. "I was the third officer I think in the block."

99. This could be an small inconsistently I believe it not
to be based on the fact that John Doe No.4 who was
present when this alleged incident occurred actually
had the handheld metal detector in hand, and was
standing exactly where defendant Mr. Vincent claims
he was and for the majority of the month of Feburary
2016, your Plaintiff went to keeplock recreation and
the only times that John Doe No.4 was not working
the handheld metal detector was when he was not
working D-Block discovery will disclose such
pattern and will also disclose that the entire time

PAGE 56

that your Plaintiff was keeplock no mored than three maybe four CO's had such job and none of which were defendant Mr. Vincent.

100. Defendants Mr. Vincent and Mr. John Doe No.4 were not the only defendants present when this incident place there is also defendants Nathaniel Sweet, Kevin Ashby, John Doe No.5, John Doe No.6, John Doe No.7, and John Doe No.8 were also present none of which persons who were present othered than defendant Vincent endorsed such misbehavior report or wrote an seperate report in relation to such matter.

101. Then there are the Unusual Incident Report and other Memorundums  written in relation to the therein matter all of which are Included in Exhibit "B", and all of which are seperate and inconsistent with the statements and testimony provided by defendant Vincent who stated the following in Exhibit "Q":

PAGE 22

6. Questioned by Defense "Okay. Do you remember what you wrote in that report?"

8. A. "Briefly, but not verbatim, absolutely not."

9. Q. "Did you ever talk to a State Trooper in regards to this incident?"

11. A "In regards to this incident?"

PAGE 57

12. Q "Yes."

13. A "No."

PAGE 26

13. Q" Okay. So you had no contact as far as... Were you interviewed by anybody else regarding this, this incident after your memorandum was submitted?"

16. A "No."

17. Q" Okay. So you never spoke to a supervisor about this? It was just you fill out the memorandum and pass it up?"

20. A "Yes, that is correct."

PAGE 27

13. Atty. Brennan "As I am looking at the felony complaint and this was submitted by the District Attorney's office, Your Honor, and I'm wondering why the statements on the felony complaint is the different than the statement that's that's contained within memorandum to his supervisor judge."

20. Q "Do you have any explanation for why that would occur?"

22. A "Again, as far as any of that that's has nothing to do with myself. That is above my pay grade."

PAGE 28

1. Q "Would it surpise you that the felony complaint mentions that this weapon was found during a pat frisk in front

PAGE 58

of the cell?"

4. A "Would it surpise me? I guess I would say yes because that's not where it was found. If it was it would've been in my statement."

102. Such inconsistent reports where written by defendants Timothy Quinn, Ray VanFleet, and Michael Quimette and reported to defendant formerly known as John Doe No.1 DSS E. Fagan, Caption Mr. Jeremiah Brooks[7] and defendant Timothy Quinn. Defendant Harold Graham signed off on the final.

103. Than there is the issue of just how did defendant Vincent end up testifying at the Preliminary hearing. Your believes that defendant Mr. Keith E. Vincent was not subpoenaed by the People but was contacted by Prosecutor Mr. Leeds and offered an deal in relation to an case that he had pending in Auburn City Court dive to the incident that he had in the city of Auburn were he allegedly got into an fight with an State Trooper. This explains why the trooper Brett Stover had got defendant's Vincent's date of birth Exhibit "M".

104. If the defendants specified in this herein claim knew that they were going to deprive your Plaintiff of his life, liberty and property in a way that is not typical of prison

7. Please add Capt. Mr. Jeremiah Brooks as an defendant in the herein Complaint and Count.

PAGE 59

life by becoming a representive for the people of the State of New York in the customary term for prosecutorial purposes which imposed atypical and significant hardship upon your Plaintiff life who was due to be released from DOCCS care, custody and, control but was instead illegally detained by the NYSP based on prison disciplinary documentation that is menifestly related to maintaining prison order, discipline and, safety, which was expunged from your Plaintiff institutional record. Then such defendants should have afforded your Plaintiff some type of procedural protection before depriving your Plaintiff of his life, liberty and property since it is very clear that such defendants knew in advance that such deprivation was going to occur.

105. NOTICE, your Plaintiff has no knowledge of ever receiving any notice and all prior motions that your Plaintiff has put in in relation to such matter the defendants have never acknowledged ever giving your Plaintiff any notice.

106. By not providing your Plaintiff any notice he was not informed of the charges and this enabled him from marshaling the facts and preparing a defense.

107. This is the most basic process and the fact that your Plaintiff has no knowledge of ever receiving it he was deprived of the opportunity to identify relevant evidence and present a defense.

PAGE 60

108. It is an Constitutional guarantee that all prisoners be given Notice of the rules (s)he has allegedly broken in order to know how to "marshal the facts and present an defense." By Imposing sanctions using such Prison disciplinary documents in which your Plaintiff had not received any Notice for deprived your Plaintiff of the ability to prepare an defense since he had no knowledge of the fact that there where inconsistent statements and no endorsement by any person [C.O.] present when defendant Vincent allegedly found such contraband, which is fundamentally unfair to your Plaintiff.

109. THE RIGHT TO HEAR AND BE HEARD, this is another of the most basic due process rights in which your plaintiff has been deprived of. The Hearing Officer⁸ refused to even hear your Plaintiff before imposing his or her sanctions upon your Plaintiff.

110. The only reason that your Plaintiff was able to provide this Court with the Exhibits in the herein Complaint is because of his legal research and through discovery in his criminal proceeding in relation to such matter.

111. Defendants Mr. Harold D. Graham, Fagan, and Mr. Jeremial Brooks and other defendants who will be specificed once

8. Please add The Hearing Officer as an defendant in the herein claim as John Doe No.14.

PAGE 61

discovery is completed, have an obligation under the Fourteenth Amendment Due Process Clause to take the necessary steps of assuring that your Plaintiff is heard and has chance to hear the evidence being presented against him before such officials allow sanctions to be imposed upon your Plaintiff using such Prison disciplinary documentation.

112. Your Plaintiff was never afforded an internal Prison disciplinary hearing in relation to such matter (from 2.28.16) and therefore was deprived of his right to hear and be heard since defendant John Doe No. 14 never made an attempt to hear your Plaintiff's version of the facts in any manner be sanction using such Prison disciplinary documentation were imposed.

113. <u>WITNESSES CONFRONTATION AND CROSS EXAMINATION,</u> Your Plaintiff also has an right to call witnesses as long as doing so is not "unduly hazardous to institutional safety or correctional goals." Allowing witnesses to appear live is important since scalling such witnesses would have an important means for your Plaintiff to attempt to prove his version of the events, and for a fair and trearing officer to evaluate the credibility and demeanor since such hearing officer was not present at the incident. It was very important that your Plaintiff – an accused prisoner have the option of questioning a witness he calls - or at least hearing the witness and suggesting questions to the hearing officer to be sure that all the relevant

information is brought out.

114. Your Plaintiff faced an credibility issue trying to disprove the charges of defendant C.O. Vincent. But certainly, defendants Kevin Ashby, Nathaniel Sweet, John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, and John Doe No.8 can only be deemed as important witnesses since they were eyewitnesses to all parts of the incident and none of which could be considered cumulative because they were all present and none of which signed the misbehavior report or wrote an seperate report which in its self deprived your Plaintiff of his state created liberty.

115. Exhibit "I", subpart 251-3, section 251-3.1 (B) states".

"The Misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident. Where more than one employee has personal knowledge of the facts, each employee shall make a seperate report or, where appropriate, each employee shall endorse his or her name on a report made by one of the employees."

116. Exhibit "O", Section 3, A,B,C,E and G state".

"Supervisory responsibilites shall include....[t]he enforcement of all Agency rules, regulations, policies,

PAGE 63

and procedures... [R]eporting and documenting violations of Agency policy and procedure promptly... [T]he exercise of responsibility for the appropriate instruction of all their assigned personel in the methods of performing their official duties... [D]irecting the efforts of subordinates staff and establishing and maintaining all necessary controls to ensure the efficient work performance of assigned personnel... [E]nsuring that subordinate staff is properly trained to perform the duties to which they are assigned and coordinating with the Albany Training Academy via the chain of command to ensure compliance with [D]CCCS requirements as related to annual training... Reviewing reports submitted by their assigned personnel and taking appropriate and necessary action to ensure the accuracy of such report.

117. Defendant Nathaniel Sweet stated in the Criminal proceeding under oath that he did not check your Plaintiff's waistband because DOCCS employees are not trained to check inside inmates clothes which is very much inconsistent with DOCCS directive No. 4910, Exhibit "K", which states, under Section 3, B that:

   " A pat frisk means   a  search by hand of an inmate's person, and his clothes, while the inmate is clothed... The search shall include searching into the inmate's clothing. Contact

through the clothing with the genitalia, groin, breast, inner thigh, and buttocks is a necessary component of a through pat frisk..."

118. Defendant Kevin Ashby stated that he does not remember what occurred [   due an 8 month time laspe] in the same criminal Proceeding as defendant Sweet.

119. Your Plaintiff believe's that defendants Mr. Sweet, Mr. Ashby, John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7 and, John Doe No.8 wanted no parts of defendant Mr. Vincent planting contraband on your Plaintiff because such an act is morally wrong but, your Plaintiff believe's that such defendants would find it extremely hard to simply "do what is proper and just" for fear of retaliation by other staff members who would surely seek justice for them turning against an co worker for an inmate.

120. So your Plaintiff believe's that even questioning such defendants would reveal contradiction and avoidance that would call into question the credibility of defendant Mr. Vincent's story.

121. Now due to such an huge laspe in time your Plaintiff will certainly be given stories by individuals whose memories will be faulty, might be perjurers like defendant Mr. Sweet or may be motiviated by malice, vindictiveness, and intolerance due to the herein suit against such

PAGE 65

parties.

122. Just by asking such defendants questions your Plaintiff is certain that he would have uncovered several inconsistencies laspes of recollection, and bias motiviation.

123. Under the procedural protection that your Plaintiff was accorded in relation to this matter from 2·28·16 DOCCS imposed it's punishment upon your Plaintiff not only without giving your Plaintiff an opportunity to call witnesses who were actually present but, in addition DOCCS did not care to know the identities of the present parties and simply relied on the false reports of Supervising staff without examining the Supervisor personally.

124. There was no Assistance, Impartial Decision-Maker, and therefore no evidence presented by DOCCS before such prison disciplinary was used to commence an punishment against your Plaintiff, because there was no hearing, notice of, any other form of due process afforded to your Plaintiff.

125. FALSE CHARGES, First and farmost the misbehavior report written by defendant C.O. Mr. Vincent is false for several reasons mainly because. his allegations are scientifically impossible.

126. Defendant C.O. Mr. Vincent claims that your Plaintiff was pat frisk in front of his cell be defendant

Mr. Sweet under the rules, regulations and standards set out under in Exhibit "K" Section 3(B) while defendant Mr. Ashby observed such frisk than after such frisk was completed your Plaintiff was to remove his shoes from his cell gate bent over place his shoes on gather the rest of the items that he wishes to bring to the yard (e.g., put his Jacket on, place matches in his pocket) than put his hands in his pockets immediately after such process keeping his head straight forward while being escorted to the front of the company by defendants Mr. Sweet and Mr. Ashby and since⁹ your Plaintiff was the last inmate to process to keeplock recreation on D-Block he remain in defendants Mr. Sweet and Mr. Ashby care, custody and, control even while he is being searched with the handheld metal detector.

