# EXHIBIT

# X

Keith Vincent - by Mr. Leeds                    4

1                    K E I T H   V I N C E N T

2         having been first duly sworn by the Foreperson,

3         was examined and testified as follows:

4    EXAMINATION

5    BY MR. LEEDS:

6         Q.      Good afternoon.  Can you state your name,

7    please?

8         A.      Officer Keith Vincent.

9         Q.      Where do you work?

10        A.      Auburn Correctional Facility.

11        Q.      What kind of work do you do for Auburn

12   Correctional Facility?

13        A.      I'm a correctional officer in general

14   population.

15        Q.      And how long have you been a corrections

16   officer at Auburn?

17        A.      I have been at Auburn a little over 11

18   years.

19        Q.      What level security is Auburn Correctional

20   F cility?

21        A.      It's a maximum security prison.

22        Q.      I want to take you back now to February

23   28th, 2016 and an incident involving Jkendrick Agee.  Do

24   you, first off, recall this incident?

25        A.      I do.

Keith Vincent - by Mr. Leeds                    5

 1          Q.      Do you recall if you were working on
 2   February 28th, 2016?
 3          A.      Yes, I was working.
 4          Q.      The grand jury here is investigating
 5   Mr. Agee for the offense at the prison, and I want you
 6   to tell us a little bit about how you're involved in
 7   this case.  Where were you working just prior to
 8   becoming involved with Mr. Agee?
 9          A.      I was working in D block.
10          Q.      What is D block in relation to the prison
11   itself?
12          A.      It is a general housing block.
13          Q.      What kind of job did you have on D block at
14   that point?
15          A.      I was the third officer I think in the
16   block.
17          Q.      What does that mean?
18          A.      We have a first officer that runs the desk,
19   and we have two other officers, a second officer and
20   third officer.  We do primarily all the rounds in the
21   block, let in, let out for chow runs, yard runs, that
22   kind of stuff, kind of general running of the block is
23   what we do every day.
24          Q.      Was Jkendrick Agee an inmate at the prison
25   at the time?

Keith Vincent - by Mr. Leeds          6

1      A.      Yes, he was.

2      Q.      And he was in one of those blocks or a cell

3  that you were responsible for?

4      A.      Yes, he was.

5      Q.      Explain a little bit about what happened

6  that led to the incident and the unusual report --

7  unusual incident report with Mr. Agee?

8      A.      We were running keep lock recreation at the

9  time.  During that period that is when an inmate is

10 actually confined to the cell.  He comes out of the cell

11 for one hour of recreation for the day.  He's confined

12 to the cell for some sort of a disciplinary reason.

13     Q.      And that's what keep lock is essentially?

14     A.      Right.

15     Q.      They have to be locked in, but they're

16 allowed to go out for one hour of recreation?

17     A.      Yes.

18     Q.      Continue.

19     A.      Upon that, when we go to the cells, there's

20 two officers that go in front of the cells.  They got

21 the cell open, they bring the inmate, they pat frisk the

22 inmate.  I work on the front side of the company.  As

23 the inmate comes off, after that then we proceed to use

24 a metal detector, a wand, wand the inmate to make sure

25 that there wasn't anything we missed during the pat

Keith Vincent - by Mr. Leeds                 7

1    frisk.

2         Q.    Are the inmates I guess escorted one at a

3    time down to your area?

4         A.    Yes, sir.  They're escorted one at a time.

5         Q.    What happened when you were doing the

6    security wand, the magnetic reader wand with Mr. Agee?

7         A.    As I was wanding Mr. Agee, the wand kept

8    signaling in his right front waistband area.

9         Q.    What did you do in response to this?

10        A.    Actually paid closer attention, went to and

11   researched that area, at which time is when I found the

12   actual weapon, the razor blade type weapon.

13        Q.    Did you perform any kind of search or pat

14   frisk on Mr. Agee?

15        A.    Well, at that time yes.  I went through and

16   patted down his front waistband area and I actually

17   rolled the waistband down.  That's when the weapon

18   actually was found.

19        Q.    I'm going to hand you what we have marked

20   here as Grand Jury Exhibit Number 1.  Can you identify

21   that?

22        A.    Yes.  That would be the razor type weapon

23   that was taken off of him that day.

24        Q.    In looking at that, does that appear changed

25   or altered in any way from the item that you took out of

Keith Vincent - by Mr. Leeds          8

1    Mr. Agee's waistband at that point?

2         A.     No, not at all.

3         Q.     What I guess exactly is that item?

4         A.     What it appears to be is actually the blade

5    from a state-issued razor blade.

