# EXHIBIT

# i

# Ex-prosecutor: Cayuga County DA secretly withheld key evidence in 15 cases



Cayuga County District Attorney Jon Budelmann at a news conference in 2011. (Stephen D. Cannerell | scannerell@syracuse.com)



By John O'Brien | jobrien@syracuse.com
Follow on Twitter
on October 31, 2016 at 9:05 AM, updated November 02, 2016 at 9:51 AM

AUBURN, N.Y. – Tyrone Matthews could've been sentenced to 23 more years in prison than his case warranted.

He was charged as a drug dealer, not as the guy who brought the dealer and buyer together.

His role as a go-between was spelled out in a police report that was not initially turned over to Matthews' lawyer.

Under the law, a prosecutor has to give accused criminals any evidence that they can use in their defense.

The former assistant Cayuga County district attorney who initially handled Matthews' case told the defense lawyer about the undisclosed police report in January. A judge later ordered the district attorney, Jon Budelmann, to turn it over.

The ex-assistant DA, Jeffrey Domachowski, says Budelmann had ordered him not to disclose the report and secretly withheld similar evidence in 14 other drug cases over the past eight years.

Budelmann fired him in June for bucking the DA's practice of not disclosing evidence to defendants and county grand juries, Domachowski said.

"It's the Dukes of Hazzard out there," Domachowski said. He filed a notice of claim against the county, preserving his right to sue and accusing Budelmann of malfeasance and retaliation.

Budelmann denied the allegations and said Domachowski was fired for unethical conduct.

In Matthews' case, the withheld information showed he was helping a friend get access to a drug dealer, Domachowski said. That's known in criminal cases as the agency defense, where someone is acting as an agent for the buyer.

Courts consider an agent to be less responsible for drug-trafficking than a dealer.

Domachowski wanted to give Matthews' lawyer, Simon Moody, the police report indicating Matthews was an agent. But Budelmann told him not to, Domachowski said.

ca prosecutor. Cayuga County DA secretly withheld key evidence in 15 cases | syracuse....   Page 2 of 4

Case 9:19-cv-00057-BKS-ATB   Document 14-7   Filed 06/12/19   Page 3 of 13

Domachowski told Moody about the report in January anyway, saying he had an ethical obligation. Three months later, Cayuga County Judge Thomas Leone decided the police report should've been turned over to the defense. He ordered that it be done.

The report says a female friend of Matthews, secretly working as a police informant, met with him in September 2014 to buy cocaine. They went to a drug dealer's home to get the drugs, the report said. She paid Matthews immediately before he entered and he gave her the drugs immediately after leaving the house, according to the report.

Those are all classic elements of the agency defense, Domachowski said. They show Matthews was the middle man who got no benefits from the deal, the former prosecutor said.

The information made a difference once it was disclosed. Moody presented the report and the agency defense to a jury in a Cayuga County Court trial last month. The jury acquitted Matthews of selling heroin and cocaine and convicted him of less-serious drug-possession charges.

Matthews would've faced 25 years to life in prison if he'd been convicted of the drug-trafficking charges, Moody said. Matthews faces no more than two years behind bars on the drug-possession conviction.

"I would've just been another statistic pleading guilty" if Domachowski hadn't revealed the information to Moody, Matthews told Syracuse.com in an interview two weeks ago at the Cayuga County Jail.

"This is not right," said Matthews, 40, who admits he deserved jail time for possessing the drugs. "We shouldn't be doing this."

Matthews would not likely have been indicted on the more serious charges if Budelmann's office had presented the withheld evidence to a grand jury, Moody said.

"The refusal to submit it to a grand jury is not only prosecutorial misconduct, it's unethical," Moody said. "They have an obligation to do that."

The Matthews case was one in which Domachowski started notifying defense lawyers that Budelmann was violating defendants' constitutional right to a fair trial by not disclosing evidence.

In many of the 15 cases, as was true in Matthews', the withheld evidence allowed prosecutors to overcharge a defendant. Domachowski said. There was often enough evidence for a lesser charge, but the withheld evidence would've cleared them of more serious felonies, Domachowski said.

Domachowski told Syracuse.com Budelmann had a practice of secretly withholding such evidence in drug cases.

Budelmann, who's been DA since 2008, responded to requests for an interview by sending an email to Syracuse.com. He said this was the first time in his 24 years as a prosecutor that a co-worker accused him of unethical behavior.

