UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

J'KENDRIC JIRELLE AGEE,

                Plaintiff,

      v.                                        9:19-CV-0057
                                                           (BKS/ATB)

MITCHELL, et al.,

                Defendants.

---

APPEARANCES:

J'KENDRIC JIRELLE AGEE
17-B-0759
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

Pro se plaintiff J'kendric Jirelle Agee ("plaintiff") commenced this civil rights action on or about January 16, 2019. *See* Dkt. Nos. 1-4. In plaintiff's 88-page original complaint, he identified 30 defendants and purported to assert various constitutional causes of action against them. *See generally* Dkt. No. 1. On April 24, 2019, the Court issued a Decision and Order ("April Order") pursuant to 28 U.S.C. § 1915 ("Section 1915") and 28 U.S.C. § 1915A ("Section 1915A") granting plaintiff leave to proceed in the action in forma pauperis ("IFP"), denying his application for the appointment of pro bono counsel, and accepting plaintiff's

original complaint for filing only with respect to plaintiff's (1) Eighth Amendment excessive force and failure to intervene claims against two defendants, (2) First Amendment retaliation claims asserted against three defendants, and (3) Fourteenth Amendment equal protection claim against one defendant. Dkt. No. 11 ("Apr. Order") at 32.[1]

On June 12, 2019, the Court received a 127-page amended complaint from plaintiff. Dkt. No. 14 ("Am. Compl."). Attached to the amended complaint are 23 exhibits. Dkt. Nos. 14-1 – 14-7 ("Exhs. Parts I-VII").[2] The Clerk has forwarded the amended complaint to the Court for review.

## II. DISCUSSION

### A. Legal Standard

The legal standard governing the review of a pro se inmate-plaintiff's complaint pursuant to Sections 1915 and 1915A was discussed at length in the April Order and will not be restated in this Decision and Order. *See* Apr. Order at 3-5.

### B. Summary of the Amended Complaint

Plaintiff's 127-page amended complaint alleges wrongdoing that occurred while he was incarcerated in Auburn Correctional Facility ("Auburn C.F."), a prison operated by the New York State Department of Corrections and Community Supervision ("DOCCS"), and

---

[1] The page numbers cited to in this Decision and Order correspond with those generated by the Court's electronic filing system.

[2] Plaintiff's submission did not include any exhibits identified as "C" or "D." *See* Exhs. Part I. Some of the exhibits that were attached to plaintiff's original complaint were not submitted as exhibits to the amended complaint. Because, as will be discussed below, the Court accepts the amended complaint for filing, and out of special solicitude to plaintiff as a pro se litigant, the Court has directed the Clerk to append to the amended complaint those exhibits plaintiff attached to his original complaint but did not attach to his amended complaint. Those exhibits are now all encompassed on the docket in Docket Entry No. 14. For the sake of clarity, the Court has appended to this Decision and Order a full list of exhibits that are now attached to the amended complaint.

2

Cayuga County Jail ("CCJ"), a prison operated by Cayuga County. *See generally* Am. Compl. As defendants, the amended complaint specifically names 14 individuals and another 13 individuals are identified as "Doe" defendants.[3] *Id.* For ease of reference, set forth below is a list of the 27 defendants identified in the amended complaint, as well as her/his job title to the extent it can be discerned in the amended pleading:

1. Anthony Annucci, Acting DOCCS Commissioner
2. Joseph Bellnier, Deputy DOCCS Commissioner of Correctional Facilities
3. Harold Graham, Auburn C.F. Superintendent
4. E. Fagan, Auburn C.F. Deputy Superintendent of Security[4]
5. John Doe No. 2, Evidence Control Supervisor
6. John Doe No. 3, Auburn C.F. Criminal Prosecutor Liaison
7. Troy Mitchell, Auburn C.F. Lieutenant ("Lt.")
8. Kevin Ashby, Auburn C.F. Correctional Officer ("C.O.")
9. Nathaniel Sweet, Auburn C.F. C.O.
10. Keith Vincent, Auburn C.F. C.O.
11. John Doe No. 4, Auburn C.F. C.O.
12. John Doe No. 5, Auburn C.F. C.O.
13. John Doe No. 6, Auburn C.F. C.O.
14. John Doe No. 7, Auburn C.F. C.O.
15. John Doe No. 8, Auburn C.F. C.O.
16. John Doe No. 9, Auburn C.F. C.O.
17. John Doe No. 10, Auburn C.F. Technical Security Specialist
18. John Doe No. 11
19. John Doe No. 12
20. Mrs. Wade, CCJ C.O.
21. Timothy Quinn, Auburn C.F. Lt.
22. Ray Vanfleet, Auburn C.F. Lt.
23. Michael Quimette, Auburn C.F. Lt.[5]
24. Sherri Guzylak, Auburn C.F. Inmate Records Coordinator II

---

[3] The caption of the amended complaint only lists 21 defendants. Am. Compl. at 1-2. The remaining defendants are identified throughout the body of the amended pleading. *See id.* at 45 n.3, 51 n.4, 59 n.7, 61 n.8.

