# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

J'KENDRIC JIRELLE AGEE,

Plaintiff,

9:19-CV-57
(BKS/ATB)

v.

MR. ANDREW CUOMO, et al.,

Defendants.

---

J'KENDRIC JIRELLE AGEE, Plaintiff, pro se
AIMEE COWAN, Asst. Attorney General for New York State Defendants
JASON RICHMAN, ESQ., Attorney for Defendant Wade

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

## I.    <u>Procedural History</u>

This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge.  On January 16, 2019, plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging that various employees of the Department of Correctional and Community Services ("DOCCS") and Cayuga County violated his constitutional rights during his confinement at Auburn Correctional Facility ("C.F.") and Cayuga County Jail. (Complaint ("Compl."), Dkt. No. 1).  By Decision and Order dated April 24, 2019, Judge Sannes dismissed several defendants and causes of action pursuant to 28 U.S.C. §§ 1915, 1915A.  (Dkt. No. 11).

On June 12, 2019, plaintiff filed an amended complaint, which Judge Sannes

accepted in part for filing.  (Amended Complaint ("Am. Compl."), Dkt. No. 14; Dkt.

No. 16).  Liberally construed, the surviving claims in plaintiff's amended complaint

include (1) Eighth Amendment excessive force and failure to intervene claims against

defendants Correctional Officer ("C.O.") Troy Mitchell and John Doe No. 9;[1] (2) First

Amendment retaliation claims against defendants Doe No. 11 and C.O. Wade; and (3) a

Fourteenth Amendment equal protection claim against defendant C.O. Keith Vincent

("Vincent").  (Dkt. No. 16 at 13).

On March 23, 2020, I issued an Order and Report-Recommendation,

recommending that the court deny defendant Vincent's motion to dismiss for failure to

state a claim relative to plaintiff's equal protection claim. (Dkt. No. 54).  Judge Sannes

adopted my recommendation on April 20, 2020. (Dkt. No. 56). *See Agee v. Cuomo*, No.

19-CV-57, 2020 WL 1916695 (N.D.N.Y. Mar. 23, 2020), *rep't-rec. adopted sub nom.*

*Agee v. Mitchell*, No. 19-CV-57, 2020 WL 1914957 (N.D.N.Y. Apr. 20, 2020).

Presently before the court is a motion for summary judgment pursuant to Fed. R.

Civ. P. 56, filed on behalf of defendants Vincent and Mitchell. (Dkt. No. 63).[2]  The

motion also makes arguments for dismissal on behalf of John Doe No. 9 and John Doe

---

[1] The court notes that there were two John Doe No. 9 defendants referenced in this action.  One John Doe No. 9 was referred to as Mr. John Doe No. 9 and the other was simply John Doe No. 9. Although it appears from the amended complaint that the individual against whom the Eighth Amendment claim remains open is Mr. John Doe No. 9 (*see* Am. Compl. ¶ 32), he was terminated as a defendant.  The termination of the wrong John Doe does not affect this court's decision because I am recommending dismissal as against John Doe No. 9 as if he were the individual who was involved in the alleged assault.

[2] C.O. Wade is an employee of Cayuga County and has made motion for summary judgment (Dkt. No. 68) which I will address in a separate Report-Recommendation.

No. 11.  Plaintiff responded in opposition to the motion,[3] and defendants have filed a reply. (Dkt. Nos. 71, 72).

## II.  **Facts**

The court will briefly review the relevant facts as stated in the amended complaint to discuss plaintiff's equal protection claim against C.O. Vincent, the retaliation claim against John Doe No.11, and the excessive force claim against C.O. Mitchell and John Doe No. 9.  On February 28, 2016, ten days before plaintiff was scheduled to be released from DOCCS's custody, former defendants C.O. Sweet and C.O. Ashby arrived at plaintiff's cell to escort him to recreation.  (Am. Compl. at ¶¶ 25-26).  C.O. Sweet and C.O. Ashby conducted a pat-frisk of plaintiff before "walk[ing] [him] down the company where their [sic] were several other C.O.'s [sic][,]" including C.O. Vincent.  (*Id.* at ¶ 26).  At that time, C.O. Vincent directed plaintiff to "put his hands behind his back."  (*Id.*).  When plaintiff did not immediately comply and questioned the directive, C.O. Sweet repeated the order.  (*Id.*).  Plaintiff complied, at which time he heard C.O. Vincent tell former defendant Lieutenant ("Lt.") Ray Vanfleet that he had found a weapon in plaintiff's boot.  (*Id.* ¶ 27).  Plaintiff "became very sad" when he heard what C.O. Vincent said to Lt. Vanfleet and, for that reason, was taken to the mental health unit ("MHU"). (*Id.*)  C.O. Vincent subsequently prepared a misbehavior report concerning the incident, alleging that he found a "razor type weapon wrapped in

---

[3] It is unclear whether the document filed by plaintiff is a response to defendant Vincent's motion.  The caption of the document contains the title "The United States Court of Appeals Second Circuit," but also contains the title "Answer to Summary Judgment." (Dkt. No. 71).  In the first sentence, plaintiff states that he "takes the herein appeal," but later discusses his opposition to "the motion." (*Id.*)  Although very confusing, the court will assume that plaintiff is attempting to oppose defendants' motion and will discuss plaintiff's submission accordingly.

black tape" in the waistband of plaintiff's pants.[4]  (Dkt. No. 14-1 at 7).

