UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

J'KENDRIC JIRELLE AGEE,

                                            Plaintiff,

                                                                9:19-CV-57
           v.                                                       (BKS/ATB)

MR. ANDREW CUOMO, et al.,

                                            Defendants.

---

J'KENDRIC JIRELLE AGEE, Plaintiff, pro se
AIMEE COWAN, Asst. Attorney General for New York State Defendants
JASON RICHMAN, ESQ., Attorney for Defendant Wade

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

## I.    Procedural History

This matter was referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge. On January 16, 2019, plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging that various employees of the New York Department of Correctional and Community Services ("DOCCS") and Cayuga County violated his constitutional rights during his confinement at Auburn Correctional Facility ("C.F.") and Cayuga County Jail. (Complaint ("Compl."), Dkt. No. 1). By Decision and Order dated April 24, 2019, Judge Sannes dismissed several defendants and causes of action pursuant to 28 U.S.C. §§ 1915, 1915A. (Dkt. No. 11).

On June 12, 2019, plaintiff filed an amended complaint, which Judge Sannes accepted in part for filing. (Amended Complaint ("Am. Compl."), Dkt. No. 14; Dkt.

No. 16). Liberally construed, the surviving claims in plaintiff's amended complaint include (1) Eighth Amendment excessive force and failure to intervene claims against defendants DOCCS Correctional Officer ("C.O.") Troy Mitchell and John Doe No. 9; (2) First Amendment retaliation claims against defendants Doe No. 11 and Cayuga County C.O. Wade; and (3) a Fourteenth Amendment equal protection claim against defendant DOCCS C.O. Keith Vincent ("Vincent").[1] (Dkt. No. 16 at 13).

On March 23, 2020, I issued an Order and Report-Recommendation, recommending that the court deny defendant Vincent's motion to dismiss for failure to state a claim relative to plaintiff's equal protection claim. (Dkt. No. 54). Judge Sannes adopted my recommendation on April 20, 2020. (Dkt. No. 56). *See Agee v. Cuomo*, No. 19-CV-57, 2020 WL 1916695 (N.D.N.Y. Mar. 23, 2020), *Report-Recommendation adopted sub nom. Agee v. Mitchell*, No. 19-CV-57, 2020 WL 1914957 (N.D.N.Y. Apr. 20, 2020).

Presently before the court is a motion for summary judgment pursuant to Fed. R. Civ. P. 56, filed on behalf of defendant Wade. (Dkt. No. 63). Plaintiff has not responded in opposition to the motion, despite being warned of the consequences of his failure to respond. Notwithstanding plaintiff's failure to respond, defendant Wade has filed a "reply" letter.[2] (Dkt. No. 73).

---

[1] Defendants Vincent and John Does Nos. 9 and 11 have also made a motion for summary judgment (Dkt. No. 63) which I have addressed in a separate Report-Recommendation.

[2] Defendant Wade's reply letter states, inter alia, that plaintiff told defense counsel in a telephone call that he was not going to respond in opposition to defendant Wade's motion. (Dkt. No. 73).

## II. Facts

The court will briefly review the relevant facts as stated in the amended complaint to discuss plaintiff's claims against defendant Wade.[3] On March 9, 2016, plaintiff was arrested prior to being released from state custody, and he was transferred to the Cayuga County Jail ("CCJ") for prosecution on prison contraband charges. (Am. Compl. ¶ 37).

While plaintiff was confined in CCJ on August 24, 2016, he began to eat a bag of potato chips when he realized it contained ants. (Am. Compl. ¶ 42). Plaintiff stated that he immediately stopped eating the food and notified defendant Wade. *Id*. Plaintiff claims that defendant Wade "became very disrespect[ful]" towards plaintiff, refused to get him another bag of chips, and ordered him to clean up the mess he had made by spitting the ant-laden chips on the ground. (Am. Compl. ¶ 43). Plaintiff filed a grievance about the incident, which was "[a]ccepted." (*Id*.; *see also* Pl.'s Ex. D - Part I at 13) (Dkt. No. 14-1). Plaintiff claims that, in approximately the third week of November 2016, defendant Wade issued plaintiff a misbehavior report accusing him of "attempting to block her view of inmates fighting" in retaliation for his grievance concerning the chip-bag incident in August 2016. (Am. Compl. ¶ 49). This is plaintiff's only remaining claim against any defendant from Cayuga County.