127. If this Court would turn back to Exhibit "Q", defendant Mr. Vincent stated following while being questioned by defense for your Plaintiff:

PAGE 16

23. Q "And describe to the court what a pat frisk actually is"

PAGE 17

9. When an inmate is the last inmate to proceed to keeplock recreation at ACF the C.O's who frisk them in front of there cell walk them outside and lock the gate.

PAGE 67

1. A." A pat frisk, everybody has their own kind of method of doing it, but normally you start in the arms area as you search the arms running your hands over the materials, run your hands down the chest area around the back, the sides, waist line, go down the legs and you know, one leg at a time and that's it."

7. Q" And during a pat frisk, does an officer actually apply pressure to a person to, to form their hands around the body itself?"

10. A "No."

11. Q" So,   he would just, a simple just kind of rubbed the guy and down and doesn't..."

13. A "Pretty much. Yes, sir."

20. "Okay. Is that possible if they were doing a pat frisk the correct way?"

22. A" It's very possible."

23. Q "They..."

24 A" It's very possible."

PAGE 18

2. Q" okay and where do you... As far as his waistband, explain to be what a prison waistband would be? I mean, is it... Are there pockets in the waistband or is just a, is it enclosed?"

6. A" No, it's in... There's two different types of waistbands. You have elastic waistbands, as well as just traditional pant waistbands?"

9. Q" Okay. Did my client have an elastic waistband on at the time?

11. A" Yes, I believe he did have that."

PAGE 68

19. Q "Okay, Was it more tucked into the waistband? Was it inside? If it a drawstring waistband I guess is what I'm getting at?"

22. A "No, not a drawstring."

23. Q "Okay, So, would there have been a hole in the, in the pants themselves?"

Page 19

1. A "There was not to the best of my knowledge, there was not one in his."

3. Q "Okay, So, there was no holes is what you're testifying. There was no holes in the actual pants?"

5. A "To the best of my knowledge, I did not take his pants off."

128. Also throughout such hearing defendant Mr. Vincent stated that he doesn't know, lied. and stated things regarding DOCCS rules, regulations and, directives are above his pay grade several times when he was specifically trained on such things rules, regulations and, directives as apart of his official duties.

129. But the part that made it clear that he was lying is when he indicated that such contraband was simply tucked on my waistband which is scientifically impossible as a matter of law.

130. It is simply impossible for anything to remain of anybody's waistline which is only 2 inches and remain of such waist line after someone has bent over put his shoes on and, is unable from adjusting such item to keep it from falling

(1) down his pants leg and (2) out on the company no matter how tight a person's pants are such a thing is not possible as a matter of law unless any one of the defendants wants to present evidence to this Court that such item is defiant to gravity.

131. Clearly Plaintiff was pat frisk prior to when defendant Mr. Vincent allegedly found the weapon on my waist band and none of the supervisory staff who wrote reports about such incident and, received reports about such incident made no attempt to "reviewing reports submitted by their assigned personnel and taking the appropriate steps to ensure the accuracy of such reports."

132. Even if defendant Vincent told defendant Ray Vanfleet that he searched me in front of my cell defendant Vanfleet still has the responsiblity of making sure such report is actually true and the same can be said about defendants Quinn, Graham, Fagan, Brooks, and Quinnette who all wrote, received or wrote and received reports about such incident without ever checking into the accuracy of such reports which deprived your Plaintiff of his state created liberty specificed in Exhibit "O", Section 3, 3.1(G) and of due process of law.

133. Since such prison disciplinary was used to commence my punishment the minimal process due to your Plaintiff before

<u>PAGE 70</u>

receiving such punishment without a hearing is that such process not be contaminated by the introduction of through state action of false inculpatory evidence. The introduction of false evidence in itself violates the due process clause and the fundamental right of your Plaintiff not to have state officials make purposely false statements about him.

134. UNLAWFUL DISCIPLINARY PROCEEDING, by defendant John Doe No. 11 turning over expunged DOCCS Prison Disciplinary documentation to the former Cayuga County ADA Mr. Leeds he "initiated" a prosecution against your Plaintiff for the mere fact that such documentation is confidential in nature pursuant to Exhibit "O", Section 4, 4.15 which states "Information from Agency files may be furnished only to authorized persons or agencies and only in accordance with established rules and regulations of the Department." (2) Exhibit "I", section 251-3.1(D);(1) states "You are hereby advised that... no information derived therefrom may be used against you in a criminal proceeding" and; (3) In New York State it is a fundamental principle of law that the legislation delegated to DOCCS ("an administrative agency") the power to make rules and regulations (e.g., Directives") to implement the rulemakings Legislation since rulemaking is an legislative or quasi-legislative function, DOCCS possesses no inherented legislative power and may constitutionally exercise its authority only by promulgating rules    . within the boundaries of its legislative delegation or its legislative delegation without acting arbitrarily and capriciously in the enactment of rules and regulations in the exercise of their delegated power. DOCCS can only act to implement its charter as it is written, they cannot create rules not contemplated or authorized by the legislature and thereby, in effect, empower themselves to rewrite or add substantially to the administrative charter itself.

PAGE 71

135. Legislation specifically implemented the statute outlined in <u>DOCCS directive No. 6910</u>, "The Criminal Prosecution of Inmates", <u>Exhibit "L"</u>, so no DOCCS employee would be authorized to by pass the traditional and well-recognized safeguards in an Prison disciplinary proceeding especially with the doctrines of Res Judicata looming.

136. The doctrines of Res Judicata precluded DOCCS from furtherly litigating the herein matter after the incident from <u>2-28-16</u> should have been expunged from your Plaintiff's institutional and departmental records on no later than <u>3-09-16</u> after your Plaintiff received no notice, no assistant, and no disciplinary hearing and was released from DOCCS care, custody and, control but your Plaintiff believe's that such expungement was proper on the 8th day of March, 2016, when an hearing was not commenced within 7 days (Your Plaintiff was released from MHU on the 1st day of March, 2016) pursuant to <u>Exhibit "I"</u>, <u>Section 251-5.1 (a)</u>, administrative finality which should have been an final judgment on the merits. Instead Defendants in the herein count conspired against your Plaintiff by agreeing that expunged DOCCS Prison disciplinary (which if not expunged only has the purpose of maintaining prison safety, discipline and, order) could be used to represent the People of the State of New York in an criminal proceeding when such an act was barred since such an act involved the same parties, the same facts and the same subject matter.

137. The Defendants specified in the herein count converted actions one day prior to your Plaintiff's released which went against there own rules and regulation depriving your Plaintiff a liberty interest a violation of the Fourteenth amendment and caused your Plaintiff to be falsely arrested and falsely imprisoned an overt act in furtherance of such defendants

<u>PAGE 72</u>

goal of using prison disciplinary documents(which is menifestly related to further the important public interest in maintaining prison order, discipline and safety are of which are sanctions that are civil in nature and not intended to extend the period of incarceration originally imposed but rather such sanctions are aimed exclusively at the sentence being served by the Plaintiff), Which such defendants are bound to and disregarding such binding effect by acting as agents for the People of the State of New York in there quest to vindicate public justice, Since DOCCS defendants specified in the herein count disregarded there own rules and regulations and commenced there discipline with the filing of an Accusatory Instrument.

138. By representing the rights of the People such defendants in the herein count imposed sanction so grossly unrelated to the remedial goals of maintaining order and discipline in DOCCS correctional Facilities, that such punishment deny's due process because they are so extreme and completely irrational, and an complete "shock the conscience". decision by the defendants specified.

139. Under the New York State Transactional Law DOCCS had an full and fair opportunity to litigate the herein matter institutionally by failing to take the incentive to present it's case institutionally in an prison disciplinary proceeding the defendants specified in the herein count deprived your Plaintiff of his right to call, examine and cross-examine witnesses, introduce documentary evidence and make oral or written arguments before the defendants in the herein count imposed there punishment.

140. The evidence to support your Plaintiff's claims that the defendants conspired against your Plaintiff is the fact that the disciplinary charges specifically the expunged Unusual Incident report, remains on your

PAGE 73

Plaintiff's institutional record which deprived your Plaintiff of due process of law and such violations of your Plaintiff's due process rights" significantly affected your Plaintiff's ability to demonstrate his innocence."

141. Finally, In the State of New York, Legislation has never written an statute and made it clear within there respective rulemaking powers that the procedures that the defendant employed in the herein count are necessary and warranted and has their authorized use. Such decisions cannot be assumed by acquiescence or nonaction. They must be made explicitly not only to assure that individuals are not deprived of cherished rights under procedures not actually authorized, but also because explicit action, especially in areas of doubtful constitutionality, requires careful and purposeful consideration by New York State Legislation who looks into the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to Legislative power of enacting and implementing e DOCCS rules. Without explicit action by legislation, decisions of great constitutional import and effect would be relegated by default to administrator who, under New York system of government, are not endowed with the quasi-legislative authority to decide them.

142. New York State DOCCS is an administrative agency under the New York State Administrative Procedure Act which is ment to conform with Federal Administrative Procedure Act with the identity of language supporting a policy of uniformity between State and Federal lawmakers with the mere difference being that the Federal APA is governed by congress or the President while the State APA is governed by the rulemaking ability of legislation. Which at wrost supports your Plaintiff claims that the defendants in this count deprived your Plaintiff of his state created liberties an violation

of your Plaintiff fourteenth amendment right since such defendants did not follow there own rules, which governs DOCS.

## (B) DAMAGES

143. Defendant Mr. Harold D. Graham[10] shall be held liable for his actions against your Plaintiff in the herein count by compensating your Plaintiff 150 Thousand dollars in cash and 15 million dollars in punitive damages.

144. Defendant Mr. E. Fagan shall be held liable for his action against your Plaintiff in the herein count by compensating your Plaintiff 135 Thousand dollars and 20 million dollars in punitive damages.

145. Defendant John Doe No. 2 shall be held liable for his action in the herein count by compensating your Plaintiff 75 Thousand dollars and, 15 million dollars in punitive damages.

146. Defendant John Doe No. 3 shall be held liable in count. One by compensating your Plaintiff 75 Thousand dollars and, 15 million dollars in punitive damages.

147. Defendant Timothy Quinn shall be held liable for his conduct in count one by compensating your Plaintiff 75 Thousand dollars in cash and 15 million dollars in punitive damages.

148. Defendant Keith E. Vincent shall be held liable for his actions in count one by paying your Plaintiff 100 Thousand dollars in compensatory damages and 25 million dollars in punitive damages.

149. Defendant Ray VanFleet shall be held liable for his actions in count one by paying your Plaintiff 50 Thousand dollars in compensatory damages and 15 million dollars in punitive damages.

10. Defendant Mr. Harold D. Graham is now the former Superintendent at Auburn Correctional Facility.

150. Defendant Sherri Guzylak shall be held liable for her actions in count one by paying your Plaintiff 50 Thousand in compensatory damages and 1 million in punitive damages.