6         Q.     Has it been altered or modified in any way?

7         A.     The blade was taken out of the actual

8    plastic razor blade itself.

9         Q.     Does it have like any handle or sheath?

10        A.     It has a black tape handle with a sheath on

11   it.

12        Q.     Would the inmates be allowed to have

13   possession of a razor like that?

14        A.     No, absolutely not.

15        Q.     They wouldn't be issued the razor itself in

16   any way?

17        A.     The actual razor itself, they get a razor

18   every Sunday, obviously for shaving.  This is an altered

19   item, so it's actually removed the blade and --

20        Q.     What's the form that they're actually given

21   the razor in initially?

22        A.     Just typically single bladed disposable

23   razor.

24        Q.     And they are not allowed to alter that or

25   break that or get that razor out in any way?

Keith Vincent - by Mr. Leeds                    9

1        A.      Not at all.

2                MR. LEEDS:   I'm going to move to admit

3        Grand Jury Exhibit Number 1 at this time.

4                THE FOREPERSON:   So admitted.

5                (Grand Jury Exhibit Number 1 was

6        received in evidence.)

7   BY MR. LEEDS:

8        Q.      Have you seen items like that inside the

9   prison before in your experience?

10       A.      Yes.

11       Q.      Are you familiar with the rules concerning

12  contraband inside the prison as well?

13       A.      Fairly well.

14       Q.      Would this item be considered contraband if

15  possessed by an inmate?

16       A.      Absolutely.

17       Q.      Would it be considered dangerous contraband?

18       A.      Absolutely.

19       Q.      What exactly makes it dangerous?

20       A.      The fact that the purpose is either cutting

21  somebody, self-defenses or just to attack somebody and

22  actually slash them.  Usually they prefer to slash each

23  other in the face for whatever reason.

24       Q.      Have you seen inmates slashed with items

25  such as that before?

Keith Vincent - by Mr. Leeds                    10

1       A.      Very often and a lot.

2       Q.      What kind of injuries do you see having

3   occurred as a result of things like this?

4       A.      Again, they prefer to slash in the face.

5   I've seen ears cut off, cheeks completely laid open so

6   you can see the teeth, gum lines sliced opened.

7   Actually this one guy I saw it went all the way through

8   his cheek, hit his tongue and almost took off a chunk of

9   his tongue with razors.  I've seen them sliced down the

10  neck, obviously trying to get to an artery or something.

11  I've seen quite a bit of that stuff over the years.

12      Q.      First of all, were any other inmates around

13  at the time that you removed this from Mr. Agee?

14      A.      No.

15      Q.      What did you do I guess with Mr. Agee first

16  after you recovered the item from his waistband?

17      A.      I recovered the item, put it in my pocket,

18  and at that time I put handcuffs on him, mechanical

19  restraints.  At that time I notified my area supervisor,

20  and he was escorted up to SHU-D, the maximum -- which is

21  our Special Housing Unit.

22      Q.      What did you do with the item that you

23  removed from Mr. Agee?

24      A.      From there I took that up front.  I

25  obviously filled out the proper paperwork and this bag

Keith Vincent - by Mr. Leeds          11

1    and placed it in the evidence locker.

2              MR. LEEDS:  I have no further questions

3         for Officer Vincent.  Any questions from the

4         grand jury at this point?  Okay.  You all

5         set.  Thank you so much.

6              (The witness was excused.)

7                    *          *          *

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sherri Guzylak - by Mr. Leeds          13

1              S H E R R I    G U Z Y L A K

2         having been first duly sworn by the Foreperson,

3           was examined and testified as follows:

4    EXAMINATION

5    BY MR. LEEDS:

6         Q.      Good afternoon.  Can you state your name,

7    please?

8         A.      Good afternoon.  My name is Sherri Guzylak.

9         Q.      Where do you work?

10        A.      At Auburn Correctional Facility.

11        Q.      What kind of work do you do for Auburn

12   Correctional Facility?

13        A.      I'm the inmates records coordinator.

14        Q.      What do you do as the inmate records

15   coordinator?

16        A.      We house the inmates' legal folders, we

17   handle transportation, releases, warrants, court

18   appearances.

19        Q.      How long have you been doing that specific

20   job?

21        A.      Just under a year now.

22        Q.      I'm going to hand you what we have marked

23   here as Grand Jury Exhibit Number 2.  Can you identify

24   what that is?

25        A.      Yes.  This is an external movement history.

Sherri Guzylak - by Mr. Leeds          14

1  It shows movement from facility to facility for a

2  particular inmate.

3      Q.     Does that movement history have a specific

4  inmate listed on it?