"We deny this disgruntled former employee's baseless allegations and the county will vigorously fight this claim," he wrote. "He was terminated in June due to his own unethical conduct."

Budelmann, questioned by a reporter outside the Cayuga County Courthouse on Friday, would not specify Domachowski's alleged misconduct. Domachowski said he didn't know what Budelmann was talking about.

Moody said he plans to ask a judge to overturn the convictions of one or two other clients, based on Domachowski's information.

"He may have opened a Pandora's Box here," Moody said.

Of the 15 cases Domachowski cited, six involve the failure to disclose evidence that the defendant was acting as an agent, not as the dealer.

Here's the information in the other nine cases that Domachowski says wasn't disclosed, at least initially: Two involve entrapment -- defendants who were not inclined to sell drugs being lured into it. Two were undisclosed lab reports. Two involved an undisclosed person in the drug transaction. Two showed the informants stole some of the drugs. One involved the failure to disclose there was a missing video of the drug transaction.

In one of the entrapment cases, the confidential informant was being paid by police, Domachowski said. The informant was unemployed and in need of money, he said. Domachowski said he presented that evidence to a grand jury over Budelmann's objection, and the defendant was cleared.

Seven of the 15 cases are pending. In four cases, the defendants pleaded guilty without knowing of the undisclosed evidence, Domachowski said. In four others, he notified defense lawyers about the evidence and it resulted in a more favorable outcome, he said.

'It's the Dukes of Hazzard out there," former Assistant    Domachowski said he confronted Budelmann about the problem repeatedly over the past two years. But the DA insisted the evidence didn't have to be turned over to the defense or presented to a grand jury, Domachowski said.

**District Attorney Jeffrey Domachowski said.**

Budelmann told him some reports couldn't be disclosed because they would reveal secret police practices, Domachowski said. Budelmann has also claimed disclosure of some reports would identify confidential informants, Domachowski said.

Gary Kelder, a Syracuse University law professor, said prosecutors sometimes disagree over whether they're required to disclose a piece of evidence to the defense. Under the law, they must turn over anything that would be favorable to the defense and is material to the question of guilt or punishment, he said.

Prosecutors sometimes disagree over whether the evidence is material, he said.

There are ways of handling situations where the DA's concerned about disclosing police practices or the identity of a confidential informant, he said.

"Those are legitimate concerns," said Kelder, a former prosecutor. "The question is, can they be accommodated by methods other than nondisclosure?"

The information can be redacted, or the prosecutors can take the evidence to the judge and let him or her decide how to proceed, Kelder said.

After realizing Budelmann wasn't going to change the practice, Domachowski started secretly recording their conversations, he said. Domachowski would not provide the recordings to Syracuse.com.

The disagreement over evidence disclosure came to a head June 15, when Budelmann ordered him to resign, Domachowski said in his notice of claim against the county, filed by lawyer Robert Lahm.

When Domachowski reported to work two days later intending to submit his resignation, he was locked out, the claim said. An investigator took Domachowski's office keys and key fob, and cleared out his belongings, the claim said.

Domachowski reported his concerns about Budelmann's practices to the state Attorney General's Office and the Grievance Committee for the Fourth Judicial Department, which investigates allegations of lawyer misconduct.

The firing was retaliation for filing those complaints, his claim said.

Despite Budelmann's orders not to disclose the evidence, Domachowski said he was ethically obligated to do that. He didn't disclose the reports, but started telling defense lawyers early this year about the withheld evidence, he said.

One of them, David Elkovitch, said that if he'd known about the evidence Domachowski revealed, he would not likely have advised his client to plead guilty. That client went to jail on a felony drug sales conviction. He was unaware of evidence that showed he was an agent, not a dealer, Domachowski said.

Elkovitch has tried in vain to track down the client to see if he wants to ask a judge to reopen his case.

That could be happening more often in Cayuga County because of Domachowski's information, Elkovitch said.

Domachowski is a former Onondaga County sheriff's deputy who got his law license and worked for years as a defense lawyer.

After he started as an assistant DA in November 2014, he was surprised to see so many cases in which defendants were acting as agents for drug dealers or were entrapped by police, and the evidence of it was never disclosed, he said.

He came across entrapment and agency cases while he was going through the files and reviewing audio and videotape of the transactions, he said. Some were from cases that were disposed of years ago, he said.