[4] Defendant Fagan is referenced in plaintiff's amended complaint both as "John Doe No. 1" and "E. Fagan." *See* Am. Compl. at 59. This Decision and Order will refer to that individual as "defendant Fagan."

[5] Plaintiff's amended complaint and the exhibits attached to the amended complaint are not consistent with respect to the spelling of this individual's last name. *Compare* Am. Compl. at 45 n.3 ("Lt. Michael Quimette") *with* Exhs. Part I at 10 (To/From memorandum dated Feb. 29, 2016, authored by "Michael Ouimette Lt."). For the sake of consistency, the Court will refer to this individual as "defendant Quimette" in this Decision and Order and on the docket.

3

25. John Doe No. 13, Auburn C.F. Supervisor
26. Jeremiah Brooks, Auburn C.F. Captain
27. John Doe No. 14, Auburn C.F. Hearing Officer

*Id.*[6]

The following facts are set forth as alleged by plaintiff in his amended complaint.

1. **Auburn C.F.**

    a. **Discovery of Weapon**

At approximately 9:20AM on February 28, 2016, ten days before plaintiff was scheduled to be released from DOCCS's custody, defendants Sweet and Ashby arrived at plaintiff's cell to escort him to recreation. Am. Compl. at 4. Defendants Sweet and Ashby conducted a pat-frisk of plaintiff before "walk[ing] [him] down the company where their [sic] were several other C.O.'s [sic]." *Id.* At some point during the escort, defendant Vincent directed plaintiff "to put his hands behind his back." *Id.* at 5. Plaintiff was then handcuffed and escorted to the Special Housing Unit ("SHU"). *Id.* Before taking plaintiff to SHU, defendant Vincent told defendant Vanfleet that he had found a weapon in plaintiff's boot. *Id.* Plaintiff "became very sad" when he heard what defendant Vincent said to defendant Vanfleet, and, for that reason, plaintiff "had to be taken" to the mental health unit ("MHU"). *Id.*

Although plaintiff alleges having no recollection or knowledge of receiving a misbehavior report while at Auburn C.F. accusing him of possessing a weapon on February 28, 2016, Am. Compl. at 7, one of the exhibits to the amended pleading reflects that defendant Vincent authored an inmate misbehavior report concerning the incident. Exhs.

---

[6] The Clerk of the Court is respectfully directed to modify the docket sheet to include the above-listed defendants.

4

Part VII at 7. Prison officials also generated "prison disciplinary documents" detailing defendant Vincent's allegation that he found a weapon on plaintiff's person on that date. Am. Compl. at 6; *see also* Exhs. Part I at 4-8, 10, 12. The exhibits attached to plaintiff's amended complaint suggest that the "prison disciplinary documents" include (1) an unusual incident report, (2) a To/From memorandum from defendant Vincent to defendant Vanfleet, (3) a To/From memorandum from defendant Vanfleet to defendant Quinn, and (4) a To/From memorandum from defendant Quimette to defendant Fagan. Exhs. Part I at 4-8, 10. Those documents specifically allege that defendant Vincent found a "razor type weapon wrapped in black tape" in the waistband of plaintiff's pants. *Id.* at 12. On or about March 10, 2016, the "incident was expunged from . . . Plaintiff's institutional record." Am. Compl. at 7. No disciplinary hearing was conducted at Auburn C.F. in connection with defendant Vincent's allegation that plaintiff possessed a weapon on February 28, 2016. *Id.* at 14.