      On February 29, 2016, while plaintiff was in the MHU, he "refused to hand over his dinner tray and went to sleep." (Am Compl. ¶ 29).  Plaintiff then states that, at 4:30 p.m., he was awakened when he heard his cell door opening, but he did not move, or even attempt to see who came into the cell. (Am. Compl. ¶ 30).  Plaintiff states that he felt a "very large person jump on his back," "body slam[ming] him to the ground." (Am. Compl. ¶ 30).  Plaintiff claims that defendant Doe No. 9 jumped on plaintiff's back, but then "backed off," while defendant Mitchell punched, kicked, kneed, and choked plaintiff without provocation. *Id*.  Defendant Doe No. 9 did not intervene to stop defendant Mitchell's assault of plaintiff. (Am. Compl. ¶¶ 31-32). Plaintiff was transferred from the MHU to the SHU on March 1, 2016. (Am. Compl. ¶ 33). On March 5, 2016, plaintiff alleges that he was issued a misbehavior report concerning the February 29, 2016 incident. (Am. Compl. ¶ 34).

      Plaintiff also alleges that "prior to March 8, 2016, John Doe No. 11 turned over "prison disciplinary documents to the People of the State of New York with the intentions [sic] that such documents be used to punish your plaintiff." (Am. Compl.    ¶ 35, 61).  Plaintiff states that on March 9, 2016, based on those documents, instead of being released on parole, he was arrested and criminally charged with Promoting Dangerous Prison Contraband in the First Degree. (Am. Compl. ¶ 37).  The plaintiff's

---

[4] Plaintiff was thereafter criminally charged with, and prosecuted for, first-degree making/possessing dangerous contraband in prison, in violation of New York Penal Law § 205.25. (Am. Compl. at ¶¶ 35-39, 41, 44-47).  Plaintiff was found guilty after a November 2016 jury trial.  (*Id*. at ¶ 48).

"retaliation" claim against John Doe No. 11 is based on this alleged conduct.[5]

Further facts about this part of plaintiff's case were developed on discovery. Discovery materials, including plaintiff's deposition, have been attached to defendant Vincent's and Mitchell's motion for summary judgment. (Dkt. No. 63-2, Exhibits A-J). I will discuss these additional facts as relevant to my analysis below. Defense counsel has also attached the declarations of Auburn Inmate Grievance Supervisor Cheryl Parmiter and Assistant Director of the Inmate Grievance Program for DOCCS, Rachael Seguin. (Dkt. Nos. 63-15 - 63-18).

## III.   Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

---

[5] Plaintiff's original complaint contained a much more specific retaliation claim against John Doe 12 or 13. (Compl. at pp. 59-60). The claims was discussed in Judge Sannes's April 2019 initial order. (Dkt. No. 11 at 20). The amended complaint referred to this unknown defendant as John Doe No. 11 and did not discuss retaliation specifically. (Am. Compl. ¶ 57). Plaintiff instead focused on his alleged due process violation, claiming that by referring the information for prosecution, he was deprived of his disciplinary hearing and various other related claims. (Am. Compl. ¶ 57-61). When Judge Sannes reviewed the amended complaint, she noted that the claims against John Doe No. 11 were not "identical" to those in the original complaint, but in an abundance of caution, ordered a response to the original retaliation claims. (Dkt. No. 16 at 7-8).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## IV.    Exhaustion of Administrative Remedies

### A.    Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), abrogated on other grounds by *Ross v. Blake*, 380 F. 3d. 670 (2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The Supreme Court has held that in order to properly exhaust an inmate's

administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (i), 701.5.

A similar expedited procedure exists for claims based on allegations of unlawful discrimination. *Id.* §§ 701.9 & 701.5. In cases where an inmate alleges unlawful discrimination based on race, nationality, disability, sex or sexual orientation, religion,

age, or political belief, the grievance is forwarded directly to the Superintendent of the facility with a copy to the Office of Diversity Management. *Id.* § 701.9(c).  The Superintendent will conduct an investigation, and any decision may be appealed to the CORC within 7 days of the Superintendent's response.[6] *Id.* § 701.9(e), 701.9(f).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016).  "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857).  Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability.  *Ross*, __

---

[6] If the Superintendent fails to respond within 25 days of receiving the grievance, the inmate may appeal to the CORC without the Superintendent's decision. 7 N.Y.C.R.R. § 701.(f).

U.S. at __, 136 S. Ct. at 1858.  Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

### B.    Analysis

Defendants argue that plaintiff has failed to exhaust his administrative remedies as to both the February 28, 2016 incident and as to the February 29, 2016 excessive force incident.  With respect to the February 28, 2016 incident, defendants argue that plaintiff never filed a grievance challenging defendant Vincent's actions in allegedly planting a weapon on the plaintiff.  With respect to the February 29, 2016 excessive force claim, defendants concede that plaintiff filed a grievance regarding the incident, but failed to appeal the Superintendent's denial to the CORC.

### 1.    February 28, 2016 Incident (defendant Vincent)

In support of their argument that plaintiff did not file a grievance, complaining of defendant Vincent's conduct on February 28th, defendants have filed the declarations of Auburn's IGP Supervisor Cheryl Parmiter and DOCCS Assistant IGP Director Rachael Seguin. (Dkt. Nos. 63-15 - 63-18).  IGP Supervisor Parmiter states that plaintiff never filed a grievance with respect to the February 28th incident, and IGP Director Seguin states that plaintiff never appealed any grievance related to the February 28th incident to the CORC. (Parmiter Decl. ¶¶ 8, 9 & Ex. A; Seguin Decl. ¶ 12 & Ex. A).

IGP Supervisor Parmiter states that Auburn had a fully functional grievance program, and that inmates in both SHU and MHU could file grievances while housed in those units. (Parmiter Decl. ¶¶ 4, 5).  Pursuant to 7 N.Y.C.R.R. § 701.7 (DOCCS Directive No. 4040), inmates in these units could request a grievance form, and an IGP

staff member was required to make weekly rounds to all cells in MHU and SHU, at which time, those inmates could submit their grievances for filing. (*Id.*)

While it appears clear that plaintiff did not file a grievance regarding the February 28th incident,[7] more facts surrounding the incident are relevant to this issue and to whether the remedy was "available" to plaintiff.  Although plaintiff did not remember seeing or receiving a misbehavior report regarding the incident, one of the exhibits attached to the amended complaint is the misbehavior report signed on February 28, 2016 by defendant Vincent describing the incident. (Pl.'s Ex. ii) (Dkt. No. 14-7 at 7). Plaintiff's claim of "discrimination" alleges that defendant Vincent planted the weapon on plaintiff because he was black and nearing release, so that his release would be delayed.  The allegations that the weapon was planted would necessarily form the basis for plaintiff's defense at any subsequent disciplinary hearing, regardless of the guard's motivation for planting the contraband.