Further facts about plaintiff's case were developed on discovery. Discovery materials, including plaintiff's deposition,[4] have been attached to defendant Wade's

---

[3] The court assumes the parties' familiarity with the facts contained in the other portions of the plaintiff's amended complaint and as I reviewed in the state defendants' motion for summary judgment (Dkt. No. 63).

[4] Plaintiff's deposition relative to his claims against defendant Wade was taken at the same time as his deposition relative to the New York State defendants and is contained in the same document, filed separately for this motion. (Def.'s Ex. A) (Dkt. No. 68-2).

3

motion for summary judgment. (Dkt. Nos. 68-2-68-9, Exhibits A-H). I will discuss these additional facts as relevant to my analysis below. Defense counsel has also attached the declarations of defendant Wade; David Massi, CCJ Inmate Programs Supervisor; and Disciplinary Hearing Officer ("DHO") CO DiBello as exhibits to the motion. (Def.'s Exs. F-H).

### III. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether there is a

genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

## IV. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), abrogated on other grounds by *Ross v. Blake,* 380 F. 3d. 670 (2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

CCJ is a County facility, and its grievance procedures are outlined in the Rule Book that is given to inmates upon admission. (Massi Decl. ¶ 4 & Ex. A ("Rule Book")

(Dkt. No. 68-8). Plaintiff acknowledged receipt of this rule book when he was admitted to CCJ. (Massi Decl. Ex. A at CM/ECF p.4). Section 139 of the Rule Book is entitled "Complaint or Grievance Procedure." The rules provide that an inmate who has a complaint may first attempt to resolve the issue "informally" through the Housing Officer. (Rule Book § 139.3(a)). The next step is to complete a grievance form within five (5) days of the date of the occurrence and give the completed form to the Housing Officer. (Rule Book § 139.3(b), (c)). The Housing Officer will give the grievance to the Grievance Coordinator, who will issue a written determination within five (5) days and return the decision to the inmate. (Rule Book § 139.3(d)). The inmate has two (2) business days from receipt of the determination within which to file an appeal to the Facility Administrator, who then has five (5) days from receipt to decide the appeal and provide a copy to the inmate. (Rule Book § 139.3(e), (f)).

If the inmate disagrees with the Facility Administrator's determination, he must appeal within three (3) business days. (Rule Book § 139.3(h)). The appeal is taken to the State Commission on Corrections and is completed by "indicating his/her desire to appeal on the inmate grievance form "in the space provided for such purpose." (*Id.*) Within three (3) business days of receipt of an inmate's "notice of appeal," the Grievance Coordinator must mail the notice of appeal, the accompanying investigation report, "and all other pertinent documents" to the "Commission's Citizens' Policy and Complaint Review Council" ("Review Council"). (Rule Book § 139.3(i)). The Grievance Coordinator must also provide the inmate with a receipt showing the date that the appeal was sent to the Review Council. (Rule Book § 139.3(j)). The Review Council must issue its decision within forty-five (45) business days of receipt and send

6

copies of its determination to the inmate, the Facility Administrator, and the Grievance Coordinator. (Rule Book § 139.3(k)). If the determination is in favor of the inmate-grievant, the Review Council "shall direct the Facility Administrator to comply with the grievance and provide an appropriate remedy." (*Id.*) The Rule Book also contains separate procedures for appealing disciplinary determinations. (Rule Book § 126).

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (June 6, 2016). "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, __ U.S. at __, 136 S. Ct. at 1857). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, __ U.S. at __, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his

7

or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id; see also Riles*, 2016 WL 4572321 at *2.

**B.    Analysis**

The only remaining claim against defendant Wade is that she issued the November[5] 2016 misbehavior report in retaliation for plaintiff's August 2016 grievance against her based on the chip bag incident. During his deposition, plaintiff was vague when asked whether he filed a grievance complaining about defendant Wade's alleged retaliation, ultimately stating that it was "possible" that he did not file a grievance. (Pl.'s Dep. at 139). He also stated that he did not "go hard" on that issue because the resulting disciplinary disposition would not take him past his release date. (Pl.'s Dep. at 138-39).