151. Defendant Kevin Ashby shall be held liable for his actions against your Plaintiff relating to count one by paying your Plaintiff 25 Thousand in compensatory damages and, 5 million dollars in punitive damages.

152. Defendant Nate Sweet shall be held liable for his actions against your Plaintiff relating to count one by paying your Plaintiff 25 Thousand in compensatory damages and, 5 million dollars in punitive damages.

153. Defendant John Doe No. 4 shall be held liable for his actions against your Plaintiff relating to count one by paying your Plaintiff 25 Thousand in compensatory damages and 5 million in punitive damages.

154. Defendants John Doe No. 5, John Doe No. 6, John Doe No. 7 and, John Doe No. 8 shall equally be held liable for there actions against your Plaintiff relating to count one by paying your Plaintiff 150 Thousand dollars in compensatory damages and 15 million in punitive damages.

155. Defendant John Doe No. 11 shall be held liable for his actions against your Plaintiff relating to count one by compensating your Plaintiff with 1 million dollars in compensatory damages and 50 million in punitive damages.

156. Defendant John Doe No. 12 shall be held liable in the herein count by paying your Plaintiff 50 Thousand in compensatory damages and 15 million in punitive damages.

157. Defendant John Doe No. 14 shall be held liable for his misconduct in the herein count by paying your Plaintiff 50 Thousand in compensatory damages and 10 million in punitive damages.

158. Defendant Michael Duprette shall be held liable for his misconduct in the

PAGE 76

herein count by paying your Plaintiff 50 Thousand dollars in compensatory damages and 10 million in punitive damages.

WHEREFORE, your Plaintiff is suing the defendants specifically those under Damages in count one for violating your Plaintiff fourteenth amendment right while acting under the color of law depriving your Plaintiff of life, liberty and property without due process of law. Such defendants are being sued in there individual capacities.

COUNT TWO: DEFENDANTS ANTHONY J. ANNUCCI, JOSEPH BELLNER, HAROLD D. GRAHAM, E. FAGAN, JOHN DOE No.2, JOHN DOE No.3, TROY MITCHELL, KEVIN ASHBY, KEITH E. VINCENT, NATHANIEL SWEET, JOHN DOE No.4, JOHN DOE No.5, JOHN DOE No.6, JOHN DOE No.7, JOHN DOE No.8, JOHN DOE No.9, JOHN DOE No.10, JOHN DOE No.11, JOHN DOE No.12, JOHN DOE No.13, JOHN DOE No.14, TIMOTHY QUINN, SHERRI GUZYLAK, STEPHEN MAHER," THE CHIEF OF THE OFFICE OF SPECIAL INVESTIGATION, MICHAEL QUIMETTE, AND JEREMIAH BROOKS DEPRIVED YOUR PLAINTIFF OF HIS EIGHTH AMENDMENT RIGHT WHILE ACTING UNDER THE COLOR OF LAW WHEN THEY KNOWINGLY AND WILLINGLY SUBJECTED YOUR PLAINTIFF TO CRUEL AND UNUSUAL CONDITIONS AND ADMINISTERED CRUEL AND UNUSUAL PUNISHMENT UPON YOUR PLAINTIFF.

159. Defendant Mr. Keith E. Vincent II lied and stated that he found

11. Please add Mr. Stephen Maher as a defendant in the herein ela complaint and note that he is being sued in his "individual" capacity.

PAGE 77

contraband on your Plaintiff's persons and involves the "wanton and unnecessary infliction of pain" because your Plaintiff was transferred from his cell to the Special Housing Unit (hereinafter "SHU") and such an action by C.O. defendant Mr. Vincent posed an unreasonable risk of serious damage to your Plaintiff's constitutional right not to be restraint of movement. By defendant Mr. Vincent making such allegations alone defendant Mr. Vincent actions amount to psychological torture since your Plaintiff did not possess any knowledge of what defendant Vincent's actions would yield which are conditions bad enough to be considered "cruel and unusual" in violation of your Plaintiff's eighth amendment right.

160. Defendants Kevin Ashby, Nathaniel Sweet, John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7 and, John Doe No.8 watched defendant Vincent handcuff your Plaintiff and heard him tell defendant Ray Vanfleet that he found contraband in your Plaintiff's boot. By not taking any action such defendant subjected your Plaintiff to the "wanton and unnecessary infliction of pain." Such defendants knew that it was an real possibility that your Plaintiff could have been given an new criminal charge based off of the allegations of defendant Vincent alone. Still and all such defendants knew of such credible risk of immediate harm being done to your Plaintiff who was transferred to SHU and failed to act on the credible threat and excessive risk that your Plaintiff could very possibly be falsly arrested and falsly imprisoned based off the misconduct of defendant Vincent which amounted to psychological torture in combination of the conduct of defendant Mr. Vincent which are conditions grossly disproportionate to such defendants official duties of Correctional Officers and conditions

PAGE 78

that are bad enough to be considered "cruel and unusual" in violation of your Plaintiff's eighth amendment right.

161. Defendants Harold Graham, E. Fagan, Timothy Quinn, Ray Vanfleet and, Jeremiah Brooks subjected your Plaintiff to cruel and unusual prison conditions when they wrote and received reports in relation to the allegation made by C.O. defendant Vincent that were false. DOCCS specifically has procedures in place that they are bound to which has created an state created liberty for your Plaintiff which such defendants deprived your Plaintiff of by simply copying what was on such report presented to them onto another report written by them. Exhibit "O" specifically states in Section 3, 3.1 That all supervisory DOCCS employees shall be responsible for G. "Reviewing reports submitted by their assigned personnel and taking appropriate and necessary action to ensure the accuracy of such report." This means actually conducting an investigation into the alleged reports being submitted to them. Such defendants have an duty to know that nowhere in ACF could defendant Vincent be conducting an held hand held metal detector frisk of an inmate proceeding to keep-lock recreation by himself because such an act is not in accordance with ACF established protocol. If such defendants, I mean any one of the had conducted any type of investigation into defendant's Vincent allegations it would have been discovered that (1) No C.O. who was present endorsed the alleged misbehavior report written by defendant Vincent or wrote an seperate report in relation to defendant Vincent's allegations (2) and such defendants wanted no part of defendant Vincent's misconduct and purposely avoided endorsing such misbehavior report or writing an seperate report for the sole reason that defendant

was being untruthful about the allegations written in such report. By not conducting an investigation into the allegations made by defendant Vincent such defendants took an action grossly disproportionate to there official duties as DOCCS Supervisors (e.g., Exhibit "O", 3.1[G]) and "involved the wanton and unnecessary infliction of pain." Since it is very possible that such reports could be false and your Plaintiff could be disciplined based on such false reports. There is also an excessive risk that such false reports could be used/submitted in an Information/Evidence Packet to the Police and D.A's office and your Plaintiff could have been prosecuted based off such false reports so in combination with the allegations made by defendant Vincent the conditions that such defendants imposed upon your Plaintiff can only be considered cruel and unusual and unconstitutional in nature an violation of your Plaintiff's eighth amendment right.

162. Defendants Troy Mitchell and, John Doe No.9 subjected your Plaintiff to objectively cruel prison conditions when Troy Mitchell came into your Plaintiff's cell and assaulted your Plaintiff while defendant John Doe No.9 stood and watched. Defendant Mitchell could have killed your Plaintiff or seriously hurt him which amounts to an "unquestioned and serious deprivation of basic human need" constituting as an deprivation of the "minimal civilized measure of life's necessities", being so grossly disproportionate to the severity of the crime and involves the "wanton and unnecessary infliction of pain." Such conditions alone deprived your plaintiff of "the minimal civilized measure of life's necessities" where your Plaintiff did not receive reasonable safety while in DOCCS care, custody and control which is enough to be cruel and unusual punishment in violation of your Plaintiff's eighth amendment right.

163. Defendant Sherri Guzylak as inmate records safekeeper at ACF placed upon your Plaintiff objectively cruel and unusual prison conditions when she deprived your Plaintiff of his liberty interest and did not keep such records safe from theft when John Doe No.11 was able to obtain your Plaintiff's personal records including his social security No., release information (e.g., parole officer's name) and prior offense which amounts to an "unquestioned and serious deprivation of basic human need", constituting as a deprivation of a "minimal civilized measure of life's necessities" in its own right since such information is confidential in nature and your plaintiff has an right to confidentiality of such private information pursuant to Exhibit "O" Section 4, rule No. 4.2, 4.5, 4.7, 4.8, 4.9, 4.12 and 4.15 in which your Plaintiff had an right that defendant Guzylak keep such records safes and the fact that she did not she exposed your Plaintiff to the excessive risk that such documents might be used to impose sanctions so grossly unrelated to DOCCS's official function of maintaining prison order, discipline, and safety since such documentation was not "furnished only to authorized persons or agencies in accordance with the established rules and regulations of the Department (Exhibit "O", 4.15)." For that reason alone defendant Mrs. Sherri Guzylak deprived your plaintiff of his right to be reasonably safe while in DOCCS care, custody and control which are cruel and unusual conditions in violation of your Plaintiff's eighth amendment right.

164. Defendant John Doe No.11 subjected your Plaintiff to objectively cruel and unusual conditions when he furnished prison disciplinary documentation to the People of the State of New York not in accordance with DOCCS directive No. 6910 Exhibit "L", an deprivation of an liberty interest

which is the only authorization that DOCCS employees have in furnishing documentation to the People of the State of New York which amounts to "unquestioned and serious deprivations of basic human need" constituting as a deprivation of an "minimal civilized measure of life's necessitive" being grossly unrelated to DOCCS official function of maintaining prison order, discipline and, safety and imposing civil sanctions. Instead by defendant John Doe No.11 turning over such prison disciplinary documentation to the People of the State of New York he placed significant and atypical hardship upon your Plaintiff grossly disproportionate to the offense being served by your Plaintiff since an excessive risk ~~knowing~~ that the People would use such prison disciplinary documentation to extend the period of time originally imposed upon your Plaintiff in his original sentence. Since the People are imposed with the duty of vindicating public justice and, DOCCS the duty of maintaining prison order, discipline and, safety. For that reason alone defendant John Doe No.11 placed upon your Plaintiff "cruel and unusual" punishment in violation of the Eighth amendment.