5      A.     Yes, it does.  It's Jkendrick Agee.

6      Q.     Aside from the name, are the inmates

7  identified by any other format?

8      A.     Yes, they are.  They're also given a

9  department identification number.

10     Q.     Is that on the form as well?

11     A.     It is, yes.

12     Q.     That history form, is that made in the

13 ordinary course of business for the Department of

14 Corrections?

15     A.     Yes, it is.

16     Q.     Is it the regular course of business for the

17 Department of Corrections to make and maintain a record

18 such as the one like you're holding?

19     A.     Yes, it is.

20     Q.     Now, is the record, the history, made for

21 each inmate that is within the Department of

22 Corrections?

23     A.     Yes, it is.

24     Q.     Is the record updated each time an inmate

25 moves from facility to facility within the Department of

Sherri Guzylak - by Mr. Leeds                    15

1   Corrections?

2        A.      Yes, that's correct.

3              MR. LEEDS:  I'm going to move to admit

4        Exhibit Number 2 at this time.

5              THE FOREPERSON:  So admitted.

6              (Grand Jury Exhibit Number 2 was

7        received in evidence.)

8   BY MR. LEEDS:

9        Q.      In looking at that form, was Jkendrick Agee

10  an inmate at Auburn Correctional Facility on

11  February 28th, 2016?

12       A.      Yes, he was.

13       Q.      Does it say where he would have been housed

14  around the 28th?

15       A.      It's on the other -- it shows him as being

16  at Auburn, correct.

17       Q.      But it doesn't list internally where he goes

18  from place to place within Auburn?

19       A.      Not on this particular report, it does not.

20       Q.      Just that he's generally housed at Auburn?

21       A.      In that particular facility at that time,

22  correct.

23       Q.      Next I'm going to hand you what we have

24  marked here as Grand Jury Exhibit Number 4.  Can you

25  identify what that is?

Sherri Guzylak - by Mr. Leeds          16

1        A.      Yes.  This is an inmate rule book.

2        Q.      Are all inmates given that rule book when

3    they come into the control of the Department of

4    Corrections?

5        A.      Yes, they are.

6        Q.      What exactly is a rule book?  What does that

7    refer to?

8        A.      It's actually named standards of inmate

9    behavior.  It's kind of a list of the dos and don'ts,

10   how to conduct yourself within the prison walls.

11       Q.      If an inmate were to lose or misplace their

12   rule book, would they have an opportunity to get another

13   copy of it?

14       A.      Yes, they could.

15       Q.      Do all those rules apply to all inmates in

16   the Department of Corrections?

17       A.      Yes, they do.

18       Q.      Do you give out or does the Department of

19   Corrections give out different rule books to different

20   types of inmates?

21       A.      No.  It's one standard book.

22       Q.      Is that the rule book that would have been

23   in effect in 2015, 2016?

24       A.      Yes, it is.

25       Q.      Does that rule book have any rules

Sherri Guzylak - by Mr. Leeds                17

1    concerning possession or use of contraband inside a
2    prison facility?
3         A.    Yes, it does.
4              MR. LEEDS:   First off, I'm going to
5              move to admit at this time Grand Jury
6              Exhibit Number 4 into evidence.
7              (Grand Jury Exhibit Number 4 was
8              received in evidence.)
9    BY MR. LEEDS:
10        Q.    Now that it's admitted, I want to refer you
11   to the rules concerning contraband.  Do you see rule
12   113.10?
13        A.    Yes, I do.
14        Q.    If you could read rule 113.10 for the grand
15   jury?
16        A.    An inmate shall not make, possess, sell or
17   exchange any item that may be classified as a weapon or
18   dangerous instrument by description, use or appearance.
19   A dangerous instrument is any instrument, article or
20   substance, which, under the circumstances in which it is
21   used, attempted to be used or threatened to be used is
22   readily capable of causing bodily harm.
23        Q.    Now, in looking further at the rules
24   concerning contraband, do you see any rule in there for
25   possession of altered items?

Sherri Guzylak - by Mr. Leeds          18

1      A.      Yes, I do.

2      Q.      What's that rule?

3      A.      That would be 113.11.

4      Q.      If you could, could you read 113.11?

5      A.      Sure.  An inmate shall not possess any

6   authorized item that has been altered in any manner so

7   as to change its original intent and/or purpose.

8      Q.      Now, does the contraband rule have other I

9   guess types of contraband that would be considered in

10  the prison aside from what you've already mentioned?

11     A.      Yes.  There are other subdivisions as well.

12     Q.      Other subdivisions, okay.  Does the

13  Department of Corrections maintain any records or forms

14  to show that an inmate was actually given a handbook?