Some of the witnesses who bought drugs said they needed money or wanted a better deal in their own case so they set the defendants up, Domachowski said. In those cases, the evidence of entrapment wasn't initially disclosed to the defense, he said.

Matt Kopecki was one of the 15 defendants affected by withheld evidence, Domachowski said. Kopecki was charged three years ago with possessing concentrated cannabis, or hashish, a more powerful form of marijuana.

Police did a field test on drugs they seized from his home that showed them to be concentrated cannabis, according to a police report.

Kopecki pleaded guilty to the felony charge a year later. Two years after that, in March of this year, he learned about a crime lab report that had not been turned over to his lawyer.

The report showed the drugs were marijuana. It did not say the drugs were concentrated cannabis, which the lab was unable to test for.

If marijuana were the only drug Kopecki was accused of possessing, he would've only have been charged with a misdemeanor, based on the amount he had, said his lawyer, Simon Moody.

Moody filed a freedom-of-information-law request with Budelmann's office and received not only the secret lab report, but an email exchange about it. Budelmann had emailed a police investigator before presenting Kopecki's case to a grand jury. He asked if the lab had the ability to detect concentrated cannabis.

It did not, a state trooper wrote in an email.

The report and the emails clearly were items that Budelmann was obligated to disclose under the law, said Kelder, the SU law professor.

"It certainly sounds material to me, because it makes all the difference in the world what the charge is," Kelder said. "Here you've got a lab doing scientific testing and they can't make that determination. So, yeah. It would seem like that should be turned over."

Shortly after learning that the lab tests showed marijuana, Budelmann got a grand jury indictment against Kopecki, charging him with selling concentrated cannabis.

Kopecki, 37, is a 10-year Army veteran who served tours in the Iraq and Afghanistan wars. He said he suffers from post-traumatic stress disorder from the wars, and problems with his back, knees and ankles. He started using marijuana to treat his conditions under a doctor's recommendation when he lived in California, he said.

He was sentenced to five years' probation and 400 hours of community service for the felony conviction. Police seized his coin collection worth $24,000 and his wife's diamond wedding ring, according to a police report.

Kopecki plans to ask a judge to overturn his conviction on the grounds that Budelmann secretly withheld evidence that would've benefited the defense.

*Contact John O'Brien anytime | email | Twitter | 315-470-2187*

New York's longest-serving prisoners

# EXHIBIT

# ii

Auburn _____ Correctional Facility

## INMATE MISBEHAVIOR REPORT ✦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ✦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ✦ NÚM. | HOUSING LOCATION ✦ CELDA |
|---|---|---|
| Agee, J. | 08-R-1474 | D-7-37 |

| 2. LOCATION OF INCIDENT ✦ LUGAR DEL INCIDENTE | INCIDENT DATE ✦ FECHA | INCIDENT TIME ✦ HORA |
|---|---|---|
| D-block front of 7 CO. | 2-28-16 | Approx 9ᵃᵐ |

**3. RULE VIOLATION(S) ✦ VIOLACIÓNES**

113.10 inmate shall not possess a weapon.
114.10 inmate shall not smuggle any item from one area to another.

**4. DESCRIPTION OF INCIDENT ✦ DESCRIPCIÓN DEL INCIDENTE**

While I CO. Vincent was working D-block 2nd officer I was wanding inmates as they were going out to PK rec. I wanded inmate Agee #08-R-1474 the wand sounded on inmate Agee's right front waiste band. at that time I frisked the right front waist band and found a razor type weapon wrapped in black tape. with a black type sheath. razor appears to be a state issue razor blade. Weapon was placed in evidence locker per directive 4910A. Weapon measured 1" long by 1/2" wide wrapped in black tape with sheath.

| REPORT DATE ✦ FECHA | REPORTED BY ✦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ✦ FIRMA | TITLE ✦ TÍTULO |
|---|---|---|---|
| 2-28-16 | K. Vincent | | C.O. |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)**   SIGNATURES:
ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)   FIRMAS: 1. _____

2. _____                                    3. _____

NOTE: Fold back Page 2 on dotted line before completing below.

| 6. WERE OTHER INMATES INVOLVED? | YES ☐ | NO ☒ | IF YES, GIVE NAME & # _____ |
|---|---|---|---|
| ¿HUBO OTROS RECLUSOS ENVUELTOS? | sí ☐ | NO ☐ | DE SER SÍ DÉ LOS NOMBRES Y DIN _____ |