On or about March 8, 2016, defendant Doe No. 11 "turned over prison disciplinary documents" related to the incident involving defendant Vincent on February 28, 2016, to Cayuga County Assistant District Attorney Brian Leeds ("Leeds"). Am. Compl. at 6. On March 8, 2016, Leeds contacted New York State Police Investigator Brett Stover and "direct[ed] him to copy [the contents of the unusual incident report] onto an [sic] felony complaint[.]" *Id*. at 6-7. On March 9, 2016, plaintiff was released from DOCCS custody and immediately re-arrested by New York State Police, charging him with first-degree making/possessing dangerous contraband in prison in violation of New York Penal Law § 205.25. *Id.* at 7.; Exhs. Part I at 11. In November 2016, after a trial, a jury found plaintiff guilty. Am. Compl. at 9.

In or around December 2016 and January 2017, the Cayuga County District Attorney

disclosed to the public that a former Auburn C.F. C.O., Matthew Cornell ("Cornell"), had planted contraband on inmates in or about 2015. Am. Compl. at 10. The inmates who were subjected to Cornell's false accusations were Black and Latino. *Id.* The amended complaint does not allege that Cornell planted any weapons on plaintiff.

### b. Assault by Defendants Mitchell and Doe No. 9

On February 29, 2016, while plaintiff was in the MHU at Auburn C.F., plaintiff "refused to hand over his dinner tray and went to sleep." Am. Compl. at 5. At approximately 4:30PM, plaintiff was assaulted by defendants Mitchell and Doe No. 9. *Id.* at 5-6. More specifically, defendant Doe No. 9 jumped on plaintiff's back, and defendant Mitchell then punched, kicked, kneed, and choked plaintiff without provocation. *Id.* Defendant Doe No. 9 did not intervene to stop defendant Mitchell's assault of plaintiff. *Id.* at 6. Plaintiff was transferred from the MHU to the SHU on March 1, 2016. *Id.* On March 5, 2016, plaintiff was issued a misbehavior report concerning the incident on February 29, 2016. *Id.*

### 2. CCJ

While plaintiff was confined in CCJ on August 24, 2016, he began to eat a bag of potato chips when he realized it contained ants. Am. Compl. at 8. Plaintiff immediately stopped eating the food and notified defendant Wade. *Id.* Defendant Wade "became very disrespect[ful]" towards plaintiff, refused to get him another bag of chips, and ordered him to clean up the mess he had made by spitting the ant-laden chips on the ground. *Id.* Plaintiff submitted a grievance concerning the incident, which was "[a]ccepted." *Id.*; *see also* Exhs. Part I at 13. In approximately the third week of November 2016, defendant Wade issued plaintiff a misbehavior report accusing him of "attempting to block her view of inmates

6

fighting" in retaliation for plaintiff filing a grievance concerning the chip-bag incident in August 2016. Am. Compl. at 10.

For a complete statement of facts, reference is made to plaintiff's amended complaint.

Based on the allegations in the amended complaint, the Court has liberally construed the complaint as asserting claims arising under the First, Eighth, and Fourteenth Amendments.

**C.     Analysis**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

### 1. Previously Asserted Excessive Force, Failure to Intervene, Equal Protection, and Retaliation Claims

In its April Order, the Court determined that, based on a careful review of plaintiff's original complaint, the following claims survived initial review and required a response: (1) plaintiff's Eighth Amendment excessive force and failure to intervene claims asserted against defendants Mitchell and Doe No. 9; (2) plaintiff's First Amendment retaliation claims asserted against defendants Doe No. 11 and Wade; and (3) plaintiff's Fourteenth Amendment equal protection claim asserted against defendant Vincent.[7]  Apr. Order at 32. In his amended

---

[7] Plaintiff's original complaint identified the individual that the amended complaint now refers to as "Doe No. 9" as "Doe No. 10." In addition, plaintiff's original complaint identified the individual that the amended complaint now refers to as "Doe No. 11" as "Doe No. 12" or "Doe No. 13." (The original complaint confusingly

7

complaint, although the allegations supporting those claims are not identical to the allegations in the original complaint, out of special solicitude to plaintiff's pro se status, the Court concludes that those claims should survive review and require a response. This is not a ruling on the merits, and the Court expresses no opinion as to whether those claims as asserted in the amended complaint can survive a properly filed dispositive motion.