The regulations specifically provide that certain matters are not grievable, including matters that will be decided through established procedures for disciplinary actions. 7 N.Y.C.R.R. §§ 701.3(c)(2) (non-grievable matters), 701.5(b)(4)(i)(2) (when the IGRC may dismiss a grievance)).  The court also notes that plaintiff was admitted to MHU after the February 28, 2016 incident, and he was allegedly assaulted on February 29, 2016, an incident about which he did file a grievance.  The February 28th misbehavior report was later dismissed in lieu of prosecution by felony complaint, and plaintiff was arrested in his cell on March 9, 2016 for possessing prison contraband on

---

[7] Plaintiff testified that he was not sure whether he filed a grievance challenging defendant Vincent's actions, regardless of Vincent's motivation for those alleged actions. (Pl.'s Dep. at 93).

the day that he would have been released from incarceration. At that time, he was transferred to Cayuga County Jail for further proceedings on the prison contraband prosecution. (*See* Def.s' Ex. D) (NYS State Police Incident Report and Related Information). Plaintiff was removed from DOCCS custody only nine days after the February 28th incident. He was not returned to DOCCS custody for almost one year while the state court prosecution was pending.

It is clear that filing a grievance which challenged defendant Vincent's actions would not have even been considered by the IGRC, given that plaintiff's claims were intimately related with the validity of the disciplinary action and the criminal complaint. Clearly, the claim that defendant Vincent planted the weapon would not have been resolved in a grievance, particularly when plaintiff had already been transferred to another jurisdiction for prosecution on the same facts that formed the basis for the grievance. Thus, I find that the grievance procedure was "unavailable" to plaintiff to challenge the February 28, 2016 incident.

Defendants cite *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2004) and argue that plaintiff was required to exhaust his administrative remedies even though he was transferred out of the facility and did not return for a year, even if he was returned to the facility on different charges. The court first notes that *Berry* involved the New York City Department of Corrections, and there is no indication if there were any time limits on filing grievances.[8] The court in *Berry* also stated in a footnote that "[w]e have no

---

[8] DOCCS regulations provide strict time limits for grievances. They must be filed within 21 days of the incident, and even if the time is extended, it may not be extended for more than 45 days. 7 N.Y.C.R.R. § 701.5(a) (21-day time limit), 701.6(g)(1)(i)(a) (no extensions if request made more than 45 days after the occurrence).

occasion to consider the exhaustion requirement in situations where only a brief interval elapses between the episode giving rise to the prisoner's complaint and the prisoner's transfer to the custody of another jurisdiction." *Id.* at 88 n.3.  Berry remained at the facility for months "after the onset of the conditions that gave rise to his complaints and prior to his release." *Id.* at 88.  The court stated that, as long as plaintiff was in the custody of the agency against which he had grievances, he was required to use the "available" grievance procedures. *Id.*  Plaintiff in this case was transferred to the custody of another jurisdiction nine days after the incident and was not returned to DOCCS custody for approximately one year.  Thus, by its own statement, *Berry* does not apply to this case.

Even though this court finds that the administrative remedies were not "available" to plaintiff, excusing his failure to exhaust those remedies, plaintiff's claims relating to the February 28, 2016 incident are not cognizable in this section 1983 action.  As discussed further below, plaintiff claim that defendant Vincent planted a weapon on him is, in essence, a challenge to his criminal conviction for possession of that weapon.  However, until plaintiff's conviction is overturned on appeal or invalidated by a petition for habeas corpus, he may not bring an action for monetary damages based on defendant Vincent's alleged conduct under *Heck v. Humphrey*, 512 U.S. 477 (1994).[9]

### 2. February 29, 2016 Incident (defendant Mitchell and John Doe No. 9)

Plaintiff did file a grievance, alleging that on February 29, 2016, while plaintiff

---

[9] Defendants also argue that plaintiff's equal protection claim fails on the merits, an argument which the court will also discuss below.

was confined to MHU, defendant Mitchell, accompanied by other officers,[10] used excessive force on him because he was unresponsive when they asked for his meal tray. Defendants argue that plaintiff failed to exhaust his administrative remedies because he did not appeal the Superintendent's denial of the grievance to the CORC. Defendants have attached the plaintiff's grievance and the Superintendent's decision to their motion for summary judgment. (Def.s' Ex. I) (Dkt. No. 63-10). Exhibit I also includes the Use of Force Report, the report of a medical examination which followed the use of force against plaintiff on February 29, 2016, and a misbehavior report, issued after the incident which charged plaintiff with violent conduct and making threats. (*Id*.)

Plaintiff signed his grievance on March 6, 2016, but it was not received by the IGRC/Superintendent until March 9, 2016, the day that plaintiff was arrested and transferred to Cayuga County custody for prosecution on the prison contraband charges. (Ex. I at CM/ECF p.11) (plaintiff's date and IGRC date-stamp). Although the officers involved submitted statements regarding the use of force, a report by Lieutenant M. Ouimette, dated March 14, 2016 states that he was unable to interview the plaintiff because he did not write the grievance until March 6, 2016 even though he was transferred to SHU from MHU on March 1. (Def.s' Ex. I at CM/ECF p.2). Lt. Ouimette states that, plaintiff was "paroled"[11] on March 9, 2016, and that plaintiff could have

---

[10] The only named defendant in this incident is Mitchell. John Doe No. 9 was never served, even though plaintiff's grievance and his misbehavior report named another officer who allegedly entered plaintiff's cell with defendant Mitchell and who allegedly participated in the use of force. (Def.'s Ex. I at CM/ECF p.11). Defendants argue that the amended complaint should be dismissed as against John Doe No. 9 based on the lack of identification and service.