In his declaration, Inmate Programs Supervisor Massi states that he is the custodian of inmate grievance records at CCJ, and that any grievance filed by an inmate would have to go through his office. (Massi Decl. ¶¶ 2, 5). Inmate Programs Supervisor Massi states that no grievance was ever filed by plaintiff relative to the misbehavior report issued by defendant Wade. (Massi Decl. ¶ 6). In addition, plaintiff never appealed the disciplinary determination which resulted from the misbehavior report issued as a result of the December 4th incident. (Massi Decl. ¶¶ 6, 7, 9). Inmate Programs Supervisor Massi's review of the grievance records showed that during plaintiff's incarceration at CCJ, he filed grievances regarding "other matters," one of which was appealed to the second step of the grievance procedure, but none were related

---

[5] The amended complaint states that the "fight blocking" incident occurred in late November 2016, but the Misbehavior Report indicates that the incident occurred on December 4, 2016, and the Misbehavior Report was signed on December 7, 2016. (DeBello Decl. Ex. A).

to the misbehavior report in question or the alleged retaliation by defendant Wade. (Massi Decl. ¶ 8).

It appears clear from the defendant's exhibits that plaintiff did not file a grievance regarding defendant Wade's allegedly retaliatory misbehavior report, nor did plaintiff appeal the disciplinary hearing resulting from the misbehavior report.  Plaintiff's equivocal testimony at his deposition does not create a question of fact in this regard, and the disciplinary documents, submitted by Hearing Officer DeBello with his declaration, indicate that plaintiff pled guilty to the December 7, 2016 misbehavior report issued by defendant Wade. (DeBello Decl. ¶ 5 & Exs. A, B) (Dkt. No. 68-9). Notwithstanding his guilty plea, plaintiff was informed, verbally and in writing, of his right to appeal the disposition. (DeBello Decl. ¶ 7 & Ex. B (Hearing Disposition Form)).

As Inmate Programs Supervisor Massi establishes, there is a functioning grievance procedure at CCJ, and plaintiff was well aware of the procedures involved in filing a grievance.  Hearing Officer DeBello states that on December 8, 2016, plaintiff filed a grievance, complaining about the quantity of postage and stationary that he was provided. (DeBello Decl. ¶ 9).  Plaintiff was incarcerated at CCJ until March of 2017, when he was transferred back to New York State custody after he was found guilty of prison contraband charges.  Thus, plaintiff had plenty of time to file a grievance against defendant Wade.  Plaintiff does not claim that he was prevented from filing a grievance, and the fact that he filed an unrelated grievance four days after the incident belies any claim that he was unable to, or prevented from, filing grievances.  Plaintiff has failed to respond to the defendant's summary judgment motion, and therefore, defendants facts

9

are accepted as true.

Although plaintiff does not make this argument, the court will consider whether the procedure was "unavailable" to plaintiff under *Ross, supra*. The Rule Book provides that inmates may not file grievances challenging the "dispositions" or "sanctions" from disciplinary hearings, likely because these hearings have their own appeal procedures. (Rule Book § 139.2). It is unclear whether an allegation that the misbehavior report was retaliatory would have properly been brought in a grievance or whether it was so related to the disciplinary determination, that it would have to be raised in the disciplinary appeal process. If the plaintiff's issue was "non-grievable," then the grievance procedure would not be available. However, plaintiff neither brought a grievance, nor did he appeal the result of his disciplinary hearing.[6] So while he had available procedures to challenge defendant Wade's alleged conduct, plaintiff did not utilize them. Plaintiff failure to respond to the defendant's motion may be a concession that defendant is correct.[7]

Thus, plaintiff has failed to exhaust his administrative remedies with respect to his claim that defendant Wade issued the December 7, 2016 misbehavior report in retaliation for the grievance he filed against her in August of 2016. Normally, when the court finds that the plaintiff has failed to exhaust his administrative remedies, a

---

[6] Plaintiff likely did not appeal the result of the disciplinary proceeding because he pled guilty to the charges.