165. Defendants Graham, E. Fagan, John Doe No.2, John Doe No.3, John Doe No.13 and John Doe No.14 subjected your Plaintiff to objectively "cruel and unusual punishment" when NYSP Investigator contacted Officials at ACF on 3-8-16 and informed them that members of Auburn Station SP would be taking your Plaintiff into custody upon his release from DOCCS care, custody and, control the following morning (3-9-16) on the charge of Promoting Prison Contraband in the First degree in relation to an incident that occurred at ACF on 2-28-16 in which defendant John Doe No.2 never submitted an information/evidence packet for pursuant to

Exhibit "L", such incident was never deemed an prosecutable offense by defendant Harold Graham and defendant Fagan and John Doe No. 3 preserved the alleged contraband 13 days after such incident was surely ordered expunged from your Plaintiff institutional and departmental record only to have former Cayuga County ADA Mr. Brian T. Leeds come to ACF on 3.22.16 to retrieve such contraband even though Exhibit "J", explicitly states that such evidence is suppose to be turned over to an Law enforcement official in which the only contact that any official at ACF had with any law enforcement is when (1) NYSP Investigator Mr. Brett E. Staver contacted the facility and informed an officials(s) that your Plaintiff would be taken into custody the following morning and, (2) when NYSP Investigator came to ACF to illegally detain your Plaintiff. John Doe No. 13 should had never ordered defendant Mrs. Guzylak to turn over further documentation to Prosecutor Leeds and John Doe No. 14 errored when (s)he did not report such fraud, corruption and misconduct pursuant to DOCCS directive No. 2360. Defendants Graham, Fagan, John Doe No. 2, John Doe No. 3, John Doe No. 13 and John Doe No. 14 equally subjected your Plaintiff to objectively cruel conditions when they deprived your Plaintiff of several of his liberty interests for that reason alone such defendants deprived your Plaintiff of his "minimal civilized measures of life's necessities by allowing John Doe No. 11 to furnish your Plaintiff's confidential information to an outside party not in accordance to DOCCS rules and regulations obtained information about such disclose and knew of the risk of such act of curuption imposed upon your Plaintiff and Failed to act which amounted to "cruel and unusual punishment in violation of your Plaintiff's Eighth

amendment right.

166. Defendant John Doe No.12 subjected your Plaintiff to cruel and unusual condition when around the 14th day of November, 2016, (s)the supplied Prosecutor Leeds: with Exhibit "E", which is an chart of all the unusual incidents that occurred at ACF which placed atypical and significant hardship upon your Plaintiff in relation to ordinary incidents of prison life where such chart is used to maintain prison order, discipline and, safety. Defendant John Doe No.12 only purpose for turning such documentation to the People was to punish your Plaintiff in an criminal proceeding a deprivation of the "minimal civilized measure of life's necessitive" such document is civil and turning it over to the People of the State, imposed an penalty grossly disproportionate to the original intent of the manifestation of such document since the People use of such document would be to vindicate public justice and the purpose of such document is to maintain prison order, discipline and, safety. Such an move by defendant John Doe No.12 posed an serious risk of serious damage to your Plaintiff's constitutional rights since he was already deprived of his protected liberty interest when John Doe No.11 furnished DOCCS documentation to an outside party not in accordance to DOCCS directive No.6910, Exhibit "L", the only authorization that an DOCCS employee specifically John Doe No.3[12] is empowered to turn over documentation to the People of the State of New York. Defendant John Doe No.12 added insult to injury assuming that he is not John Doe No.3 that involved the " wanton and ~~caress~~

12. your Plaintiff mistated John Doe No.2 for John Doe No.3 several time in the herein court but will correct such mistake ~~for~~ on this point forward.

PAGE 84

unnecessary infliction of pain" since there was an excessive risk that
such information specifically in Exhibit "E", would be used to further
the illegal detention of your Plaintiff. For that reasons stated in this
paragraph defendant John Doe No.12 violated your Plaintiff's eighth
amendment constitutional right.

167. Defendant John Doe No.10 subjected your Plaintiff to objectively cruel
conditions on January 10th, 2017, whe (s)he reviewed the records
at ACF in accordance to Exhibit "J" VI(3) and did not take notice
or file an complaint pursuant to DOCCS directive No.2260, when it
was discovered that officials at ACF turned over contraband to
Prosecutor Mr. Leeds specifically DOCCS has no directive in which
evidence should be turned over to an prosecutor. Defendant John
Doe No.10 deprived your Plaintiff of his protected liberty interest as
the Technical Security Specialist when (s)he did not locate the
discrepancies in the herein matter with DOCCS rules and regulations
so unless John Doe No.12 can product documentation which shows that
(s)he notified defendant Graham and advised him of the corrective action
required and filed an complaint pursuant to DOCCS directive No.2260
when (s)he did not receive notification of compliance within 14 days
than defendant John Doe No.10 actually deprived your Plaintiff of
of an "minimal civilized measure of life's necessities" which is your
Plaintiff's right that to confidentiality white in DOCCS care,
custody and control be upheld. Such deprivation involved the "wanton
and unnecessary infliction of pain" since it is very possible that the
Prosecutor who obtained such contraband may have used such
contraband as an basis to illegally detain your Plaintiff. Such an

PAGE 85

by defendant John Doe No.10 amounted to cruel and unusual punishment an violation of your Plaintiff's eighth amendment right.

168. Defendants Anthony J. Annucci, Joseph Belliner[13] and Stephen Maher subjected your Plaintiff to objectively cruel conditions when your Plaintiff provided them with notice of the misconduct of subordinates in relation to the herein matter from 2.28.16 which amount to "unquestioned and serious deprivation of an basic human need", constituting as a deprivation of the "minimal civilized measure of life's necessitie" which is grossly disproportionate to ordinary incidents in prison life where Prison disciplinary is used to maintain prison order, discipline and safety but, in the herein matter it was used for the purpose of the false arrest and false imprisonment of your Plaintiff. Which involves the "wanton and unnecessary infliction of pain" since such conditions pose an unreasonable risk that your Plaintiff will continue to be illegally detained in DOCCS care, custody and, control where it is an serious risk that your Plaintiff could be subject to the likes of defendant Mitchell and the next time suffer serious injury or very possibly death. There is also an possibility that your Plaintiff could suffered from inadequate medical care that is very common have at Clinton Correctional Facility or, be assaulted by fellow inmates who cut one another with these razor type weapons or gang up on inmates who have no relation to any gangs. Completing 3, 4, or 5 on one assaults. By failing to act such defendants were put on notice of a credible threat of immediate harm to your Plaintiff and did not act on it. For the reason specifically

13. Joseph Belliner is now the former commissioner of DOCCS Correctional

in paragraph 168 defendants Annucci, Bellnier and, Maher acted "cruel and unusual" in violation of your Plaintiff's eighth amendment constitutional right.

169. In totality of the evidence presented in the herein count thus far it is fair to say that with the expectation of defendant John Doe No.9 and possibly defendant Troy Mitchell that all of the defendants in this herein count equally played an significant role in the false imprisonment and false arrest of your Plaintiff since all of such defendants knew of and failed to act on the excessive risk that there colleagues actions (with the expectation of defendant Mr. Vincent who made the ~~earliest~~ initial move of misconduct) would ~~yeild~~ yield to the false arrest and false imprisonment which exposed your Plaintiff to an credible threat of immediate harm that none of the defendants in the herein count acted on so unless any of which defendants not named Mitchell or John Doe No.9 could product substantial evidence that they filed an complaint pursuant to DOCCS directive No.2260 regarding the curruption, fraud and, other forms of misconduct or took some other type of action with the intent of stopping there colleagues than it is fair to say that such defendants activity conspired with there colleagues/or subordinates in administering criminal punishment upon your Plaintiff which is grossly disproportionate to there official duties of maintaining prison order, discipline and, safety and involves the "wanton and unnecessary infliction of pain" and can only be considered "cruel and unusual" punishment in violation of your Facilities.

Eighth amendment constitutional right.

170. For the remainder of the herein count your Plaintiff as an lay man will attempt to make the subjective componect that the "cruel and unusual" Eighth amendment claim requires please excuse me if such componect may be slightly excessive but your Plaintiff is only doing what is necessary to assure that those who violated his constitutional rights are held accountable for there actions.

## (A) SUPERVISORY LIABILITY

171. Defendants Anothony Annucci, Joseph Bellnier, Harold Graham, E. Fagan, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.13, John Doe No.14, Timothy Quinn, Sherri Guzylak, Stephen Maher, Michael Ouimette and, Jeremiah Brooks all are supervising defendants who work or where working for DOCCS at the time of the events in which your Plaintiff wishes to challenge in the herein complaint.

172. Your Plaintiff will submit facts to the Court which will largely go uncontested that all of which defendants are guilty of neither conspiracy, failure to act, creating or allowing unconstitutional policies or customs or deficient management of subordinates. With some supervising defendants being guilty of every single matter in which an supervisor could be "deliberate indifferent!"

## (i) FAILURE TO ACT TO REMEDY WRONGS

173. Defendants Harold Graham, E. Fagan, John Doe No.2 and, Sherri Guzylak initially failed to act to remedy when NYSP Investigator called and informed the administration at ACF that your Plaintiff

would be detained upon his release from DOCCS care, custody and control by members of the NYSP for an alleged incident from 2.28.16 that occurred at ACF.

174. Defendant Harold D. Graham errored when he allowed such seizure to occur even though he never deemed such incident an prosecutorable offense in accordance to DOCCS directive No. 6910, Exhibit "L" which is the menifestion of fundamental Flaw in which legislation delegated to DOCCS the power to make rules and regulations within the boundaries of New York State Legislation. By failing to do so defendant Graham acted arbitrary and capricious depriving your Plaintiff of his protected liberty interest in violation of your plaintiff 14th amendment right to due process of law. Since defendant Graham acted deliberate indifferent.

175. Defendant Graham knew the precise nature of such risk that in accordance to the rules and regulations it is impossible for such information to make it into any NYSP Investigator hands lawfully without his authorization.

176. Instead, defendant Graham failed to take reasonable measures to abate such cruel conditions and, if he did he only took actions that where not adequate given the known risk.

177. Defendant Graham nonetheless maintained an US VS. THEM attitude in regards to such matter. When I say US I mean the entire Department vs. Inmates, parolees and, criminals, with your Plaintiff clearly being apart of the latter group. The Purpose for such approach is to never go against one of your guys for an inmate." If someone gave such documentation or initiated an prosecution against an inmate unlawfully clearly neither they

PAGE 89

did it because the guy actually had such contraband or he's an asshole but regardless of what I am going to cover for my guy." This is what defendant actions state regardless of what his attorney might say.

175. Defendant E. Fagan errored when he allowed defendant Graham to take such approach. His actions actually state that he took the same approach unless he can provide adequate proof that he made an attempt to report defendant's Graham's currpt behavior.

176. Defendant John Doe No.3 acted with deliberate indifference when when John Doe No.11 submitted expunged or soon to be expunged documents manifestly related to maintaining prison order, discipline and safety to the people of the State of New York an job discription specifically for John Doe No:3 who at least received notice of such misconduct when defendants Sherri Guzylak and Keith E. Vincent where subpoena for an criminal proceeding on 3·23·16 with John Doe No:3 being the adequate supervisor that such defendants would have to report to regarding such subpoena.

177. John Doe No:3 knew of the precise risk that such matter was not submitted following an adequate chain-of-custody which left it up to defendant John Doe No:3 to neither report such misconduct or adapt the attitude of his supervisors. With defendant John Doe No:3 clearly taking the latter approach subjecting your Plaintiff to cruel condition specifically not imposed as part of a prisoner's sentence.

178. Defendant John Doe No:3 did not respond reasonably, if at all to the potential risk of your Plaintiff being falsly arrested and falsly

imprisoned and for that reason alone he is deliberately indifferent.

179. Defendant Sherri Guzylak acted recklessly when she did not protect your Plaintiff's confidential information from getting into unauthorized DOCCS officials possession.