15     A.      Yes.  There is a receipt that is given to

16  him to sign at the same time the book is issued.

17     Q.      I'm going to hand you what's been marked now

18  as Grand Jury Exhibit Number 3.  Can you identify that?

19     A.      Yes.  This is a rule book receipt.

20     Q.      Does that rule book receipt refer to a

21  specific inmate?

22     A.      Yes, it does, to Jkendrick Agee.

23     Q.      Is his department identification number on

24  there as well?

25     A.      Yes, it is.

Sherri Guzylak - by Mr. Leeds        19

1      Q.     Is that record made in the ordinary course

2   of business for the Department of Corrections?

3      A.     Yes, it is.

4      Q.     Is it the regular course of business to make

5   and maintain records such as the rule book receipt that

6   you're holding?

7      A.     Yes.

8      Q.     And is the rule book receipt made for each

9   of the inmates as they actually do receive their rule

10  book?

11     A.     Yes, that's correct.

12     Q.     Is that form signed then by the inmate as

13  well?

14     A.     Yes, it is.

15     Q.     Is the form or the rule book receipt dated

16  for when he received his rule book?

17     A.     Yes.  This one is dated July 7th, 2015.

18           MR. LEEDS:  I'm going to move to admit

19           Grand Jury Exhibit Number 3 at this time as

20           well.

21           THE FOREPERSON:  So admitted.

22           (Grand Jury Exhibit Number 3 was

23           received in evidence.)

24           MR. LEEDS:  That's going to conclude my

25           questions for Ms. Guzylak.  Any questions

Sherri Guzylak - by Mr. Leeds          20

1          from the grand jury at this point?  Okay.  I

2          will take all those back from you.  You're

3          all set.

4               (The witness was excused.)

5                    *         *          *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT Y

**ARREST REPORT**

| 1. NYSID No. | 2. CJTN No. | | 3. Case No. | 4. Ref. No. |
|---|---|---|---|---|
| 02697786L | 67556250K | | 6785685 | |
| 5. FBI No. | 6. Arrest No. | 7. Agency | 8. Div/Precinct | 4a. |
| 870489TC4 | 699885 | E2 TROOP E - ZONE 2 NY1050100 | E211 | |

## DEFENDANT INFORMATION

| 9. Name (Last, First, Middle) | | | | | | | | | 11. Phone Number |
|---|---|---|---|---|---|---|---|---|---|
| AGEE, JKENDRICK | | | | | | | | | |

| 12. Street Number and Name, Bldg. No., Apt. No. | | | | | 13. City, State, Zip | | | | 14. Residence Status |
|---|---|---|---|---|---|---|---|---|---|
| ACF INMATE - DIN#08B1474 | | | | | AUBURN NY 1302J | | | | RESIDENT |

| 15. Place of Birth | | 16. D.O.B | 17. Age | 18. Gender | 19. Race | | | | 20. Ethnicity |
|---|---|---|---|---|---|---|---|---|---|
| USA | | 08/10/1991 | 24 | MALE | BLACK | | | | NOT HISPANIC |

| 21. Skin | 22. Height | 23. Weight | 24. Hair | | 25. Eyes | 26. Glasses | 27. Build |
|---|---|---|---|---|---|---|---|
| DARK | 6ft. 3in. | 280lbs. | BLACK | | BROWN | NO | NORMAL |

| 28. Marital Status | 29. U.S. Citizen | 30. Citizen Of |
|---|---|---|
| SINGLE (NEVER MARRIED) | YES | USA |

| 31. Soc. Sec. No. | 32. Education | 33. Religion | 35. Employed |
|---|---|---|---|
| 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 | HIGH SCHOOL (ENTER 09 - 12) - | NONE | INMATE |

| 34. Occupation |
|---|
| LABORER |

| 36. Scars/Marks/Tattoos Description |
|---|
| NONE |

## ARREST INFORMATION

| 37. Arresting Officer/ID | 39. Assisting Officer/ID | 41. Arrest Date | 42. Time |
|---|---|---|---|
| MCCORMACK PATRICK TPR 1132 | PROPER JARED INV 1109 | 03/09/2016 | 09:30 |

| 43. Location of Arrest | | 44. Juvenile | 45. Condition of Defendant |
|---|---|---|---|
| ACF INMATE - DIN#08B1474  AUBURN NEW YORK 13021 | | NO | APPARENTLY NORMAL |

| 48. Miranda | 49. Miranda By | 50. Miranda Date | 51. Miranda Time |
|---|---|---|---|
| NO | | | |

| 52. Statements | 54. Search Warrant | 55. ID Procedure | |
|---|---|---|---|
| NONE | NO | NONE | |