7. AT THE TIME OF THIS INCIDENT, WAS INMATE UNDER PRIOR CONFINEMENT/RESTRICTION?   YES ☒   NO ☐
¿ES TUVO EL RECLUSO CONFINADO/RESTRINGIDO PREVIO AL INCENDENTE?   sí ☐   NO ☐
                                                                          ── OR ✦ O ──
AS A RESULT OF THIS INCIDENT, WAS INMATE CONFINED/RESTRICTED?   YES ☒   NO ☐
¿SE CONFINÓ/RESTRINGÓ AL RECLUSO COMO RESUTADO DE ESTE INCIDENTE?   sí ☐   NO ☐

8. WAS INMATE MOVED AT ANOTHER HOUSING UNIT?   YES ☒   NO ☐
¿MUDARON AL RECLUSO A OTRA UNIDAD DE VIVIENDA?   sí ☐   NO ☐
IF YES, (a) CURRENT HOUSING UNIT   SHU-D   (b) AUTHORIZED BY   Lt. Quinn
DER SER SÍ, (a) UNIDAD DE VIVIENDA ACTUAL   (b) AUTORIZADO POR

9. WAS PHYSICAL FORCE USED?   YES ☐   NO ☒   (IF YES, FILE FORM 2104)
¿SE USÓ FUERZA FÍSICA?   sí ☐   NO ☐   (DER SER SÍ, SOMETA EL FORMULARIO No. 2104)

AREA SUPERVISOR ENDORSEMENT _____
ENDOSO DEL SUPERVISOR DEL ÁREA

# EXHIBIT

# iii

FORM 2082
(REV. 05/12)

STATE OF NEW YORK – DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION
**REQUEST FOR URINALYSIS**

FACILITY  Auburn LF _____  Test # _____

INMATE NAME  AGEE, J. _____  NUMBER  08B1474 ___  CELL  (D7-27)

REQUEST MADE BY  Sgt. R. Van Fleet _____  DATE  2-28-16

AGENT(S) SUSPECTED (IF ANY)
 All controlled Substances _____

CIRCUMSTANCES LEADING TO REQUEST  found Weapon on Person _____

_____

TEST APPROVED BY: _____  DATE: 2/28/16

INMATE TOLD THE UNDERLYING REASON WHY HE IS BEING ORDERED TO SUBMIT A URINE SPECIMEN CIRCLE ONE:
SUSPICION, ROUTINE, RANDOM)

BY _____  DATE _____ TIME _____

HAS INMATE TAKEN MEDICATION RECENTLY? (YES OR NO) SPECIFY _____

_____

INMATE ORDERED TO SUBMIT SPECIMEN: _____  DATE _____ TIME _____

SPECIMEN WITNESSED AND OBTAINED BY _____  DATE _____ TIME _____

DOES INMATE WILLFULLY REFUSE TO SUBMIT SPECIMEN? (YES OR NO)

DOES INMATE CLAIM TO BE UNABLE TO SUBMIT SPECIMEN IN THE PRESENCE OF OTHERS?
                                          (YES OR NO) _ DATE _____ TIME _____

*(In the event an inmate makes this claim, the procedures in Directive #4937, section IV-E shall be followed).

IF INMATE CLAIMS TO BE UNABLE TO SUBMIT SPECIMEN, HAS INMATE BEEN GIVEN AT LEAST THREE HOURS TO
SUBMIT SPECIMEN? (YES OR NO)

SPECIMEN TESTED BY (1ST TEST) _____  DATE _____ TIME _____

RESULTS _____

SPECIMEN TESTED BY (2ND TEST) _____  DATE _____ TIME _____

RESULTS _____

CHAIN OF CUSTODY (STARTING WITH STAFF OBTAINING SPECIMEN, ATTACH ADDITIONAL PAGES IF NECESSARY)

FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____
FROM _____ TO _____ DATE _____ TIME _____

This form is to be filled out COMPLETELY.  It is to accompany the specimen until the specimen is tested.
If the specimen is positive, a MISBEHAVIOR REPORT shall be written.