As noted in the April Order, because plaintiff's excessive force, failure to intervene, and retaliation claims are asserted against defendants Doe No. 9 and Doe No. 11, whose names are not known to plaintiff, service of process cannot be effected on them unless and until those individuals have been identified by name. If plaintiff wishes to pursue his claims against defendants Doe No. 9 and Doe No. 11, he must take reasonable steps to ascertain through discovery the identities of those individuals. Upon learning the identity of the unnamed defendants, plaintiff must amend the operative complaint to properly name those individuals as parties. If plaintiff fails to ascertain the identities of defendants Doe No. 9 and Doe No. 11 so as to permit timely service of process, all claims against those individuals will be dismissed.[8]

---

referred to the individual responsible for providing plaintiff's prison disciplinary documents to Leeds as both "Doe No. 12" and "Doe No. 13.") To avoid confusion and because the amended complaint is accepted for filing, in this Decision and Order the Court refers to those two individual defendants using the identities provided in the amended complaint (i.e., Doe No. 9 and Doe No. 11).

[8] Rule 4 of the Federal Rules of Civil Procedure requires that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Court's local rules shorten the time for service from 90 days under Rule 4(m) to 60 days. N.D.N.Y. L.R. 4.1(b).

## 2. Fourteenth Amendment Equal Protection Claims

Plaintiff's amended complaint purports to assert equal protection claims against all of the defendants. Am. Compl. at 118-23. The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). To state a viable claim for denial of equal protection, a complaint must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted). In the alternative, under a "class of one" theory, a complaint must allege that the plaintiff has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 291-92 (2d Cir. 2013).

Plaintiff's equal protection claims asserted against defendants Annucci, Bellnier, Maher, Guzylak, Graham, Fagan, Doe No. 2, Doe No. 3, Doe No. 10, Doe No. 11, Doe No. 12, and Doe No. 13 must be dismissed. *See* Am. Compl. at 119-20. The claims are based on allegations that those individuals were aware that Cornell, a former Auburn C.F. C.O., planted contraband on inmates, and because the victims of Cornell's fabricated accusations were Black and Latino, the defendants also targeted plaintiff because he is Black. *Id.* There

9

are no allegations in the amended complaint plausibly suggesting that defendants Annucci, Bellnier, Maher, Guzylak, Graham, Fagan, Doe No. 2, Doe No. 3, Doe No. 10, Doe No. 11, Doe No. 12, or Doe No. 13 aimed any of their conduct towards plaintiff because of his race. Nor are there any allegations to support the plaintiff's speculative belief that defendants' awareness of Cornell's behavior translated into discriminatory conduct by defendants towards plaintiff. Because there are no allegations in the amended pleading to support plaintiff's equal protection claims asserted against defendant Annucci, Bellnier, Maher, Guzylak, Graham, Fagan, Doe No. 2, Doe No. 3, Doe No. 10, Doe No. 11, Doe No. 12, and Doe No. 13, those claims are dismissed.

Plaintiff's allegations against defendants Doe No. 4, Doe No. 5, Doe No. 6, Doe No. 7, Doe No. 8, Brooks, Ashby, Sweet, Quinn, and Vanfleet are also subject to dismissal. *See* Am. Compl. at 121-22. The amended complaint alleges that these defendants either did nothing to stop defendant Vincent from falsely accusing plaintiff of possessing contraband or did nothing to cure the false allegation once it was rendered. *Id.* Plaintiff then alleges that "[t]here is no proof that the defendants . . . ever applied such confederation like rule[s] to an [sic] white inmate and your plaintiff believe's [sic] that he was singled out because he is young and black." *Id.* at 122. Plaintiff's conclusory and speculative "belief" that defendants discriminated against him is not sufficient to support a cognizable equal protection claim.

Lastly, plaintiff alleges that defendants Mitchell and Doe No. 11 violated his equal protection rights because "the[re] is no proof that defendant Mitchell ever assaulted any other inmate but[] an [sic] black or latino inmate . . . . The same could be said about defendant John Doe No. 11." Am. Compl. at 123. Even liberally construed, these allegations are nonsensical and do not support any cognizable constitutional claim.

10

For all of the foregoing reasons, plaintiff's equal protection claims asserted against defendants Annucci, Bellnier, Maher, Guzylak, Graham, Fagan, Brooks, Ashby, Sweet, Quinn, Vanfleet, Mitchell, Doe No. 2, Doe No. 3, Doe No. 4, Doe No. 5, Doe No. 6, Doe No. 7, Doe No. 8, Doe No. 10, Doe No. 11, Doe No. 12, and Doe No. 13 are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).[9]