[11] As stated above, plaintiff was not paroled on March 9, 2016. He was arrested and transported to Cayuga County for prosecution. He remained incarcerated the entire time, even though he was transferred to another jurisdiction.

written the grievance on March 1st.  Lt. Ouimette reviewed written reports by defendant Mitchell and the other officer, stating that they used force because plaintiff was laying on his bed "unresponsive."[12]  Lt. Ouimette stated that based on the plaintiff's decision to delay the filing of his grievance, Ouimette believed that the grievance was filed "for harassment and not for resolution." (*Id.*)

The Superintendent echoed this finding in his March 17, 2016 decision. (Def.s' Ex. I at CM/ECF p.1).  The Superintendent's decision repeats the mistake made by Lt. Ouimette by stating that force was used "as he was unresponsive when the [sic] entered his cell" and states that plaintiff must have filed the grievance for "harassment" rather than resolution. (*Id.*)  Assistant Director Seguin states that her records show that plaintiff did not appeal the Superintendent's decision to the CORC. (Seguin Decl. ¶ 12 & Ex. A).

It appears that plaintiff did not appeal his grievance to the CORC.  There is no indication that plaintiff was ever sent the Superintendent's decision at his Cayuga County facility so that he could appeal.  All the reports attached to the Superintendent's decision state that plaintiff was "paroled" on March 9, 2016.  If, in fact, they believed that the plaintiff had been "paroled," there is a specific regulation applicable to a grievance decision issued after the inmate is released or paroled, which is separate from the procedure for processing grievances after an inmate has been transferred to another DOCCS facility. *Compare* 7 N.Y.C.R.R. § 701.6(h) (processing grievances and appeals

---

[12] Clearly, that cannot be what this officer meant to write, because a use of force would not be justified on an individual who was simply "unresponsive."  It is a misstatement of the reports, which state that plaintiff became violent when one of the officers shook him to see if he was alright.

after transfer) *with* 7 N.Y.C.R.R. § 701.6(i) (processing grievances pending at release or parole).

When an inmate is released or paroled, there are two options.  In cases pending before the IGRC, if the IGRC determines by a majority that the grievance affects the entire institution, and the CORC has not decided the issue within the last year, the IGRC provides a recommended decision to the Superintendent for determination. *Id.*  §  701.6(i)(1).  If the grievance affects only the inmate himself, and he is released or paroled, the grievance is subject to dismissal pursuant to section 701.5(b)(4).[13] *Id.*  The section also provides that the reasons for dismissal shall be specifically stated, and shall "where appropriate" refer the grievant to existing mechanisms for resolution.[14] 701.5(b)(4)(ii).  The section does provide for an appeal of the decision to dismiss pursuant to this section, if the inmate believes that his case is not subject to dismissal on one of the bases stated. 701.5(b)(4)(iii).  The appeal must be taken within seven calendar days of the IGRC's decision to dismiss. *Id.* This section does not apply to plaintiff because his grievance followed the expedited procedure providing for initial review by the Superintendent.

The second option is for grievances pending at the Superintendent's level when an inmate is released or paroled.  The Superintendent must make a recommendation on

---

[13] Section 701.5(b)(4) provides for dismissals of non-grievable and related dismissals.  Section (b)(4)(e) provides that a grievance will be dismissed if "the grievance is institutional in nature and only affects or no longer affects a grievant who has been released or paroled (see section 701.6[i] of this Part)."

[14] This part of the regulations applies to grievances which should be resolved through other departments or procedures such as grievances challenging disciplinary actions.

any "departmental"[15] grievance and forward it to the IGP Supervisor, and "[t]he superintendent shall make a determination in all other cases." 7 N.Y.C.R.R. § 701.6(i) (2).  Upon receipt of the Superintendent's response,[16] the IGP Supervisor "shall forward all case materials to the CORC for final disposition." 7 N.Y.C.R.R. § 701.6(i)(3).  Thus, it appears that in a departmental grievance, the inmate need not appeal because the Superintendent is directed to send his or her determination directly to the CORC for "final disposition."  With respect to all other grievances, the regulations simply provide that the Superintendent shall "make a determination."  There is no provision for what happens when the Superintendent does so, and there is no provision for the determination to be mailed to the inmate who was "released" or "paroled."  This is in stark contrast to the procedure followed when an inmate has been "transferred." 7 N.Y.C. R.R. § 7 N.Y.C.R.R. § 701.6(h)(1), which specifically provides that "[a]ny response to a grievance filed by an inmate who has been transferred shall be mailed directly to that inmate, via privileged correspondence, at his/her new facility or location."

It is clear that plaintiff's grievance against defendant Mitchell and John Doe No. 9 was not a departmental grievance, thus the automatic appeal would not have applied in his case.  It is also unclear whether plaintiff was ever sent the Superintendent's determination of his harassment grievance because plaintiff was not "transferred" to

---

[15] 7 N.Y.C.R.R. § 701.2(b) provides that a "Departmental grievance [is] a grievance which affects an inmate during his/her confinement at various facilities throughout the department."

[16] The court assumes that this refers to the Superintendent's disposition in "departmental" grievances.

another DOCCS facility, he was not "paroled," but he was "released" to another jurisdiction for prosecution, even though the grievance documents state that he was "paroled." Thus, it is likely that plaintiff never was sent a copy of the Superintendent's decision, and even if he was sent a copy of the decision, there is no provision for an inmate to "appeal" such decision after he has been "released."[17]

Based on the above discussion, I find that the appeal procedure was "unavailable," either because it did not exist, or if it existed, it was so "opaque" as to prevent its use by the inmate. *See Ross*, 136 S. Ct. at 1859-60 (finding that exhaustion is not required if "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (quoting *Ross*, *supra*). Thus, this court will not recommend dismissal of plaintiff's claims against defendant Mitchell and John Doe No. 9 for failure to exhaust. The court will now turn to a discussion of defendants' arguments on the merits of the plaintiff's pending claims.