[7] Defense counsel states that plaintiff informed him that he was not going to respond to defendant Wade's summary judgment motion even though he opposed the state defendants' motion. Plaintiff never informed the court that he was not going to respond, although plaintiff's motivation is not relevant because the effect of failing to respond is the same, particularly since plaintiff was informed of the consequences of failing to respond in the defendant's papers.

dismissal on this basis would be without prejudice "if plaintiff may complete the exhaustion requirement, and the time for doing so has not expired." *Wilson v. Cabrera*, No. 9:19-CV-1294 (DNH/ATB), 2020 WL 4678293, at *6 (N.D.N.Y. July 15, 2020) (citing *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)), *report-recommendation adopted*, 2020 WL 4673941 (N.D.N.Y. Aug. 12, 2020). However, the case may be dismissed with prejudice if the plaintiff had the opportunity to exhaust administrative remedies, failed to do so, and is unable to cure his failure to exhaust. *Id*. (citing *Berry*, 366 F.3d at 88). Plaintiff in this case is now in New York State custody, it is four years after the incident, and he would be unable to either file a grievance or appeal his CCJ disciplinary hearing.[8] He would not be able to exhaust his administrative remedies, and the court is constrained to recommend dismissal with prejudice.

## V. Retaliation

### A. Legal Standards

In order to establish retaliation for the exercise of a constitutional right, plaintiff must show that (1) the speech or conduct at issue was protected, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected conduct and the adverse action. *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citations omitted). The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir.

---

[8] The court notes that there are no provisions in the Rule Book for extensions of time to file grievances or appeal disciplinary determinations. Nor are there any provisions for continuing a grievance after transfer or release.

11

2013) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). In other words, we must examine prisoners' claims of retaliation with "skepticism and particular care." *Rivera v. Goord*, 119 F. Supp 2d 327, 339 (S.D.N.Y. 2000) (quoting *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Accordingly, a First Amendment retaliation claim must be supported by "specific and detailed factual allegations," and not stated in "wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d. Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 (2002)).

### B. Analysis

In addition to arguing that plaintiff has failed to exhaust his administrative remedies regarding his retaliation claim, defendant argues that the plaintiff's claim fails on the merits. The court will address the defendants argument in the event that the district judge makes a contrary finding regarding exhaustion.

There is no dispute that filing a grievance is a constitutionally protected activity, and retaliating against an inmate for filing a grievance is actionable under section 1983. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1995). Thus plaintiff has met the first requirement. On August 25, 2016, plaintiff filed a grievance after he found ants in a potato chip bag that was served to him with a meal. (Def.'s Ex. E). In addition to complaining about the condition of his food, he also complained that "there was no reason for C.O. Wade to be upset with me because I had the same natural reaction that any rational individual would [have]." (*Id.*)

The grievance was "accepted" because the kitchen staff found five other bags of potato chips that were damaged, "providing the ants with an avenue to enter." (Def.'s

Ex. E at 2). The kitchen staff threw away the defective bags, cleaned the area, and filed a complaint with the vendor. (*Id.*) With respect to defendant Wade, the grievance decision stated that "Officer Wade reacted to your raw emotions. Officer Wade could not possibly have fully appreciated how those raw emotions were generated. Officer Wade did report what had occurred to you." (*Id.*) At his deposition in this federal action, plaintiff testified that he did not receive a misbehavior report as a result of his reaction to the ants, and that he filed a grievance against defendant Wade because he did not like her attitude.[9] (Pl.'s Dep. at 14-16) (Dkt. No. 68-2).

The incident giving rise to plaintiff's claim of retaliation occurred on December 4, 2016, almost four months after the "chip" incident. In her declaration, defendant Wade states that on the day in question, she was supervising the L-Pod housing unit. (Wade Decl. ¶ 3). Defendant Wade states that she was approached by plaintiff, who "engaged her attention," but had nothing substantive to address. (Wade Decl. ¶ 4). At approximately the same time, another inmate approached defendant Wade, engaging her attention, but who also had nothing substantive to address. (*Id.*)

While these two inmates were engaging defendant Wade's attention, a fight was breaking out between three inmates in one of the cells. (Wade Decl. ¶ 5). Defendant Wade states that she realized that plaintiff and the other inmate may have been attempting to distract defendant Wade so that the fight could occur without her intervention. (Wade Decl. ¶¶ 5, 6). Defendant Wade instructed the two inmates to leave her podium so that she could attend to the fight. (Wade Decl. ¶ 5). Three days later, on

---

[9] Defendant Wade asked plaintiff to pick up the chips. (Pl.'s Dep. at 15).