180. Defendant Guzylak has the duty to report any DOCCS supervisor othered than defendant Graham or John Doe No.3 giving her an direct order to turn over such confidential material regarding an inmate especially in an unauthorized official wishes to obtain such documentation.

181. Instead defendant Guzylak failed to act regardless to the fact that she willfully turned over such material or rather it was stolen. Neither way she is deliberate indifferent because she possessed knowledge of an serious risk that an unauthorized official may use such material to include cruel condition grossly disproportionate to the sentence that was being served by your Plaintiff. defendant Guzylak failed to respond reasonably to such risk in violation of your Plaintiff's 8th amendment right.

182. Defendants Annucci, Belliner and, Maher specifically failed to act when they were put on notice in May of, 2018 of the misconduct relating to the incident from 2·28·16.

183. All Three defendants (Annucci, Bellnier and, Maher) specifically are the highest ranking DOCCS officials in the herein suit and failed to even attempt to remedy the wrong of subordinates even though they where provided with adequate notice or the cruel conditions that there subordinates placed upon your Plaintiff adapting the attitude of subordinates in regards to the US US. THEM

state of mind that such defendants demostrated.

184. In totality of the evidence submitted under failure to act I believe it to be proper as a matter of law that defendants reply to such argument since your Plaintiff stated forth sufficient evidence that defendants Annucci, Belliner, Graham, Maher, John Doe No.3, Fagan and Guzylak actions where not adequate given the known risk that your Plaintiff was falsly arrested and falsly imprisoned.

(ii) ALLOWING UNCONSTITUTIONAL CUSTOMS

185. Defendant Graham subjected your Plaintiff to cruel and unusual prison conditions while acting under the color of law when he allowed subordinate to ~~develop~~ develop the unconstitutional custom of copying from one page onto another in the course of there investigation such an act does not fulfil such defendants obligation to conduct an adequate investigation and, it also deprived your Plaintiff of his protected liberty interest specifically those of Exhibit "O" section 4, rule 4.16 and section 3, 3.1(a),(b),(c),(d),(e) and (g).

186. Defendant Graham also partook in such misconduct as you can see he signed off on Exhibit "B", the final report but clearly by the testimony given by defendant Vincent under oath in Exhibit "Q", Page 26 13-20 and, Page 28 1-4 never spoke to defendant Vincent.

187. Defendant Graham is deliberately indifferent because he knew that he was subjecting your Plaintiff to the excessive risk that such report was false which violated your Plaintiff's due

PAGE 92

process. It is fair to assume that I am not the only person this has occurred to. However, defendant Graham is liable for the sole reason that he did not set an good example for his subordinates who only followed the lead of there supervisor who allowed them to continue such unconstitutional custom, with him being the ringleader of such conduct.

188. Defendants Fagan, John Doe No.2 and, John Doe No.3 allowed yet another unconstitutional custom when they allowed subordinates to act on there behalf, or failed to follow the law themselves.

189. Defendant Graham is apart of such group since he is the direct supervisor of John Doe No.3.

190. Furtherly, defendant John Doe No.1 was allowed to act on the behalf of John Doe No.3 and defendant Graham when he initiated the case submission process by turning over prison disciplinary documentation which is menifestly related to maintaining prison order, discipline and safety to the People of the state of New York with the intention that the People use such documentation to vindicate public justice imposing sanctions so grossly disproportionate to the sentence being served by your Plaintiff since such prison disciplinary was used to represent the People in the commencement of prison disciplinary with the filing of an accusatory instrument in court.

191. The case submission process is nonetheless solely the job of defendant John Doe No.3 as your plaintiff clearly established in his due process claim the fact that John Doe No.1 felted comfortable with taking such action on the behalf of defendant

John Doe No.3 behalf shows that this was an action that John Doe No.11 was accustomed with taking. By that defendants allowing defendant John Doe No.11 to take such action which deprived your Plaintiff of his protected liberty interest which is Exhibit "L", defendants Graham and John Doe No.3 where "deliberately indifferent" since they knew that by John Doe No.11 taking such risk there was a serious risk that any inmate including your Plaintiff could suffer irreparable damage to your Plaintiff constitutional right since defendant John Doe No.11 was not properly trained to complete such task.

192. Defendants John Doe No.3 and, Harold Graham failed to adequately respond to such risk dispite there knowledge of such substantial risk of serious harm and for such reason alone defendants John Doe No.3 and, Harold Graham deprived your Plaintiff of his "minimal civilized measure of life's necessities" since they failed to adequately train defendant John Doe No.11 and there are several procedural protected liberty interest Exhibit "O" and, Exhibit "L", in which your Plaintiff was deprived of that subjected him to cruel and unusual conditions in violation of his eighth amendment constitutional right.

193. Defendant E. Fagan and, John Doe No.2 are equally responsible for allowing an unconstitutional custom when unknown subordinates preserved the alleged contraband in question several days after it was ordered expunged only to allow Prosecutor Mr. Leeds to enter ACF and illegally detain such contraband depriving your plaintiff of state created

PAGE 94

entitlement specifically created by Exhibit "J", which states that such contraband is suppose to be turned over to the appropriate law enforcement agency.

144. No where in Exhibit "J" does it say that such contraband is to be turned over to an Prosecutor by defendants John Doe No.2 and E. Fagan allowing such seizure to occur they deprived your Plaintiff of his minimal civilized measure of life's necessitie since there is an substantial risk that your Plaintiff was not afforded due process of law and was being illegally detainted and, falsely arrested and imprisoned which are cruel and unusual conditions that defendants John Doe No.2 and E. Fagan must take reasonable steps to abate. By not doing so such defendants deprived your Plaintiff of his reasonable right that expunged DOCCS material not be used to harm your Plaintiff in future litigation. Which violates your Plaintiff's 8th amendment right.

195. Defendant John Doe No.10 also acted deliberately indifferent when css/he when css/he reviewed the file of the disposition of the alleged contraband and did not note or act on the misconduct of John Doe No.2 or E. Fagan and take the proper measures to abate such risk. Purposefully avoid knowledge on defendant John Doe No.10 account also amounts to deliberate indifference since css/he knew of an serious risk that exist and failed to act on such risk despite the knowledge of a substantial risk of serious harm that was served to him or her in an report on January 10th, 2017, that your Plaintiff was being subjected to objectively cruel conditions in violation of his eighth

amendment right.

196. Defendants Annucci, Maher and Bellnier also allowed the unconstitutional custom to continue of C.O. Mr. Mathew Cornell planting contraband on inmates the report Exhibit "F" states that C.O Mr. Cornell admitted to authorities in May of 2015 that he planted contraband on an inmate to break up an prison gang and such inmate was transfered to another facility. So why didn't defendant Maher conduct an investigation into the allegation?

197. Your Plaintiff believe's that evidence supports that defendants Annucci, Maher, Bellnier and Graham knew of such misconduct and only acted as a matter of convenience due to the fact that D.A. Jon E. Budelmann exposed such misconduct after firing an ADA who exposed Mr. Budelmann in Exhibit "P", where such former ADA disclosed the fact that ADA Leeds/Budelmann witheld key evidence in 15 cases.

198. Defendants Annucci, Graham, Bellnier and Maher had to have actual knowledge that it was an risk C.O Cornell would continue such misconduct and might even establish an culture where other C.O.'s would adapt malicious ways.

199. By failing to discipline defendants Graham, Bellnier, Graham and Maher let C.O. Cornell and every other C.O. at ACF know that they accepted C.O. Cornell's misconduct as there own since he continued to "find" contraband on inmates persons at an extremely unusual rate with such defendants

PAGE 96

Failing to respond to the initial unconstitutional conduct of C.O. Cornell in an matter to preventing it from occurring again shows an clear case of "ratification" for such conduct.

200. Such conduct by defendants Annucci, Maher, Graham and, Bellnier shows that they had actual knowledge that they were subjecting your Plaintiff to objectively cruel conditions since all of the inmates who C.O. Mr. Cornell allegedly found such contraband all had an matter of months in some cases weeks to their release and, your Plaintiff had only 10 days to his release when C.O. Vinvent allegedly removed such contraband from your Plaintiff's persons.

201. Proof that such defendants Annucci, Graham, Bellnier and, Maher knew of such risk is seen by the fact that he was the last inmate prosecuted in Cayuga County for allegedly possessing contraband at ACF for approximately three years and to your Plaintiff's belief still counting.

202. Defendants Annucci, Graham, Bellnier and, Maher may not have knew the exact nature of the risk that they subjected your Plaintiff to by allowing defendant C.O. Cornell to work in such facility they knew that a serious risk exists that he may conduct himself in an simuliar matter due to their failure to discipline. It does not matter if other prisoners in your plaintiff's position faced the same risk. The only thing that matters is that defendants Annucci, Graham, Bellnier and, Maher allowed such custom to continue in violation of your Plaintiff eighth amendment right.

203. Defendants Annucci, Graham, Maher, Bellnier, Fagan and Fagan all allowed the unconstitutional custom to continue of defendant Troy Mitchell assaulting inmates for several years at ACF with several settlements between New York State and inmates due to defendant's Mitchell violent nature.

204. By failing to discipline defendant Mitchell defendants Annucci, Graham, Maher, Bellnier, and Fagan allowed defendant Mitchell to continue assaulting inmates in there care, custody and control due to the fact that such defendant adapted the US US THEM attitude therefore accepting defendant Mitchell misconduct as there own even though they all knew that in doing so they were subjecting all inmates at ACF to an excessive risk that they may be defendant's Mitchell next victem. Such defendants Annucci, Graham, Fagan, Bellnier, and Maher knew of the future damage that defendant Mitchell's actions could possibly yeild and still did not take action to such risk but, such defendant did what is easy rather than preventable.

205. By failing to respond to the unconstitutional misconduct of defendant Mitchell defendants Annucci, Graham, Maher, Bellnier and Fagan showed an ratification for such conduct in violation of your Plaintiff's eighth amendment right.


(iii) DEFICIENT MANAGMENT OF SUBORDINATES

206. Supervising defendants Anthony Annucci, Joseph Bellnier, Harold Graham E. Fagan, John Doe No.2, John Doe No.3, John Doe No.13, John Doe No.14

Timothy Quinn, Stephen Maher, Michael Quimette, Jeremiah Brooks and Ray VanGeest allowed subordinates to violate your Plaintiff's constitutional rights as a result of supervisor mismanagement of several subordinates.

207. Defendants Annucci, Belliner and, Maher failed to adequately supervise staff at ACF to make sure that they followed policies by doing so they allowed such subordinate to conduct themselves like an confederation making up their own rules as they went along violating several of your Plaintiff's constitutional rights when DOCCS explicitly has directives set in place to avoid such misconduct from ever occuring if properly followed.

208. By defendants Annucci, Belliner and, Maher failing to adequately supervise subordinates at such facility they are deliberately indifferent because such defendant disregarded an excessive risk to your Plaintiffs health and safety by failing to supervise subordinates at ACF subjecting your Plaintiff to objectively cruel conditions.

209. Defendants Annucci, Belliner and Maher knew that they were subjecting your Plaintiff to an serious risk and cruel conditions by not adequately supervising but, clearly gave an higher priority than prisoner's basic human needs by granting subordinates as much latitute as possible.