| 56. Arraign. Court | 57. Arraign. Judge |
|---|---|
| AUBURN CITY COURT NY005011J | PRESIDING |

| 58. Arraign Date | 59. Arraign Time | 60. Property | 61. Evidence | 61a. Processed By |
|---|---|---|---|---|
| 03/09/2016 | 12:00 | NO | NO | |

| 61b. Disposition | 63. Arrestee Status | 64. Bail Amount |
|---|---|---|
| CLOSED | HELD | $ 0.00 |

| 65. Bondsman | 66. Photo No. | 67. Arrest Type | 68. Warrant No. |
|---|---|---|---|
| | | ARREST WARRANT | |

| 69. Arrest FOA | 70. Other Agency | 71. F/P Taken |
|---|---|---|
| NO | | YES |

| 76. Return Court | 77. Return Judge |
|---|---|
| | |

| 78. Date | 79. Time | 80. Defendant/Case TOT Agency | 80a. Officer Name |
|---|---|---|---|
| | | | |

| 81. Case TOT Time | 82. Case TOT Date | 43a. CTV Code |
|---|---|---|
| | | AUBURN CITY 0601 |

3/21/2016   10:52:40

## INCIDENT INFORMATION

| 62. Incident No. | 72. Offense Location | 73. Offense Date/Time | 74. No.Offender | 75. No.Victims | Incident Case No. |
|---|---|---|---|---|---|
| 6785685 | AUBURN CITY 0601 | 3/8/2016 15:49 | 1 | 0 | AUB |

## OFFENSE INFORMATION

| 83. LAW Article/Section | SUB | CL | CAT | DEG | ATI | NAME OF OFFENSE | CTS | NCIC Code | Victim Age Sex Hco | ASSOC NO | TYPI |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PL  205.25  02 | | D | F | 1 | C | POSS. DANG CONTRABND PRISON-1ST | 1 | 5802 | | Incident  785685 | |

| 86. Arresting Officer Signature | 87. ID No. | 88. Supervisor Signature | 89. ID No. |
|---|---|---|---|
| INV. B. STOVER | 5056 | | 93. |
| 90. Arrest Made as a Result of SAFIS Print ID? | 91. | 92. | |
| NO | | | |

# EXHIBIT
# Z

AUBURN CITY COURT

STATE OF NEW YORK                              DOCKET # 16-0258
COUNTY OF CAYUGA                               CR#

------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK
                    -VS-
**JKENDRIC AGEE**                              WARRANT OF ARREST
AUBURN CORRECTIONAL                            ===============
AUBURN NY 13021

DOB: 08-10-1991 Male
------------------------------------------------

In the Name of the People of the State of New York

To any Police Officer of the City of Auburn or County of Cayuga, or State of New
York (or Peace Officer);

An accusatory instrument having been laid before this court charging that on or
about the 28 day of February, 2016 at the City of Auburn, New York, the
defendant has committed the offense(s) of:

FIRST CHARGE: PL-205.25       -DF-   1-CONTRABAND TO PRISONERS-1

YOU ARE, THEREFORE COMMANDED to arrest the above named defendant and bring him
or her before this court at 157 Genesee Street in the City of Auburn, New York.

Bail is set in the amount of $   _No Bail_ (OSI)

This 8 day of March, 2016
at Auburn, Cayuga County, New York.
                                        _____
                                        HON. DAVID B. THURSTON
                                        JUDGE, AUBURN CITY COURT
By virtue of the within warrant, I have arrested the within named **JKENDRIC AGEE**
on the ___ day of _____ 20___ at _____ in the County of Cayuga NY and now
have before the magistrate by whom this warrant was issued/or before
_____ a magistrate in said County of Cayuga, he/she having
required me to do so.
Dated: _____       Signed Officer _____
                                     Title
I _____ of _____ of the _____ NY do hereby
certify, that I have this ___ day of _____ 20__ admitted the within named
**JKENDRIC AGEE** to bail for his/her appearance before the magistrate named in
the within warrant, and taken bail from him/her accordingly.
Dated: _____       20__ _____ Judge/Justice
This warrant may be executed in the County of Cayuga New York. Dated at Auburn
NY this day _____ of _____ 20__ _____ Judge/Justice of
Auburn City Court
++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
Defendant Endorsement
I, **JKENDRIC AGEE** the defendant named in this warrant, have been informed that
I have the right to appear before a local criminal court of the County in which
I was arrested, to wit the County of Cayuga, NY for the purpose of being
released on my own recognizance or having bail fixed. I do not desire to be
brought before such court in such county.

                                        _____
                                        Signature of defendant

PLSec 180