# EXHIBIT

# iv

```
03/22/16     SLOC010          LOCATOR SYSTEM          *FPMS*          PAGE 001
                         CHRONOLOGICAL HISTORY DISPLAY
                             01 AUBURN GENER
  DIN 08B1474      NYSID 02697786L   FACILITY OFF COUNTS      LOCATION
    NAME AGEE, JKENDRIC                        DOB 08/10/91   SEX M   E/R NB
```

| EFFECTIVE DATE | DATE ENTERED | SENDING FACILITY | RECEIVING FAC/ OUTCOUNT LOCATION | TRANSACTION TYPE | CELL |
|---|---|---|---|---|---|
| 05/13/08 | 05/13/08 |  | WENDE RECEP | NEW COMMIT | 0C-13-07S |
| 05/15/08 | 05/15/08 | WENDE RECEP | ELMIRA RECEP | TRANSFER OUT | 0C-13-07S |
| 05/15/08 | 05/15/08 | WENDE RECEP | ELMIRA RECEP | TRANSFER IN | 0B-05-05S |
| 05/27/08 | 05/27/08 | ELMIRA RECEP | GREENE | TRANSFER OUT | 0A-04-24S |
| 05/27/08 | 05/27/08 | ELMIRA RECEP | DWNSTATE REC | INTRANS RECV | 02-0C-033 |
| 05/28/08 | 05/28/08 | DWNSTATE REC | GREENE | INTRANS SENT | 02-0C-033 |
| 05/28/08 | 05/28/08 | ELMIRA RECEP | GREENE | TRANSFER IN | 0F-01-26B |
| 07/10/08 | 07/10/08 | GREENE | GREEN SHU200 | INTRANS SENT | SH-00-007 |
| 07/10/08 | 07/10/08 | GREENE | GREEN SHU200 | INTRANS RECV | 0S-A2-44B |
| 09/26/08 | 09/26/08 | GREENE | FISHK SHU200 | TRANSFER OUT | 0S-B2-27B |
| 09/26/08 | 09/26/08 | GREENE | FISHK SHU200 | TRANSFER IN | 0S-A1-17B |
| 12/09/08 | 12/09/08 | FISHK SHU200 | WENDE | TRANSFER OUT | 0S-C2-44T |
| 12/09/08 | 12/09/08 | FISHK SHU200 | WENDE | TRANSFER IN | 0A-06-02T |
| 01/11/10 | 01/11/10 | WENDE | ORLNS SHU200 | TRANSFER OUT | 0A-04-01T |
| 01/11/10 | 01/11/10 | WENDE | ORLNS SHU200 | TRANSFER IN | 0S-A1-08B |
| 02/04/10 | 02/04/10 | ORLNS SHU200 | ORLEANS | INTRANS SENT | 0S-A1-08T |
| 02/04/10 | 02/04/10 | ORLNS SHU200 | ORLEANS | INTRANS RECV | HS-0B-001 |
| 02/05/10 | 02/05/10 | ORLEANS | ORLNS SHU200 | INTRANS SENT | HS-0B-001 |
| 02/05/10 | 02/05/10 | ORLEANS | ORLNS SHU200 | INTRANS RECV | 0S-A1-08T |
| 02/16/10 | 02/16/10 | ORLNS SHU200 | FIVE POINTS | TRANSFER OUT | 0S-A1-08T |
| 02/16/10 | 02/16/10 | ORLNS SHU200 | AUBURN DEPOT | INTRANS RECV | 0D-08-17T |
| 02/18/10 | 02/18/10 | AUBURN DEPOT | FIVE POINTS | INTRANS SENT | 0D-08-17T |
| 02/18/10 | 02/18/10 | ORLNS SHU200 | FIVE POINTS | TRANSFER IN | 09-C2-48T |
| 07/12/10 | 07/12/10 | FIVE POINTS | CAYUG SHU200 | TRANSFER OUT | 12-C1-21B |
| 07/12/10 | 07/12/10 | FIVE POINTS | CAYUG SHU200 | TRANSFER IN | 0S-A1-19B |
| 09/09/10 | 09/09/10 | CAYUG SHU200 | CLINTON GEN | TRANSFER OUT | 0S-A2-45B |
| 09/09/10 | 09/09/10 | CAYUG SHU200 | AUBURN DEPOT | INTRANS RECV | 0D-08-30B |
| 09/10/10 | 09/10/10 | AUBURN DEPOT | CLINTON GEN | INTRANS SENT | 0D-08-30B |
| 09/10/10 | 09/10/10 | AUBURN DEPOT | DWNSTATE REC | INTRANS RECV | 03-0H-003 |
| 09/13/10 | 09/13/10 | DWNSTATE REC | CLINTON GEN | INTRANS SENT | 03-0H-003 |
| 09/13/10 | 09/13/10 | CAYUG SHU200 | CLINTON GEN | TRANSFER IN | LF-01-26S |
| 07/08/11 | 07/08/11 | CLINTON GEN |  | ME PRS PAR | UF-10-047 |
| 10/03/13 | 10/03/13 |  | WENDE RECEP | PRSV NO NT | 0C-13-14S |
| 10/04/13 | 10/04/13 | WENDE RECEP | ELMIRA RECEP | TRANSFER OUT | 0C-13-14S |
| 10/04/13 | 10/04/13 | WENDE RECEP | ELMIRA RECEP | TRANSFER IN | 0A-01-04S |
| 10/24/13 | 10/24/13 | ELMIRA RECEP | ATTICA GEN | TRANSFER OUT | 0A-01-04S |
| 10/24/13 | 10/24/13 | ELMIRA RECEP | ATTICA GEN | TRANSFER IN | 0D-40-05S |
| 07/10/14 | 07/10/14 | ATTICA GEN |  | PAR PAROLE | E2-53-03B |
| 06/30/15 | 06/30/15 |  | WENDE RECEP | PRSV NO NT | 0C-13-17S |
| 07/02/15 | 07/02/15 | WENDE RECEP | ELMIRA RECEP | TRANSFER OUT | 0C-13-17S |
| 07/02/15 | 07/02/15 | WENDE RECEP | ELMIRA RECEP | TRANSFER IN | 0A-05-37S |
| 07/10/15 | 07/10/15 | ELMIRA RECEP | AUBURN GENER | TRANSFER OUT | 0A-05-37S |
| 07/10/15 | 07/10/15 | ELMIRA RECEP | AUBURN GENER | TRANSFER IN | 0A-08-20S |
| 03/09/16 | 03/09/16 | AUBURN GENER |  | PAR PAROLE | SH-UF-002 |

```
NOTE: THIS REPORT WAS RECONSTRUCTED USING HISTORICAL INMATE MOVEMENT DATA FROM
      COMPUTER RECORDS, AND IS ONLY AS ACCURATE AS IT WAS MAINTAINED BY THE
      FACILITY FOR THIS TIME PERIOD.
```