### 3. Fourteenth Amendment Due Process Claims

The primary focus of plaintiff's amended complaint is aimed at allegations supporting his Fourteenth Amendment due process claims asserted against defendants Annucci, Bellnier, Graham, Fagan, Vincent, Quinn, Vanfleet, Quimette, Guzylak, Ashby, Sweet, Doe No. 2, Doe No. 3, Doe No. 4, Doe No. 5, Doe No. 6, Doe No. 7, Doe No. 8, Doe No. 10, Doe No. 11, Doe No. 12, Doe No. 13, and Doe No. 14. Am. Compl. at 12-76. To establish a procedural due process claim under Section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

In summary, plaintiff alleges that defendants Annucci, Bellnier, Graham, Fagan, Vincent, Quinn, Vanfleet, Quimette, Guzylak, Ashby, Sweet, Doe No. 2, Doe No. 3, Doe No. 4, Doe No. 5, Doe No. 6, Doe No. 7, Doe No. 8, Doe No. 10, Doe No. 11, Doe No. 12, Doe No. 13, and Doe No. 14 violated his right to procedural due process because he was not

---

[9] As discussed above in part II.C.1. of this Decision and Order, plaintiff's equal protection claim asserted against defendant Vincent survives initial review and requires a response.

11

provided a disciplinary hearing in connection with defendant Vincent's allegation that he discovered a weapon on plaintiff on February 28, 2016, and instead was subjected to criminal prosecution by the Cayuga County District Attorney. Am. Compl. at 12-76. Although it is true, as plaintiff alleges, that prison inmates are generally entitled to a disciplinary hearing and other procedural protections when accused of violating prison rules, *see, e.g., LaBounty v. Coombe*, No. 95-CV-2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001), that liberty interest is triggered only when inmates are subjected to prison sanctions for the violation. By plaintiff's own admission, however, a disciplinary hearing was never conducted while he was incarcerated, nor was plaintiff disciplined in a prison disciplinary context for allegedly possessing contraband on February 28, 2016. Am. Compl. at 44. Instead, according to plaintiff, defendant Doe No. 11 forwarded an unusual incident report describing plaintiff's possession of contraband on that date to the Cayuga County District Attorney, and plaintiff was thereafter prosecuted for a crime in Cayuga County Court. *Id.* at 45. The Due Process Clause certainly does not protect inmates against criminal prosecution when they commit crimes in prison. In any event, because plaintiff was prosecuted for a crime, he was afforded more procedural protections in county court than he would have been afforded in the prison context had he been subjected to a disciplinary hearing. To the extent that plaintiff contends that his SHU confinement between approximately March 1, 2016 (when he was released from the MHU at Auburn C.F.) and March 9, 2016 (when he was re-arrested by New York State Police for first-degree making/possessing dangerous contraband in prison after his release from DOCCS's custody) violated his right to due process, this claim also fails. It is well settled that, absent any allegations that the conditions of disciplinary confinement were atypical, 30 days or less

12

of disciplinary confinement does not trigger a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 485-86 (1995). In this case, plaintiff's amended complaint does not allege any specific conditions concerning his SHU confinement before being released from DOCCS's custody and arrested by state police on March 9, 2016.

Accordingly, because plaintiff's amended complaint does not allege facts plausibly suggesting that any of the defendants violated his due process rights, plaintiff's due process claims are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's amended complaint (Dkt. No. 14) is **ACCEPTED FOR FILING only to the extent** that it asserts (1) Eighth Amendment excessive force and failure to intervene claims against defendants Mitchell and Doe No. 9, (2) First Amendment retaliation claims against defendants Doe No. 11 and Wade, and (3) a Fourteenth Amendment equal protection claim asserted against defendant Vincent; and it is further

**ORDERED** that, except as to the foregoing, the claims asserted in the amended complaint are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk of the Court shall modify the docket to include only those defendants that are listed in Part II.B. of this Decision and Order; and it is further

**ORDERED** that plaintiff shall take reasonable steps through discovery to ascertain the identities of defendants Doe No. 9 and Doe No. 11. **Plaintiff's failure to timely serve those defendants will result in dismissal** of the claims asserted against them and

13

termination of those defendants from the action; and it is further

**ORDERED** that the Clerk of the Court shall terminate all of the defendants from the action except for defendants Mitchell, Wade, Vincent, Doe No. 9, and Doe No. 11; and it is further

**ORDERED** that, **within 30 days** of the date of this Decision and Order, plaintiff shall submit (1) three copies of his amended complaint and exhibits for the United States Marshal to effect service of process upon defendants Mitchell, Wade, and Vincent; and (2) three completed USM-285 forms; and it is further