## V.    Equal Protection Claim

### A.    *Heck v. Humphrey*

As noted above, plaintiff's equal protection claims are not yet cognizable in a section 1983 action for damages pursuant to *Heck v. Humphrey*. Plaintiff concedes in

---

[17] Technically, plaintiff was "released" from DOCCS custody to Cayuga County custody to be prosecuted for the prison contraband charge. The fact that he was arrested by the county officers in his DOCCS cell does not change the fact that he was no longer in state custody. He was not simply "transferred" to another state facility. While an inmate who files a grievance while incarcerated and is thereafter released, is still subject to the exhaustion requirement, this has been applied when the inmate had "ample opportunity to exhaust." *Berry*, 366 F.3d at 88. As stated above, the incident forming the basis for the grievance happened only nine days before he was taken out of DOCCS custody. The court does not find that plaintiff had "ample opportunity" to exhaust.

his amended complaint, and the defendants' exhibits make clear, that plaintiff was convicted after a jury trial of promoting prison contraband, first degree under New York Penal Law § 205.25(2).[18] (Def.'s Exs. C & D at 3).  At his deposition on June 12, 2020, plaintiff testified that his criminal appeal was still pending. (Pl.'s Dep. at 89-90).  In his response to defendants' motion for summary judgment, plaintiff details a great deal of state court procedures that he followed, apparently challenging his conviction, but does not indicate that he was successful in any of these challenges. (Dkt. No. 71 at ¶¶ 33-56).[19]

Civil lawsuits may not be used to collaterally attack criminal convictions. *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

In this case, plaintiff claims that defendant Vincent planted the weapon on him because he was black,[20] and that plaintiff never saw the weapon until the trial.  At his

_____

[18]  This section provides that a person is guilty of promoting prison contraband in the first degree when "[b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any dangerous contraband." N.Y. Penal Law § 205.25(2).

[19]  Plaintiff also filed another case in the Northern District of New York, making many of the same claims that he makes in this action against different defendants, including Assistant District Attorney Leeds and various New York State Police Investigators. *Agee v. Cuomo*, No. 9:19-CV-195 (MAD/ML).  The case was dismissed on July 15, 2019, and plaintiff's motion to amend was denied on October 21, 2019. (*Id.* Dkt. No. 11).

[20]  Plaintiff claims that defendant Vincent and other officers would wait until an African American or Latino inmate was nearing parole release and would plant a weapon on the inmate to delay such release. (Pl.'s Dep. at 78).

deposition, plaintiff testified that DNA evidence would show that he never touched or possessed the weapon. (Pl.'s Dep. at 71, 76-78). Plaintiff testified that he did not have a razor blade. (Pl.'s Dep. 68-69, 71).

At his deposition in this case, plaintiff specifically stated that he testified at his criminal trial that the weapon was planted on him. (Pl.'s Dep. at 91). The claim pending before the court is for an equal protection violation based upon the officer's motivation in planting the weapon on plaintiff and other African American and Latino inmates. However, a decision in plaintiff's favor in this civil rights action, that defendant Vincent planted the weapon because of plaintiff's race, would strike at the heart of plaintiff's criminal conviction, given his stated testimony at trial. In fact, a review of the plaintiff's response to defendants' summary judgment motion shows that he is essentially challenging his criminal conviction, complaining about the testimony at trial, and asserting that all the New York State courts before which he has appeared have denied him due process. (Dkt. No. 71). However, until plaintiff's conviction is overturned on appeal or invalidated by a petition for habeas corpus, he may not bring an action against defendant Vincent for monetary damages based on his alleged conduct, regardless of the motivation for that conduct. Thus, the claim against defendant Vincent may not be dismissed based upon failure to exhaust, but may be dismissed based on *Heck v. Humphrey*.[21]

---

[21] The court also notes that even if plaintiff's conviction were to be overturned, it does not necessarily follow that he could establish an equal protection violation because if defendant Vincent did plant a weapon on plaintiff, his conviction could be overturned regardless of any motivation for Vincent's conduct. Plaintiff would have to come forth with additional evidence showing that there was a racial motivation behind defendant Vincent's actions.

19

### B.    Legal Standards–Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (This constitutional provision is "essentially a direction that all persons similarly situated be treated alike.")).

An equal protection claim may be pled in a number of different ways. First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.' " *Kisembo v. NYS Office of Children and Family Servs.*, 285 F. Supp. 3d 509, 523 (N.D.N.Y. 2018) (quoting inter alia *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000)).  Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *Id.* (quoting *Brown v. City of Oneonta, N.Y.*, 221 F.3d at 337)) (citation omitted).  Third, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Id.* at 523–24 (quoting *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. Aug. 12, 2013)) (citation omitted).  A plaintiff alleging an equal protection claim under any of these theories "generally need not plead or show the disparate treatment of other similarly situated individuals."  *Pyke v. Cuomo*, 258 F.3d 107, 108–09 (2d Cir. 2001).

Alternatively, to plead an equal protection violation "a plaintiff may assert a 'selective enforcement' claim by showing [he was] treated differently based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."

*Kisembo*, 285 F. Supp. 3d at 524 (internal quotations omitted) (quoting *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 301 (S.D.N.Y. 2013)). "[A plaintiff] may [also] assert a so-called 'class of one' claim by alleging that [he was] intentionally treated differently from others similarly situated and that there was no rational basis for this difference in treatment." *Id.* (internal quotations omitted) (quoting *Doe v. Village of Mamoroneck*, 462 F. Supp. 2d 520, 558 (S.D.N.Y. 2006)). The aforementioned theories of liability "require a showing of similarly situated individuals or groups who were treated differently." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011).