13

December 7, 2016, defendant Wade reviewed the camera footage of the incident, which reinforced her belief that plaintiff and the other inmate approached her with the "intention to distract or interfere with [her] monitoring of the unit to facilitate the fight." (Wade Decl. ¶ 7).

Defendant Wade states that inmates working together to facilitate a fight is a serious violation of the rules of inmate conduct, specifically, interference with staff is a "Class A" violation. (Wade Decl. ¶ 9). It was for these reasons that defendant Wade issued misbehavior reports to plaintiff and the other inmate. (Wade Decl. ¶ 10). Defendant Wade also issued misbehavior reports to the three other inmates who were involved in the actual fight. (Wade Decl. ¶ 13, Def.'s Ex. 5) (five misbehavior reports).

Defendant Wade noted that she had "logged misbehavior"[10] against the plaintiff three months prior for "mak[ing] a scene and a mess with a bag of ant-contaminated potato chips." (Wade Decl. ¶ 11). However, defendant Wade states that, at the time that plaintiff approached her podium on December 4, 2016, she had no recollection of the incident or the grievance, and she was only reminded of the incident when she was contacted by the law firm that represents her in this action. (Wade Decl. ¶ 12). Defendant Wade further states that, regardless of any previous incident with the plaintiff, she would have issued plaintiff a misbehavior report regarding the December 4, 2016 incident because his conduct was in serious violation of facility rules. (Wade Decl. ¶ 13). She issued a misbehavior report to the other inmate "for the same conduct at the same time," and he had never filed a grievance against her. (Wade Decl. ¶ 13).

---

[10] Although defendant Wade "logged" the incident, the parties do not dispute that she did not issue plaintiff a misbehavior report for the potato chip incident.

The exhibits all support defendant Wade's allegations. As stated above, plaintiff failed to respond to the defendant's motion and appears to admit these facts. The court must also point out that plaintiff pled guilty to the charges. (Wade Decl. Ex. A at CM/ECF p.9). There is absolutely no evidence to show that defendant Wade filed the December 2016 misbehavior report in retaliation for the August 2016 grievance against her. She states that at the time she filed the misbehavior report, she did not even remember the incident,[11] and she would have filed the misbehavior report in any event because, by his own admission, plaintiff committed the conduct that was the basis for the misbehavior report. Thus, plaintiff has failed to establish a causal connection between the protected conduct and the claimed retaliatory action.

It is well-settled that, even if plaintiff could have shown a retaliatory motive, he cannot succeed if defendant "'would have taken exactly the same action absent the improper motive.'" *Jordan v. New York City Bd. of Elections*, 816 F. App'x 599, 603 (2d Cir. 2020) (quoting *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). It is clear from defendant Wade's affidavit and the documentary evidence, including plaintiff's guilty plea to the misbehavior, that defendant Wade would have issued the misbehavior report notwithstanding any retaliatory motive. Thus, plaintiff's retaliation claim would

---

[11] Defendant also argues that the three month time period between the grievance and the misbehavior report is too long to infer retaliation. Defendant cites *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding that the passage of three months weighed against finding a causal connection). However, in *Hayes v. Dahlke*, __ F.3d __, 2020 WL 5883945, at *9 (2d Cir. Oct. 5, 2020) the court stated that it has not drawn a "bright line" as to exactly when a temporal relationship supports a finding of a causal relationship. *Id.* (comparing *Gorman–Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001) which held that *five* months between the protected action and the retaliation supported an inference of a causal connection with *Hollander*). My findings regarding the causation element are not based on the temporal relationship alone.

15

not succeed on the merits even if he had exhausted his administrative remedies.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant Wade's motion for summary judgment (Dkt. No. 68) be **GRANTED**, and the amended complaint **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as against defendant Wade.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: October 26, 2020

*Andrew T. Baxter*
Andrew T. Baxter
U.S. Magistrate Judge