210. Defendants Annucci, Belliner and, Maher acting under the color of state law knew of a serious harm to prisoner's future & safety by allowing by granting such latitute to subordinates but choose to do what is easy rather than preventable which is

PAGE 99

your Plaintiff was deprived of several protected state created liberties without due process of law specifically those of Exhibits "I. ~~through~~ through O", without and red flags going off which is proof that such defendants subjected your Plaintiff to an excessive risk of harm and other unconstitutional conditions because ~~they~~ failed to ~~Data~~ adequately supervise. Which violates your Plaintiff's eighth amendment right.

211. Defendants Graham E. Fagan, John Doe No.2, John Doe No.3, John Doe No.13, John Doe No.14, Michael Quimette, Jeremiah Brook and Ray Vanfleet Failed to properly inform and train staff on policies designed to avoid violations of constitutional rights.

212. Defendant Vanfleet Failed to inform defendants John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, Sweet and Ashby that since they were actually present at the time and place DOCCS directive No.4932, Exhibit "I", section 251-3.1(b) states that such defendant should had written seperate reports at minimal endorsed the alleged misbehavior report. By failing to do so defendant Vanfleet Failed to uphold his official duties since it is very practical that the words in Exhibit "O", 3.1(g), "reviewing such reports...and taking the appropriate and necessary actions to ensure the accuracy of such report" means conducting an investigation. Since even if defendant Vincent told him he search your Plaintiff in front of his cell. ACF policy states that there is not an authorized procedure where that would occur since for

keeplock recreation purposes it is an two man team, when an inmate is search in front of his cell, so where is the other C.O.?

213. Defendant VanFleet knew that defendant Vincent was lying and he disregarded the excessive risk to your Plaintiff mental wealth and the fact that your Plaintiff could possibly be falsly arrested and falsly imprisoned which amounts to the unnecessary and wanton infliction of pain by simply doing what was easy by copying what was on writing what defendant Vincent told him without conducting an investigation he may have even helped him construct such story to keep the other defendants who were present name "out of it" because clearly they wanted no part of such distastful conduct. Your Plaintiff see's such defendants on an daily basis is alway respectful and never gave them any problems whatsoever defendant VanFleet knew of such cruel conditions and failed to take reasonable measures and is deliberately indiffent in doing so in violation of your Plaintiff's eighth amendment right.

214. Defendants Graham, Fagan, Michael Quinette, Quinn and Brooks all are guilty for the same reasons they failed to inquire about the accuracy of such reports that they signed off on as being truthful with all of such defendants subjecting your Plaintiff to unnecessary and unwanted pain which deprived your Plaintiff of protected liberty interest subjecting him to cruel conditions which lead to the false arrest and

false imprisonment of your Plaintiff in violation of his eighth amendment right since such training was so grossly negligent that future misconduct was inevitable in the here matter.

216. Defendant John Doe No.3 and, Graham failed to properly train defendant John Doe No.11 who deprived your Plaintiff of his protected liberty interest and subjected your Plaintiff to double jeopardy when he turned over prison disciplinary to prosecutor Leeds who use such prison disciplinary to commence an criminal action against your Plaintiff by using such prison disciplinary to represent them in an criminal felony complaint.

217. Such training was so reckless that future misconduct was inevitable since defendant John Doe No.11 is not authorized to take such action on the behalf of defendant John Doe No.3 and, Graham. Who both acted deliberately indifferent because defendant John Doe No.11 actions became clear to them at some and time prior to your Plaintiff's conviction and and they took no reasonable measures to abate it, which are actions not adequate given the known risk of your Plaintiff's basis human need not to be restraint of movement, which is adequate proof that such defendants John Doe No.3 and Graham deprivate your Plaintiff of his eighth amendment right.

218. Defendants Fagen, John Doe No.2 and, John Doe No.14 failed to properly train subordinates on the policy/directive No. 4910A, Exhibit "J", and subordinates deprived your plaintiff of his 4th amendment right when such subordinates allowed prosecutor Leeds to remove contraband from an sea secure evidence

locker illegally seizing such contraband since Exhibit "J", makes it clear that the seizure of such contraband is suppose to be done by an law enforcement official Prosecutor Leeds clearly is not such in addition to such claim your Plaintiff was no longer in DOCCS care, custody and control but rather an pre-trial detainee with all references to such contraband being illegally obtained after 3-9-16 which is the day that such matter was clearly administratively expunged an final determination on the merits.

219. The fact that subordinates were not aware of such is proof that the training that was given to subordinates was so glossly disproportiate to DOCCS directive No 4910A, Exhibit "J" that future misconduct was inevitable.

220. Defendants Fagan, John Doe No.2 and John Doe No.14 where deliberately indifferent for giving such training since there was an substantial risk that such seizure would be used to restaint your Plaintiff's movement in violation of his eighth amendment right due to the cruel intent of such defendants,

(B) BREACH OF DUTY TO PROTECT

221. Defendants John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, and John Doe No.8, Nate Sweet and Kevin Ashby failed to act reasonably to protect your Plaintiff from the evil and malicious action of defendant Vincent.

222. Such defendants knew that an substantial risk exist that

your Plaintiff would be illegally confined or unlawfully restaint of movement. By such defendants acting in the matter that they did because there actions were not adequate given the known risk.

222. Instead of making an attempt to stop defendant Vincent defendants John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, John Doe No.8, Nate Sweet and, Kevin Ashby gave inconsequential logistical concerns that amount to an mere matter of convenience by allowing defendant Vincent to make up an story as if he was the only person present when the alleged incident transpired so that the other present parties would not to lie or answer any question whatsoever about the alleged incident. As if to say that they did not support the actions of defendant Vincent but, they would not take the proper steps to & stop him from taking such action giving an higher priority to defendant Vincent malicious actions than your Plaintiff's basic need to be kept reasonably safe from such misconduct. For such reason alone and in combination such defendant subjected your Plaintiff to objectively cruel conditions in violation of his eighth amendment right.

224. Defendant John Doe No.9 on the date of February 29th, 2019, failed to keep your Plaintiff reasonably safe for the assault that he took at the hands of defendant Troy Mitchell when defendant Mitchell applied excessive force, with only him and defendant John Doe No.9 being the only correctional staff present it would have been very easy for defendant

PAGE 104

John Doe No.9 to stop defendant Mitchell from punching, kicking, kneeing, choking, slapping and, body slamming your Plaintiff without any provocation. Instead John Doe No.9 did not even attempt to stop defendant Mitchells assault and is deliberately indifferent for doing so

225. Defendant John Doe No.9 knew the precise ~~and~~ nature of the risk that failing to even attempt to stop defendant Mitchell posed to your Plaintiff. Your Plaintiff could have easily suffered an serious medical injury or even been murdered which is an expectionally cruel condition that defendant John Doe No.9 should have taken an reasonable measure to abate by failing to act he became liable because his actions were not adequate given the known risk. Such harm was easily preventable even though defendant John Doe No.9 did not want to seem as if he was siding with an inmate over an ~~colleague~~ colleague he still has an obligation to attempt to prevent all inmates from being subject to such cruel conditions by failing to do so he deprived your Plaintiff of his eighth amendment right.


(C) EXCESSIVE USE OF FORCE

226. Defendant Troy Mitchell maliciously and sadistically assaulted your Plaintiff on 2.29.16 and such assault was not justified by any legitimate DOCCS management need but, if defendant Mitchell wishes to use the defense that they needed to obtain the dinner tray that your Plaintiff refused to give back your Plaintiff would like to contest

such future claim by stating that punching, kicking, stepping on your Plaintiff's face, kneeing, choking, body slamming and, slapping your Plaintiff in the face was completely out of proportion to that need.

227. Though, your Plaintiff did not suffer from 'permanent or severe' physical injury. The amount of force used by defendant Mitchell was still unreasonable and excessive and, without any provocation.

228. Defendant Mitchell gratuitously beat your Plaintiff and knew that it was an serious risk that your Plaintiff could have suffered an serious injury and such serious risk and, the cruel condition of excessive force make defendant Mitchell liable for violating your Plaintiff's eighth amendment right.

(D) CONSPIRACY TO INTERFERE WITH CIVIL RIGHT ALSO CONSIDERED CRUEL AND UNUSUAL PUNISHMENT

229. First and farmost defendant John Doe No.11 "initiated" a prosecution against your Plaintiff by turning over DOCCS prison disciplinary documentation to the People of the State of New York specifically Cayuga County former ADA Mr. Brian Leeds, esq, for several reasons (1) the defendant John Doe No.11 did not disseminate Information in regards to the incident 2-28-16 from DOCCS files in accordance with established DOCCS rules, regulations and directives specifically depriving your Plaintiff of his procedural protected liberty interests (Exhibit "O", section 4, 4.15 and, Exhibit "L", page 3 section)

(2) such prison disciplinary documentation in New York State are civil in nature with the only purpose of maintaining prison order, discipline and, safety. With all DOCCS employees and, documentation being in privity with such civil goals and, (3) by defendant John Doe No.11 turning over such documentation to ADA Brian T. Leeds, esq., an state actor defendant John Doe No.11 played an active role in the criminal prosecution since he importuned ADA Mr. Brian T. Leeds to act since the People of the state of New York goal is to vindicate public justice it is only pratical to assume that the sole purpose for defendant's John Doe No.11 dissemination of such civil documentation to the People of the State of New York was to transform an civil reomedy into an criminal punishment. Imposing sanctions so grossly disproportionate to the sentence being served by your Plaintiff which amounts to the "unnecessary and wanton infliction of pain" Exposing defendant John Doe No.11 culpable state of mind which deprived your Plaintiff of his eighth amendment right.

230. I am very much eager to see who John Doe No.11 is but, I believe the reason that defendant Mr. Keith E. Vincent wrote such false report against your Plaintiff due to the fact that he had an case pending in Auburn City court were he allegedly got into an fist fight with an NYSP Trooper which explains how NYSP Investigator Mr. Brett E. Stover knew defendant's Vincent date of birth when none of the information that defendant John Doe No.11 provided ADA Mr. Leeds possessed such information

there is no other sufficient reason that NYSP Inv. Stover could have gotten such information unless he knows defendant Vincent from some other place.

231. Nonetheless your Plaintiff believes that it is an real possibility that defendant Vincent is John Doe No.11 and such false allegations only arose due to some type of side agreement between defendant Vincent and former ADA Leeds who was the acting DA in most city court cases at such time. With that said Section 74 of The New York State Public Officers Law and, Exhibit "O" section 4, 4.15 equally state:

> "No officer or employee of a State agency should disclose confidential information acquired by him in the course of his official duties nor use such information to further his personal interest." Violations of such law are punishable by fines, suspension, or discharge.

232. Though state law has no bearing in the herein matter such law provides your Plaintiff an protected procedural liberty ~~interest~~ interest in which he was deprived of. Since defendant ~~and~~ Vincent and, ADA Leeds clearly had an line of communication since on 3.15.16 he stated that he never talked to an supervisor in regards to the matter ~~of~~ from 2.28.16 which means that he was not subpoenaed to appear at the felony hearing or he was and, deprived your Plaintiff of another protected liberty interest specifically Exhibit "O" ~~Section 2~~ 2.4 by not letting his supervisor know of such subpoena in connection with work, therefore exposing his

culpable state of mind which deprived your Plaintiff of his 8th amendment right.