# EXHIBIT

# V

03/22/16                        LOCATOR SYSTEM                        KLOCM6B
                          INTERNAL MOVEMENT HISTORY DISPLAY
                                  01 AUBURN
DIN 08-B-1474   NYSID 02697786-L  FACILITY OFF COUNTS      LOCATION
NAME AGEE, JKENDRIC                       DOB 08/10/91    SEX M   E/R NB

|                | EFFECTIVE | DATE    |                      |                     |
| FACILITY       | DATE      | ENTERED | FROM                 | TO                  |
|----------------|-----------|---------|----------------------|---------------------|
| AUBURN GENER   | 08/21/15  | 08/21/15| UNEM A/ ELEC TRDS P  | UNEM A/P            |
|                | 09/12/15  | 09/12/15| UNEM A/P             | E. TRADES AM UNEMP PM |
|                | 02/03/16  | 02/03/16| 0A-08-20S            | 0D-07-27S           |
|                | 02/27/16  | 02/27/16| E. TRADES AM UNEMP PM| UNEMP A/P           |
|                | 02/28/16  | 02/28/16| 0D-07-27S            | SH-UK-005           |
|                | 02/28/16  | 02/28/16| SH-UK-005            | HS-0I-008           |
|                | 02/28/16  | 02/28/16| HS-0I-008            | HS-0I-009           |
|                | 02/29/16  | 02/29/16| HS-0I-009 UNEMP A/P  | MH-OB-004 UNEM A/P  |
|                | 02/29/16  | 02/29/16| MH-OB-004            | MH-OB-006           |

<ENTER> CONTINUE   <PF3> EXIT(FUNCTION)    <PF4> RETURN   <CLEAR> EXIT(SYSTEM)
                   <PF7> SCROLL BACKWARD   <PF8> SCROLL FORWARD