**ORDERED** that, upon receipt from plaintiff of the documents required for service (i.e., copies of the complaint and exhibits and completed USM-285 forms), the Clerk of the Court shall issue summonses and forward them, along with a copy of the amended complaint, to the United States Marshal for service upon defendants Mitchell, Wade, and Vincent. The Clerk shall forward a copy of the summonses and amended complaint and exhibits by mail to the Office of the New York State Attorney General and the Cayuga County Attorney, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the amended complaint shall be filed by defendants Mitchell, Wade, and Vincent or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with all requests by the

Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with rule 7.1 of the Local Rules of Practice for the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** the Clerk shall serve on plaintiff, by regular mail a copy, of this Decision and Order, along with a copy of any unreported cases cited to in this Decision and Order.
**IT IS SO ORDERED.**

Dated: October 10, 2019

Brenda K. Sannes
U.S. District Judge

## Exhibits to the Amended Complaint

| DKT. NO. | EXHIBIT | DESCRIPTION | ECF PAGE |
|---|---|---|---|
| **Dkt. No. 14-1** | A | DOCCS strip frisk report | 2 |
| | B | (1) Unusual incident report | 4-7 |
| | | (2) Memo from Vanfleet to Quinn | 8 |
| | | (3) Auburn C.F. inter-dept memorandum | 9 |
| | | (4) Memorandum from Quimette to Fagan | 10 |
| | | (5) Cayuga County felony complaint | 11 |
| | | (6) Memorandum from Vincent to Vanfleet | 12 |
| | | (7) CCJ grievance response | 13 |
| | E | Auburn C.F. unusual incidents list (Sept 2015-Sept 2016) | 15-16 |
| | F | Syr.com article ("DA: Auburn prison [CO] planted . . .") | 18-19 |
| | G | Syr.com article ("5 Auburn prisoners cleared after . . .") | 21-22 |
| | H | (1) Plaintiff's letter to OSI dated 4/17/2018 | 24-26 |
| | | (2) Plaintiff's letter to Bellnier dated 4/19/2018 | 27-28 |
| | | (3) Plaintiff's letter to Graham dated 4/19/2018 | 29-31 |
| | I | DOCCS Directive 4932 | 33-51 |
| **Dkt. No. 14-2** | J | DOCCS Directive 4910A | 2-12 |
| | | DOCCS Directive 4910A (duplicate) | 14-24 |
| | K | DOCCS Directive 4910 | 26-47 |
| | L | DOCCS Directive 6910 | 49-52 |
| | M | Police report by Inv. Stover | 54-55 |
| | N | Evidence/property chain of custody | 57-58 |
| **Dkt. No. 14-3** | O | DOCCS employees manual | 2-63 |
| | | (Duplicate of employee manual) | 64-125 |
| | P | (1) Records certification by Guzylak | 127 |
| | | (2) Auburn C.F. arrival interview 7/11/15 | 128 |
| | | (3) DOCCS inmate photo | 129 |

| | | | |
|---|---|---|---|
| **Dkt. No. 14-4** | Q | Transcript from Auburn City Court preliminary hearing | 2-36 |
| | R | Plaintiff's disciplinary history | 38-39 |
| **Dkt. No. 14-5** | S | (1) Reception classification printouts<br>(2) Cayuga County Sheriff custody timeline | 2, 4<br>3 |
| | T | Plaintiff's letter to Guzylak dated 4/17/2018 | 6-7 |
| | U | Plaintiff's letter to Robinson dated 5/3/2018 | 9-11 |
| | V | Plaintiff's letter to Auburn C.F. Evidence Control Supervisor dated 4/22/2018 | 13-17 |
| | W | Plaintiff's letter to Auburn C.F. Criminal Prosecution Liaison dated 4/17/2018 | 19-21 |
| **Dkt. No. 14-6** | X | Grand jury testimonies by Vincent and Guzylak | 2-17 |
| | Y | Arrest sheet | 19-20 |
| | Z | Arrest warrant | 22 |
| **Dkt. No. 14-7** | i | Syr.com article ("Ex-prosecutor: Cayuga County DA . . .") | 2-5 |
| | ii | Inmate misbehavior report issued to plaintiff by Vincent | 7 |
| | iii | Request for urinalysis | 9 |
| | iv | Plaintiff's DOCCS facility transfer record | 11 |
| | v | Plaintiff's internal movement history at Auburn C.F. | 13 |