### C.    Analysis of Merits of Equal Protection Claim

Defendants argue that the equal protection claim fails on the merits. I do not make any rulings on the merits of this claim because the claim is not cognizable under *Heck v. Humphrey*, and the court cannot speculate as to what the state court may decide on plaintiff's appeal. However, I will briefly discuss plaintiff's equal protection claim.[22]

As the amended complaint is written, together with the discovery submitted by defendants, plaintiff has not supported his allegation that defendant Vincent violated his right to equal protection. Plaintiff conceded at his deposition that, although he knew that the weapon was planted on him by the defendant Vincent, he did not really know why the defendant planted the weapon. (Pl.'s Dep. at 82). He stated that "it could have

---

[22] If defendant Vincent did "plant" the weapon on plaintiff for any reason, and if plaintiff's conviction is either overturned by the state court or called into question by a subsequent habeas action, plaintiff may have a recourse in federal court even if the claim is not based on equal protection. *See Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 2537312, at *3 (N.D.N.Y. June 20, 2019) (officer planting evidence may be liable for false arrest or malicious prosecution) (citations omitted).

been" because of his race because all the other "guys" who were "vindicated" were either Black or Latino, and they were all scheduled to go home soon. (*Id.* at 78, 82-83). He testified that he knew nothing of defendant Vincent, "other than he set me up." (*Id.* at 83). Plaintiff stated that "I believe that just by him setting me up is enough . . . to constitute a violation of my First Amendment [sic] because it's irrational treatment." (*Id.* at 83-84).

The basis for plaintiff's belief appears to be that another corrections officer was found to have planted weapons on other inmates. (*Id.* at 84-89). Plaintiff testified that he knew several other Black and Latino inmates on whom weapons were "planted." (*Id.*) However, each of the individuals named by plaintiff were the alleged victims of actions by Matthew Cornell, an officer who is not a defendant in this case, and against whom plaintiff has made no allegations.[23] (*Id.*) In any event, any future complaint will depend upon the results of any reversal of plaintiff's criminal action and whether plaintiff's criminal conviction is reversed.

## VI.    Excessive Force Claim

### A.    Legal Standards

Inmates enjoy Eighth Amendment protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights.

---

[23] When asked, plaintiff stated that "they all said Matt." (Pl.'s Dep. at 85). Plaintiff also testified that he only knew about these inmates and C.O, Cornell because "they" told him. (Pl.'s Dep. at 88). Plaintiff testified that he did not know whether C.O. Cornell was present during the incident at issue in this complaint, and there was never any "bad blood" between plaintiff and defendant Vincent or Officer Cornell. (*Id.* at 89). The supervisory liability section of the amended complaint contains several paragraphs discussing C.O. Cornell's actions and how the supervisory defendants allowed Cornell to work at Auburn, with "might" even establish a culture where "other" officers would adopt his "malicious ways." (Am. Compl. ¶¶ 198-203).

*Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).  To sustain a claim of excessive force, a plaintiff must still establish the objective and subjective elements of an Eighth Amendment claim.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999).

In order to satisfy the objective element of the constitutional standard for excessive force, a defendant's conduct must be "'inconsistent with the contemporary standards of decency.'"  *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9.  The malicious use of force to cause harm constitutes a per se Eighth Amendment violation, regardless of the seriousness of the injuries.  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Id*. at 21 (citation omitted). The Supreme Court has recently re-emphasized that the "core judicial inquiry" is not whether a certain quantum of injury was sustained, but rather whether the force was applied in a good faith effort to restore discipline, or whether it was applied maliciously to cause harm, regardless of the seriousness of the injury.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

In determining whether defendants acted in a malicious or wanton manner, the

23

Second Circuit has identified five factors to consider: the extent of the injury and the mental state of the defendant; the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003). The extent of the injury may be considered as one factor in determining whether the use of force could plausibly have been thought "necessary" in a particular situation. *Wilkins*, 559 U.S. at 40. The extent of the injury may also give some indication of the amount of force applied and may ultimately be considered in determining damages if appropriate. *Id.*

"[A] corrections officer who is present while an assault upon an inmate occurs may bear responsibility for any resulting constitutional deprivation, even if he did not directly participate in the use of force." *Payne v. Coburn,* No. 9:15-CV-00392 (GLS/TWD), 2017 WL 4330372, at *5 (N.D.N.Y. Aug. 29, 2017) (citing *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 342 (N.D.N.Y. May 24, 2010)); *Cicio v. Graham*, No. 9:08-CV-534 (NAM/DEP), 2010 WL 980272, at *13 (N.D.N.Y. Mar. 15, 2010). Indeed, an official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated by other officers in his or her presence. *Cicio*, 2010 WL 980272, at *13. In order to establish liability under this theory, a plaintiff must prove that the defendant in question (1) possessed actual knowledge of the use by another correction officer of excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Tafari*, 714 F. Supp. 2d at 342; *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501,

24

512 (S.D.N.Y. 2008). Mere inattention or inadvertence does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *Cicio,* 2010 WL 980272, at *13 (N.D.N.Y. Mar. 15, 2010) (citing *Schultz v. Amick*, 955 F. Supp. 1087, 1096 (N.D. Iowa 1997) ("liability in a § 1983 'excessive force' action cannot be founded on mere negligence") (other citations omitted)).

### B.    Analysis

Defendants argue that any excessive force or failure to intervene claims against defendant Mitchell may be dismissed. They further argue that plaintiff has failed to identify John Doe No. 9 within the three year statute of limitations, despite being warned that the failure to do so could result in the dismissal of the action as against the unknown defendant.