233. Defendants Graham, Annucci, Maher, Fagan, Bellmer, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.12, John Doe No.13 and Mrs. SherriGuzylak demonstrated through their explicit actions that as representives of New York State DOCCS an civil agency that such defendants were willing to take actions so grossly disproportionate to the civil duties that such agency affords them by becoming an actor of the State and engaging in an conspiracy with defendant John Doe No.11 who became an State actor the moment he turned over prison disciplinary documentation to Prosecutor Leeds and Mr. Leed directed NYSP inv. Mr. Stover to copy what was on Exhibit "B", onto Exhibit "C", the felony complaint with the supporting deposition being an DOCCS prison disciplinary document namely an To And From memorandum (From: defendant Vincent to: defendant VanSheet) with Prosecutor Leeds able to obtain an warrant for your Plaintiff's arrest based off of an initiation of defendant John Doe No.11 who by merely turning over such documentation to Prosecutor Leeds deprived your Plaintiff of his protected liberty interest and, disregarded the DOCCS binding effect by becoming a agent for the State in there quest to vindicate public justice when the agency of DOCCS represents the prison disciplinary proceeding which is related to the seperate and important public interest in maintaining prison order, discipline and, safety.

234. Clearly, defendant John Doe No.11 explained to Prosecutor Leeds that your Plaintiff would not be restaint of movement the following morning and encouraged him to hurry up and do

any and everything that he could to assure that that would not occur, constituting as encouragement importuning Prosecutor Leeds to act.

235. Defendants Graham, Annucci, Maher, Fagan, Guzylak, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.12, and John Doe No.13 and Belliner all agreed with defendant John Doe's No.11 actions when none of them reported any information concerning the corrupt, fraudulent, criminal misconduct of defendant John Doe No.11 as they are obligated to do pursuant to DOCCS directive No. 2260 and by failing to do so they deprived your Plaintiff of his eighth amendment right.

236. Defendants Annucci, Graham, Maher, Fagan, Guzylak, Belliner, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.12 and John Doe No.13 all concerted acts with the intent to inflict further unconstitutional injury to your Plaintiff. Specifically defendants Graham, Fagan, Guzylak, John Doe No.2, John Doe No.3, and John Doe No.13 by preserving expunged material, receiving notice on subordinates subpoenas in relation to such matter without taking note to DOCCS rules, regulations and directives, giving and receiving orders in relation to such matter and, allowing Prosecutor Leeds the authority to enter Auburn Correctional Facility when DOCCS directive No. 4910A, specifically states that such an act is strickly reserved for the appropriate police agency/investigator.

237. Defendant John Doe No.12 specifically converted an act with the intent to inflict unconstitutional injury when he turned

over Exhibit "E" to prosecutor Leeds while your Plaintiff was in the mist of trial.

238. Defendant John Doe No.10 concerted an action to inflict unconstitutional injury a which was also an overt act in furtherance of the goals of John Doe No.11 when (s)he was provided note on January 10th, 2017, of the matter in which the alleged contraband was disposed of and failed to advise the Superintendent defendant Graham of the corrective action required and assure that it was taken or file an complaint pursuant to DOCCS directive No. 2260.

239. Defendants Annucci, Maher and, Belliner also concerted an act to inflict unconstitutional injury upon your Plaintiff which was also an overt act in furtherance of the goals of defendant John Doe No.11 when your Plaintiff provided them with notice of such misconduct and, the simply removed the U.I. No. from your Plaintiff's institutional record but kept such report on your Plaintiff's record even though such incident had been or should have been administratively expunged on the 9th day of March, 2016, which should have been administrative finality.

240. Your Plaintiff has expressed explicitally throughout the herein complaint how wrong each and every person in the herein conspiracy concerted acts to inflict further unconstitutional injury to your falsly imprisoned Plaintiff and what I am saying is that your Plaintiff has submitted legally sufficient evidence that such actions by defendants

Annucci, Belliner, Maher, Fagan, Guzylak, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.12, John Doe No.13, and Vincent and Graham were all overt acts in furtherance of the goals of defendant John Doe No.11 of having your Plaintiff who would otherwise be an free citizen with free restaint of movement, subject to an false arrest and false imprisonment which imposed atypical and significant hardship upon your Plaintiff in relation to ordinary incidents of prison life.

242. Such defendants in the herein conspiracy claim acted "maliciously and sadistically" with the pure intent of causing your Plaintiff harm in violation of your Plaintiff's eighth amendment right.

## (E) DAMAGES

243. Defendant Mr. Anthony J. Annucci for his alleged misconduct in count two shall be responsible for paying your Plaintiff 500 thousand dollars in compenstory damages and, 50 millions in punitive damages.

244. Defendant Mr. Joseph Belliner for his misconduct in count two shall be responsible for paying your Plaintiff 400 thousand dollars in compensatory damages and, 45 million in punitive damages

245. Defendant Stephen Maher for his misconduct in the herein count shall be held responsible for paying your Plaintiff 500 thousand dollars in compensatory damages and 50 million dollars in punitive damages.

246. Defendant Harold Graham for his misconduct in the herein count shall

be held responsible for paying your Plaintiff 500 thousand in compensatory damages and, 50 million dollars in punitive damages,

247. Defendant E. Fagan for his misconduct in the herein count shall be held responsible for paying your Plaintiff 400 thousand in compensatory damages and, 35 million in punitive damages,

248. Defendant John Doe No.2 for his misconduct in count two shall be held responsible for paying your Plaintiff 250 thousand in compensatory damages and, 20 Million dollars in punitive damages.

249. Defendant John Doe No.3 for his misconduct in count two shall be held liable by paying your Plaintiff 250 thousand in compensatory damages and 20 million in punitive damages,

250. Defendant Keith E. Vincent for his misconduct in the herein count shall be held liable for paying your Plaintiff 500 thousand in compensatory damage and, 50 million dollars in punitive damages,

251. Defendants Nate Sweet, Kevin Ashby, John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7 and, John Doe No.8 shall equally be held liable for their actions in the herein count by paying your Plaintiff 500 thousand dollars in compensatory damages and, 10 million dollars in punitive damages.

252. Defendant Troy Mitchell for his misconduct in the herein count shall be held liable for paying your Plaintiff 50 thousand in compensatory damages and, 1 Million in punitive damages,

253. Defendant John Doe No.9 shall be held liable for his action in the herein suit by paying your Plaintiff 20 thousand in punitive damages,

254. Defendant John Doe No.10 shall be held liable for his actions in count two by paying your Plaintiff 150 thousand in compensatory damages

and, 10 million dollars in punitive damages.

255. Defendant John Doe No.11 shall be held liable for his actions in count two by paying Plaintiff 1 million dollars in compensatory damages and, 100 million in punitive damages.

256. Defendant John Doe No.12 shall be held liable for his actions in the herein count by paying your Plaintiff 350 thousand dollars in compensatory damages and, 20 million dollars in punitive damages.

257. Defendant John Doe No.13 shall be held liable for his acts in count two by paying your Plaintiff 150 thousand in compensatory damages and, 1 million in punitive damages.

258. Defendants Jeremiah Brooks, Timothy Quinn and, Michael Quirrette shall be liable for their actions in count two by paying your Plaintiff an total of 300 thousand dollars in compensatory damages and, 10 million dollars in punitive damages.

259. Defendant Sherri Guzylak for her actions in count two shall be liable for paying your Plaintiff 350 thousand dollars in compensatory damages and, 2 million dollars in punitive damages.

WHEREFORE, Your Plaintiff is suing those defendants named under Damages of count two for depriving your Plaintiff of his eighth amendment right while acting under the color of ~~state~~ law to subject your Plaintiff to cruel and unusual punishment/conditions. Your Plaintiff is suing such defendants in their individual capacities.

COUNT THREE: RETAIL TORT TREATMENT FOR FILING GRIEVANCES

(A) John Doe No.11 turned over such prison disciplinary documents to Prosecutor Mr. Leeds in retaliation for an grievance that filed by your Plaintiff in regards to the assault that defendant Mitchell administered upon your Plaintiff on the 29th day of February, 2016.

260. On or about the 6th day of March, 2019, your Plaintiff filed an grievance at Auburn Correctional Facility in regards to the assault that he took at the hands of defendant Mitchell in which he – your Plaintiff had an First amendment right to do.

261. In retaliation for your Plaintiff filing such grievance and exercising his First amendment right, Defendant John Doe No.11 while acting under the color of law started gathering prison disciplinary documentation in relation to the incident which occurred on the 28th day of February, 2016, on the 7th day of March, 2016, as Exhibit "Q", indicates which was printed on such date. –

262. Then defendant John Doe No.11 turned over such prison documents to Prosecutor Mr. Leeds, an outside party in an matter which did not accord DOCCS rules, regulations and, directives depriving your Plaintiff of his protected liberty interests specifically those of Exhibit "L" and, Exhibit "O", 2.1, 2.2, 2.8, 2.9, 4.2, 4.5, 4.7, 4.8, 4.9, and 4.15.

263. The date that defendant John Doe No.11 turned over such documentation to the Former Cayuga County ADA Mr. Leeds was around the 7th or 8th day of March, 2016, and as your

PAGE 115

Plaintiff established in count two, section D by defendant John Doe No.11 taking such action he became an actor of the State.

264. By defendants Annucci, Belliner, Maher, Graham, Fagan, Gwzylak, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.12 and, John Doe No.13 taking the actions specifically those in count one and, two they showed an ratification for the misconduct of defendant John Doe No.11. Therefore, such defendants are just as liable as defendant John Doe No.11 for violating your Plaintiff's first amendment right for retaliatory treatment because your Plaintiff wrote an grievance, exercising his first amendment right which such defendants deprived your Plaintiff of.

(B) Defendant C.O. Mrs. Wade of Cayuga County Jail wrote an misbehavior report in retaliation for your Plaintiff writing and ultimately winning an grievance against her in relation to the incident dated 8·24·16

265. Your Plaintiff has an first amendment right to the speech which he expressed through writing an grievance in relation to the incident from 8·24·16 filing such grievance at Cayuga county jail.

266. Defendant C.O. Wade waited approxamately two and one half months later and retaliated against your Plaintiff by writing him an false misbehavior report for allegedly attempting to block her view of two inmates in an cell fighting.

267. Your Plaintiff was unaware that such inmates were about to

fight and, went to the C.O.'s bubble to ask defendant C.O. Wade an legitimate question in relation to ordinary incidents which occurrs at Cayuga County Jail.

266. Approxamately, one week later your Plaintiff received an misbehavior report which stated that your Plaintiff made an attempt to obstruct defendant's Wade view of a fight. Which was totally false.

267. At the disciplinary hearing in relation to such false charge the hearing officer presented your Plaintiff an complete disciplinary sanction sheet which stated which stated that your Plaintiff plead guilty and, your Plaintiff refused to sign such document and received 45 days of confinement.

268. Defendant Wade only wrote such false misbehavior report because your Plaintiff won a grievance against her and this was her chance to "pay" your Plaintiff back.