The amended complaint describes the alleged assault in paragraphs 31 and 32. Although there appears to be some confusion about plaintiff's exact allegations, it is clear to the court that plaintiff claims that John Doe No. 9 was the first person to "jump" on plaintiff, but then moved aside while defendant Mitchell allegedly assaulted the plaintiff by pulling him off the bed, punching, kicking, kneeing, and choking him.[24] (Am. Compl. ¶¶ 31, 32, 162). Thus, the "failure to intervene" claim is against defendant John Doe No. 9, and the excessive force claim is against defendant Mitchell.

Defendants submit photos of plaintiff taken after the use of force and argue that plaintiff's lack of serious injury supports their argument that defendants did not use

---

[24] "Defendant C.O. Mr. John Doe <u>No. 9</u> at first jumped on plaintiff's back[,] but when he seen [sic] defendant Lt. Mr. Troy Mitchell's intentions[,] he quickly backed off, but did nothing to stop defendant Mitchell from assaulting plaintiff." (Am. Compl. ¶ 32) (emphasis in original).

excessive force on February 29, 2016, recognizing that lack of injury in and of itself does not necessarily negate excessive force. (Def.s' Br. at 22) (citing Cowan Decl. Ex. G at 3, 5, 6 & Pl.'s Dep. at 126, 135).  Defendants cite, inter alia, *Elis v. Catalano*, No. 16-CV-8452 (KMK), 2020 WL 1956963 (S.D.N.Y. Apr. 23, 2020) for the proposition that "'superficial abrasions" to the right and left shoulder, right back, bilateral chest wall, right shoulder, left eye and ear were de minim[i]s,'" and did not reach "constitutional dimensions." (Def.s' Br. at 22).

However, *Ellis* involved multiple incidents of alleged force used against the plaintiff, and one section of the decision supports the denial of summary judgment.  One incident involved plaintiff Ellis alleging that an officer who came into his cell  "'started repeatedly punching [him]in [his]head and [his] upper torso area,'" while the defendant claimed that plaintiff swung a fist at the officer as he entered the cell. *Id.* at *9 (alterations in original).  The court held that "because the Parties have 'relied solely on assertions made in affidavits or sworn statements to demonstrate the presence or lack of genuine issues of material fact,' the Court must accept as true the assertions of 'the nonmoving party.'" *Id.* (citing *Kalwasinski v. Artuz*, No. 02-CV-2582, 2003 WL 22973420, at *9 (S.D.N.Y. Dec. 18, 2003) (citation and quotation marks omitted); *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996) (explaining that a nonmovant "will have his allegations taken as true, and will receive the benefit of the doubt when his assertions conflict with those of the movant" (citation and quotation marks omitted)). The plaintiff in *Ellis* claimed that the officers punched him repeatedly in his head and his torso as he was backing away from the cell door, but did not allege any severe or lasting injuries from the encounter.  2020 WL 1956963 at *10.  The court denied the

defendant's motion for summary judgment because, "[i]n the absence of any physical threat, such a beating may amount to 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at *10 (quoting *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)).

In this case, although plaintiff concedes that he was unresponsive when asked to return his tray, he claims that first, defendant Doe No. 9 jumped on his back and then defendant Mitchell jumped on him, dragging him to the floor and beating him for no reason. While, according to defendants' memorandum of law, defendant Mitchell "denies" this claim,[25] there is no affidavit supporting this denial. Accepting the plaintiff's allegations as true, he claims that he was unresponsive and did not give his tray back to the guards, but that in response, for no reason, the defendants jumped on him, and defendant Mitchell continued to beat him, including kicking him in the face while he was on the floor.[26] Such action would serve no legitimate penological purpose, and in cases of excessive force, the "core inquiry" is whether "'force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hogan v. Fischer*, 738 F.3d 509, 516 (2d Cir. 2013) (quoting *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 320–21)).

In this case, defendant Mitchell's version of the incident is that plaintiff moved his "hands and legs threatening, random and aggressive manner" when "Officer Cornish" shook plaintiff's left shoulder. (Def.s' Br. at 18 & Def.s' Ex. G at 2). Without

---

[25] Def.s' Br. at 21.

[26] During his deposition, plaintiff alleged that when defendant Mitchell kicked him in the face, he was on the floor, on his stomach, and in handcuffs. (Pl.'s Dep. at 119).

an affidavit from defendant Mitchell,[27] given the conflict in the facts asserted by the parties, this court is unwilling to find as a matter of law that the force[28] used was reasonable or that it did not rise to the level of an Eighth Amendment violation.

## VII.  John Does Nos. 9, 11

### A.  Legal Standards

Courts decline to dismiss actions against John Doe defendants until the plaintiff has had the opportunity for discovery to learn the identity of the allegedly responsible officials. *Cruz v. Fischer*, 175 F. Supp. 3d 33, 38 (W.D.N.Y. 2016).  However, the plaintiff must identify and serve any John Doe defendants prior to the expiration of the three-year statute of limitations, or those defendants may be dismissed. *Id.* (citing inter alia *Tapia–Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999)).  Claims under section 1983 which are asserted in New York are subject to a three-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 251 (1989).

### B.  Analysis

#### 1.  John Doe No. 9

Plaintiff has failed to move to move to amend his complaint to add a named defendant for John Doe No. 9.  The court notes that the excessive force incident

---

[27] None of the defendants' exhibits relating to the use of force incident are sworn documents, and defendant Mitchell did not submit an affidavit as an exhibit to the motion.