(C) DAMAGES

269. Defendant John Doe No.11 for his actions in count three shall be held liable for paying your Plaintiff 500 Thousand dollars in compensatory damages and, 50 million dollars in punitive damages.

270. Defendants Annucci, Bellnier, Maher, Graham, Fagan, Guzylak, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.12, and John Doe No.13 for their actions in the herein count shall equally be held liable for paying your Plaintiff 1.5 million dollars in compensatory damages and 75 million dollars in punitive damages.

271. Defendant Wade shall be held liable for her misconduct in the

herein complaint by paying your Plaintiff 20 thousand dollars in compensatory damages and 100 thousand in punitive damages. WHEREFORE, Your Plaintiff is suing those defendants named under Damages of count three for depriving your Plaintiff of his first amendment right of freedom of speech while acting under the color of law to administer retaliatort treatment against your Plaintiff because he filed grievances.

COUNT FOUR: Defendants Anothony Annucci, Joseph Bellinter, Stephen Maher, Harold Graham, E. Fagan, John Doe No.2, John Doe No.3, John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, John Doe No.8, John Doe No.9, John Doe No.10, John Doe No.11, John Doe No.12, John Doe No.13, John Doe No.14, Troy Mitchell, Keith E. Vinvent, Nate Sweet, Kevin Ashby, Ray Vanfleet, Timothy Quinn, Sherri Gueylak, Jeremiah Brooks, and Michael Quimette singled your Plaintiff out while acting under the color of law and took all of the actions specify those in count one, two and three of the herein complaint because of your Plaintiff's race and age, appearent mental health illness, and status as an prisoner who is an "poor person" and lay to the law which, deprived your Plaintiff of his fourteenth amendment right which guarantees all persons in this country have equal protection of the law.

(A) Defendants Annucci, Belliner, Mahter, Guzylak, Graham, Fagan, John Doe No.2, John Doe No.3, John Doe No.10, John Doe No.11, John Doe No.12 and John Doe No.13 selectively enforced confederation like rules and regulations upon your Plaintiff

272. There is no proof that what your Plaintiff has stated throughout the herein complaint specifically the allegations in count one, two, and three relating the defendants in the herein count and section has ever applied to another prisoner since confederations were outlawed over 100 hundred years ago but, there is substantial proof that such defendants enforced such confederation like rule and, regulations wit an "unequal hand" and "evil eye!"

(i) UNEQUAL HAND

273. Your Plaintiff was treated differently than any other inmate in New York state resent history in DOCCS care, custody and, control. There is no proof and, I am pretty sure that the defendants are willing to state forth evidence that your Plaintiff is the only person to ever be treated in the matter that they treated him.

274. Nonetheless, your Plaintiff was housed in the mental health unit, he's young, black and, poor. It seems as if with respect to Exhibits "F and G", that the defendants in the herein section specifically targeted your Plaintiff and deprived him of every right to life, liberty and, property without due process that it took to assure that your Plaintiff would be in the worst possible position.

275. Specifically, all the defendants in the herein count and, section with the exception of defendant John Doe No.11 applied every rule which they possibly could have upon your Plaintiff and broke every rule that had to be broken to protect defendant John Doe No.11 despite the fact that they were breaking several of your Plaintiff constitutional rights.

276. As far as your Plaintiff can tell this is specifically an group of white people who happen to work for N.Y.S. DOCCS who targeted Black and latino inmates who were soon to be released from their care, custody and, control since they knew of the misconduct of ACF C.O. Mathew Cornell and allowed an culture to menifest from May 2015 to December 2016 were subordinates felted it was okay with the Administration at ACF if inmates had contraband planted on them by C.O.'s at ACF since no disciplinary action would be placed upon them just as no disciplinary action applied to C.O. Cornell into an outside party exposed such allegations.

277. The US vs. THEM attitude that the defendants in the herein section displayed an unequal hand in applying the rules and regulation that governs DOCCS. They where willing to allow and enforce and, make up false rules to protect colleagues and, punish your Plaintiff when your Plaintiff would not be able to file the herein complaint if such defendants simply followed

PAGE 120

delegated upon DOCCS.

(ii) EVIL EYE

278. The defendants in the herein section did not care that black and latino inmates who were soon to be released from DOCCS care, custody and control kept getting caught by the same C.O. who they already knew planted contraband on another inmate, with contraband they devloped an culture which can only be considered them displaying an evil eye by them enforcing the DOCCS rules and regulations upon black and latino inmates but not white inmates or colleagues.

279. The other inmates who claimed to have been set were young, black or latino, and soon to be release. Your Plaintiff was young, black, lay to the law and, with an appearent mental health problem which is why such defendants deliberately applied confederation like law upon your Plaintiff with the sole purpose of causing your Plaintiff irreparable damage to his life.

(B) Defendants John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, John Doe No.8, Jeremiah Brooks, Kevin Ashby, Nate Sweet, Timothy Quinn, and Ray Vanfleet unconstitutionally enforced DOCCS rules and regulations upon your Plaintiff.

280. Such defendants specifically in the herein section are

either responsible for allowing defendant Vincent the latitute to plant contraband on your Plaintiff.

## (i) UNEQUAL HAND

281. Defendants John Doe <u>No.4</u>, John Doe <u>No.5</u>, John Doe <u>No.6</u>, John Doe <u>No.7</u>, John Doe <u>No.8</u>, Nate Sweet and, Kevin Ashby were present when defendant Vincent handcuffed your Plaintiff and defendants Vincent and Sweet esorted your Plaintiff to SHU. Nonetheless, such defendants unequally applied DOCCS rules and regulations upon your Plaintiff as to opposite to defendant Vincent.

282. First, such defendants allowed such misconduct to occur than they refused to write seperate reports or sign to report written by defendant Vincent.

283. By taking such action such defendants allowed defendant Vincent's word to be the only word in which your Plaintiff could challenge therefore removing thurselves from the situation and, taking the conservative "whatever he said" approuch. Just so they could be left out of such misconduct.

284. Which is unequal to your Plaintiff because he enjoyed no benefit from such approuch and defendant Vincent was allowed to make up his story as he went.

285. Defendants Graham, Fagan, Brooks, Quinn and VanVleet also applied an unequal hand in applying DOCCS rules and regulation when they wrote, received and pass along as

PAGE 122

true investigative reports without actually conducting any investigation again giving defendant Vincent all the benefit and room to write further false reports.

## (ii) EVIL EYE

286. There is no proof that the defendants in the herein section ever applied such confederation like rule to and white inmate and your Plaintiff believe's that he was singled out because he is young and black.

## (C) Defendants Vincent, John Doe No.11 and Mitchell singled your Plaintiff out because he was young and black

287. The is no proof that defendant Mitchell ever assaulted any other inmate but, an black or latino inmate, which your Plaintiff is aware of, Nonetheless such actions by defendant Mitchell was direct proof that defendant Mitchell singled your Plaintiff out especially since he appeared to have an mental health problem for arbitrary and irrational treatment. The same could be said about defendant John Doe No.11.

288. Defendant Vincent is really no different he targeted your Plaintiff because he is young, black and, he knows that an high number of inmates who had contraband planted on them plead guilty Exhibit "F" and "G" nonetheless such conduct by defendant Vincent was arbitrary and irrational.

PAGE 123

## (D) DAMAGES

289. Defendant Anthony J. Annucci for his actions in the herein count shall be held liable by paying your Plaintiff 250 Thousand dollars in compensatory damages and 2 million dollars in punitive damage.

290. Defendant Joseph Bellimer for his actions in count two shall be held liable by paying your plaintiff 150 thousand dollars in compensatory damages and, 1.5 million dollars in punitive damages.

291. Defendant Stephen Maher for his actions in count two shall be held liable by paying Plaintiff 150 thousand dollars in compensatory damages and, 1.5 million dollars in punitive damages.

292. Defendant Graham for his actions in count two shall be held liable by paying Plaintiff 150 thousand dollars in compensatory damages and, 1.5 million dollars in punitive damages.

293. Defendants Nate Sweet, Kevin Ashby, John Doe No.4, John Doe No.5, John Doe No.6, John Doe No.7, John Doe No.8, Jeremiah Brooks, Timothy Quinn, and Ray Vanfleet for their actions in count two by paying your Plaintiff 200 thousand dollars in compensatory damages and 1 million dollars in punitive damages.

294. Defendant Michael Ouimette for his actions in count four shall be held liable for his actions against Plaintiff by paying him 25 Thousands dollars in compensatory damages and 90 thousand dollars in punitive damages.

295. Defendant Troy Mitchell for his actions in count four shall be held liable for his action in the herein count by paying Plaintiff 100

PAGE 124

Thousand dollars in compensatory damages and, 1 million dollars in punitive damages.

296. Defendant Keith E. Vincent shall be held liable for his actions in the herein count by paying your Plaintiff 1 million dollars in compensatory damages and, 100 million dollars in punitive damages.

297. Defendant John Doe No. 11 shall be held liable for his actions in the herein count by paying Plaintiff 10 million dollars in compensatory damages and 150 million dollars in punitive damages.

298. Defendants John Doe No. 2, John Doe No. 10, John Doe No. 13, John Doe No. 12 and E. Fagan shall equally bare the burden of paying your Plaintiff 500 thousand in compensatory damages and 50 Million in punitive damages.

299. Defendant Sherri Guzylak shall be held liable for her actions in the herein count by paying him—your Plaintiff 50 thousand dollars in compensatory ~~dollars~~ damages.

WHEREFORE, Your Plaintiff holds those named under damages in the herein count responsible for depriving him of his fourteenth amendment constitutional right which protects all persons in this country assuring that we all enjoy the same equal protection of all laws.

Count Five"" INJUNCTIONS SOUGHT

(A) THE PLACEMENT OF CAMERAS IN ALL DOCCS FACILITIES

PAGE 125

300. By placing cameras in every DOCCS Correctional Facility it protects your Plaintiff from the likes of defendant Mitchell and defendant Vincent.

301. Your Plaintiff is in Clinton Correctional Facility and every since cameras have been placed in the herein facility their has not been one incident were an Prisoner was able to make an claim simuliar to the one that your Plaintiff has made about such defendants because every thing is on camera.

302. Prior to the herein facility getting cameras for years inmates have placed several suits in the herein court about the physical abuse that they received at the hands of staff acting under the color of law in the herein facility.

303. If your Plaintiff happens to be sented to another facility it is an strong possibility that he could be subjected to the same physical abuse that became an culture here a CCF into the cameras were placed in.

304. Prisoner are being maliciously and sadistically beaten by DOCCS employees in every facility that does not have cameras and as long as Plaintiff is in DOCCS care, custody and, control it is an strong possibility that he can be transfered to one of such facilities.

WHEREFORE, Plaintiff prays for a Judgment in his fave and other and further relief as this court may deem proper

and just.

J'Kedric J. Ogee

Respectfully

Mr. J'kendric J. Ogee

J'Kendric J. Agee

Pro Se Plaintiff

Clinton Correctional Facility

P.O. Box 2001

Dannemora, N.Y, 12929

Sworn to before me on the 6th

day of June                ) 2019

Mark J Wd   )

Mark J. Wilson
Notary Public, State of New York
No. 01WI6354425
Qualified in Clinton County
Commission Expires 02/06/2021