[28] Clearly, force was used.  The question of fact is whether force was used because plaintiff acted suddenly and aggressively or whether force was used when plaintiff was unresponsive.  Plaintiff also disputes how much force was used.

occurred on February 29, 2016, and plaintiff's Eighth Amendment claim would have accrued on that date. Barring any tolling of the limitations period, equitable or otherwise, the statute of limitations would have expired on March 1, 2019. It is unclear whether plaintiff knows this defendant's name. It appears clear from the documents filed as exhibits with defendants' motion, that John Doe No. 9 may be Corrections Officer Cornish, who was the only other officer involved in the use of force on February 29th. (Def.s' Ex. G at 7) (Dkt. No. 63-8). Plaintiff referred to this officer as "Porich" in his grievance. (Def.s' Ex. I at 11). Plaintiff has been warned that the failure to name and serve the John Doe defendants will subject the amended complaint to dismissal against them. (Dkt. No. 16 at 8). Defense counsel specifically asked about Officer Cornish at the deposition, but plaintiff stated that he was not sure that he ever met this officer before.[29] (Pl.'s Dep. at 121). Any motion to add a named defendant for John Doe No. 9 would be barred by the statute of limitations.

### 2.    John Doe No. 11

Plaintiff has failed to identify John Doe No. 11,[30] notwithstanding the opportunity for discovery. The only remaining claim against this defendant is that he gave the information regarding the weapon incident to Assistant District Attorney Leeds for prosecution in retaliation for plaintiff's subsequent grievance against defendant Mitchell. Since the incident occurred on February 28, 2016, and plaintiff was

---

[29] When asked about Officer Cornish, plaintiff asked if he was John Doe No. 8, (he meant John Doe No. 9), but never followed up on attempting to amend his complaint to add any named defendant.

[30] As the court pointed out in its August 10, 2019 initial review of the amended complaint, plaintiff originally identified this John Doe as John Doe No. 12 or John Doe No. 13, but the amended complaint referred to this defendant as John Doe No. 11. (Dkt. No. 16 at 7-8 n.7).

transferred to Cayuga County on March 9, 2016 for prosecution on the contraband charge, the "information" about plaintiff's disciplinary infraction must have been sent to the district attorney before March 9, 2016, at which time plaintiff's claim for retaliation would have accrued.  In his response to defendants' motion for summary judgment, plaintiff states that John Doe No. 11 turned the documents over to the district attorney and the New York State Police Investigator on March 8, 2016. (Dkt. No. 71 at ¶¶ 5-6). The statute of limitations would have expired three years later on March 8 or March 9, 2019, and without any tolling, the claims against John Doe No. 11 would now be time-barred.

Plaintiff has not asked to add a named defendant to replace John Doe No. 11, and there is no indication that he knows who that defendant may be.  In the document that has been construed as his response to the defendants' summary judgment motion, plaintiff asks for "discovery" of the "name and job description of John Doe No. 11." (Dkt. No. 71 at 11).  Plaintiff cannot circumvent statutes of limitation by suing a John Doe, whose name is not discovered until after the expiration of the statute of limitations. *Cruz, supra.*  Even if plaintiff now knew John Doe No. 11's name and was seeking to add his name, an amended complaint, adding new defendants cannot relate back to the original if the newly-added defendants were not named originally because the plaintiff did not know their identities. *Id.* (citations omitted).  Thus, the amended complaint may be dismissed as against John Doe No. 11.

Finally, even if the statute of limitations had not expired, plaintiff's retaliation claim against John Doe No. 11 would fail.  Plaintiff claims that John Doe No. 11 turned over the information regarding plaintiff's contraband charge in retaliation for the

30

grievance he filed against defendant Mitchell.  In order to establish retaliation for the exercise of a constitutional right, plaintiff must show that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citations omitted).  The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).  In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F. Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 (2002)).

There is no dispute that filing a grievance is a constitutionally protected activity, and retaliating against an inmate for filing a grievance is actionable under section 1983. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1995).  Thus plaintiff has met the first requirement.  In addition, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out . . . ." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  However, plaintiff has failed to show that John Doe No. 11 turned over documents to the district attorneys

31

office in retaliation for a grievance that plaintiff filed at the earliest on March 6, 2016, which was clearly not received by the IGRC until March 9, 2016, the day that plaintiff was arrested on the contraband charges and transferred to the custody of Cayuga County. The exhibits filed by defendants show that the documents were provided to the district attorney's office on March 7 or 8, 2016. Although the grievance was signed March 6, 2016, it was not stamped received by the IGRC on March 9, 2016. (Def.s' Ex. I at 11) (Dkt. No. 63-10). In fact, as stated above, the Superintendent commented in his response to the grievance that plaintiff filed too late to be interviewed because he was transferred so shortly after he filed the grievance. Thus, it is highly unlikely that an officer who was not involved in the alleged assault even knew about the grievance which was not received until March 9, days after the documents were sent to the district attorneys office.[31] Thus, any claim of retaliatory prosecution against John Doe No. 11 must be dismissed.

        **WHEREFORE**, based on the findings above, it is

        **RECOMMENDED**, that the motion for summary judgment filed by defendants Vincent, Mitchell, and John Doe No. 9 & John Doe No. 11 (Dkt. No. 63) be **GRANTED IN PART and DENIED IN PART**, and it is

        **RECOMMENDED**, that the defendants' motion for summary judgment (Dkt. No. 63) be **DENIED** as to plaintiff's Eighth Amendment claim against defendant

---

[31] The Court in *Hartman* also stated that the plaintiff in a retaliatory prosecution action must plead and prove the absence of probable cause for the prosecution. 547 U.S. at 265. As stated above, plaintiff was convicted of the contraband charge, and that conviction has not been reversed. Plaintiff will be unable to establish lack of probable cause for the prosecution, and such claim would be barred by *Heck v. Humphrey, supra.*

**MITCHELL**, and it is

**RECOMMENDED**, that the motion for summary judgment (Dkt. No. 63) be

**GRANTED,** and the amended complaint dismissed, in all other respects including

**DISMISSAL** of the amended complaint as against the remaining Doe defendants (John

Doe No. 9 and John Doe No. 11).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 6(a), 6(e), 72.


Dated: October 22, 2020

Andrew T. Baxter
U.S. Magistrate Judge